**2024-1471, 2024-1472**

# United States Court of Appeals
# for the Federal Circuit

---•---

ABC CORPORATION I, ABC CORPORATION II, EBAY, INC.,

*Plaintiffs,*

HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD.,
UNICORN GLOBAL, INC.,

*Plaintiffs-Appellants,*

– v. –

THE PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A", TOMOLOO OFFICIAL, TOMOLOO INE,
TOMOLOO FRANCHISE, TOMOLOO-US, TOMOLOO FLAGSHIP,

*(For Continuation of Caption See Inside Cover)*

---

*On Appeal from the United States District Court for the Northern
District of Illinois in No. 1:20-cv-04806, Thomas M. Durkin, Judge*

---

## BRIEF FOR PLAINTIFFS-APPELLANTS

ADRIANNA M. CHAVEZ
STINSON LLP
1850 N. Central Avenue
Suite 2100
Phoenix, Arizona 85004
(602) 212-8589
adrianna.chavez@stinson.com

RICHARD J.L. LOMUSCIO
STINSON LLP
100 Wall Street
Suite 201
New York, New York 10005
(646) 883-7475
richard.lomuscio@stinson.com

*Counsel for Plaintiffs-Appellants*

ORIGINALLY FILED: APRIL 15, 2024
CORRECTED: APRIL 18, 2024

TOMOLOO TC, TOMOLOO DX, TOMOLOO INT, TOMOLOO, also operating standalone websites as tomoloo.com and tomoloo-scooter.com, TOMOLOO-NX, AOXTECH, BETTER TOMOLOO, HGSM STOREFRONT,

*Defendants,*

GYROOR US, URBANMAX, GAODESHANGUS, FENGCHI-US, GYROOR, also operating standalone websites as gyroor.com and gyroorboard.com, HGSM, GYROSHOES,

*Defendants-Appellees,*

YANJIN-US,

*Respondent.*

## CLAIM

The ornamental design for a self-balancing vehicle, as shown and described.



## CERTIFICATE OF INTEREST

| 1. Represented Entities (Fed. Cir. R. 47.4(a)(1)) | 2. Real Party in Interest (Fed. Cir. R. 47.4(a)(2)) | 3. Parent Corporations and Stockholders (Fed. Cir. R. 47.4(a)(3)) |
|---|---|---|
| Hangzhou Chic Intelligent Technology Co., Ltd. | None | None |
| Unicorn Global, Inc. | None | None |

4. Legal Representatives (Fed. Cir. R. 47.4(a)(4)) – The names of all law firms and the partners or associates that appeared for Hangzhou Chic Intelligent Technology Co., Ltd. and Unicorn Global, Inc. before the United States District Court or are expected to appear in this Court are:

**Tarter Krinsky & Drogin LLP**
Mark Berkowitz
Chandler Elizabeth Sturm

**Palmersheim & Mathew**
Anand C. Mathew

**Honigman LLP**
Robert John Palmersheim
Timothy Gerrit Parilla

**Loeb & Loeb LLP**
Arthur Tan-chi Yuan
Neil Gerard Nandi
Adam Glenn Kelly
Christopher Gerald Binns
Douglas N. Masters
Jonathan Thielbar
Marwa Adlan Abdelaziz

5. Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal (Fed. Cir. R. 47.4(a)(5)).

*Hangzhou Chic Intelligent Technology Co., Ltd. et al. v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 1:20-cv-05905 (N.D. Ill.)

6.   Organizational victims in criminal cases and debtors and trustees in bankruptcy cases (Fed. Cir. R. 47.4(a)(6)).

None/not applicable

I certify that the foregoing information is accurate and complete to the best of my knowledge.


By: /s/ Richard J.L. Lomuscio
Richard J.L. Lomuscio

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................... i

TABLE OF AUTHORITIES ................................................................v

STATEMENT OF RELATED CASES ................................................ vii

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES..........................................................2

STATEMENT OF THE CASE..............................................................3

    I.    The Parties and Infringement of the Patents-in-Suit .....................................3

    II.   Relevant Procedural History ................................................10

    III.  Factual Disputes in the Record...........................................12

    IV.  The Challenged Summary Judgment Ruling .............................14

SUMMARY OF ARGUMENT ...........................................................15

STANDARD OF REVIEW ................................................................16

ARGUMENT ....................................................................................17

    I.    THE DISTRICT COURT MISAPPLIED THE ORDINARY OBSERVER TEST BY COMPARING THE ORNAMENTAL FEATURES OF THE CLAIMED AND ACCUSED DESIGNS IN ISOLATION WITHOUT ANALYZING THE OVERALL VISUAL IMPRESSION OF THE DESIGN AS A WHOLE .................18

        A.    The Ornamental Elements of the Patents-in-Suit Must Be Considered in the Context of the "Overall Design".........................22

        B.    Federal Circuit Precedent Illustrates the Error in District Court's Fragmented Approach and Need for Reversal....................28

    II.   THE DISTRICT COURT IMPROPERLY CONSIDERED THE HOURGLASS SHAPE—A DOMINANT FEATURE—IN DISSECTING THE DIFFERENCES BETWEEN THE ACCUSED PRODUCTS AND PATENTS-IN-SUIT, BUT

FAILED TO CONSIDER THE EFFECT THAT *OTHER* CHARACTERISTICS OF THE "HOURGLASS" BODY HAVE ON THE CLAIMED DESIGNS AS A WHOLE ....................................31

III. THE DISTRICT COURT ERRONEOUSLY RESOLVED DISPUTED FACTS IN DEFENDANTS' FAVOR AND GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT DESPITE GENUINE DISPUTES OF MATERIAL FACT ................................................................34

    A.    The District Court Erred by Granting Summary Judgment Where Genuine Disputes of Material Facts About an Ordinary Observer's View of Infringement Existed ........................................35

    B.    The District Court Substituted Itself for the Fact-Finder by Resolving Disputed Facts and Erred by Resolving Such Facts in Defendants' Favor ........................................................................37

CONCLUSION ...........................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*,
51 F.4th 1365 (Fed. Cir. 2022) ........................................................... 11

*ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*,
52 F.4th 934 (Fed. Cir. 2022) ............................................................. 11

*Amini Innovation Corp. v. Anthony California, Inc.*,
439 F.3d 1365 (Fed. Cir. 2006) ....................................... 17, 27, 28, 29

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................... 16, 17

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*,
501 F.3d 1314 (Fed. Cir. 2007) ............................................................ 38

*Braun Inc. v. Dynamics Corp. of Am.*,
975 F.2d 815 (Fed. Cir. 1992) .............................................................. 38

*Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*,
723 F.3d 1376 (Fed. Cir. 2013) ........................................................... 16

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
942 F.3d 1119 (Fed. Cir. 2019) ..................... 17, 27, 28, 29, 34, 35, 37

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010) ............................................... 20, 28, 29

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
635 F.3d 1373 (Fed. Cir. 2011) ........................................................... 39

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ....................................... 18, 19, 20, 21

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
    796 F.3d 1312 (Fed. Cir. 2015) .............................................19, 28, 34

*Gorham Mfg. Co. v. White*,
    81 U.S. 511 (1871).................................................18, 20, 30, 31, 35

*Hana Fin., Inc. v. Hana Bank*,
    574 U.S. 418 (2015)..............................................................................38

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009) ..................................................20, 22

*Litton Sys., Inc. v. Whirlpool Corp.*,
    728 F.2d 1423 (Fed. Cir. 1984) ..............................................................22

*Pain Center of SE Indiana LLC v. Origin Healthcare Solutions LLC*,
    893 F.3d 454 (7th Cir. 2018) ..................................................................16

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*,
    998 F.2d 985 (Fed. Cir. 1993) ..............................................................22

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010) ........................................................20

## Statutes and Rules

28 U.S.C. § 1295 ..................................................................................1

28 U.S.C. § 1331 ..................................................................................1

28 U.S.C. § 1338 ..................................................................................1

37 C.F.R. § 1.153 .................................................................................4

Fed. R. Civ. P. 56 ..............................................................................16

## STATEMENT OF RELATED CASES

Fed. Cir. R. 47.5(a): whether any other appeal in or from the same civil action or proceeding in the originating tribunal was previously before this or any other appellate court.

1. *ABC Corporation I v. Partnership and Unincorporated Associations*, (Fed. Cir. Case No. 22-155)

   a. Petition for Writ of Mandamus denied August 9, 2022 by Panel of Judges Hughes, Mayer, and Stoll.

   b. Not reported in the Federal Reporter.

2. ABC Corporation I v. Partnership and Unincorporated Associations, Nos. 21-2150, 21-2277, 21-2355, 51 F.4th 1365 (Fed. Cir. Oct. 28, 2022), Circuit Judges Dyk, Taranto, and Stoll.

3. ABC Corporation I v. Partnership and Unincorporated Associations, No. 22-1071, 52 F.4th 934 (Fed. Cir. Oct. 28, 2022), Circuit Judges Dyk, Taranto, and Stoll.

4. ABC Corporation I v. Partnership and Unincorporated Associations, (Fed. Cir. Case No. 21-2107),

   a. Dismissed pursuant to FRAP 42(b) on October 5, 2021.

   b. No panel assigned.

Fed. Cir. R. 47.5(b): The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: Hangzhou Chic Intelligent Technology Co., Ltd. et al. v. The Partnerships and Unincorporated Associations Identified on Schedule A, No. 1:20-cv-05905 (N.D. Ill.).

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331, 1338(a)-(b). (Appx138-140.) By order dated January 12, 2024, the District Court entered a final order granting the motion for summary judgment of Defendant-Appellees Gyroor-US, Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodenshang-US, and Gyroshoes (collectively "Defendants") on the ground that their hoverboard products do not infringe U.S. Design Patent Nos. D737,723 ("the '723 Patent"), D738,256 ("the '256 Patent"), D785,112 ("the '112 Patent"), and D784,195 ("the '195 Patent") (collectively, "Patents-in-Suit"), resulting in dismissal of Plaintiff-Appellants' claims. (Appx1-25.)

Plaintiffs-Appellants Hangzhou Chic Intelligent Technology Co., Ltd.; Unicorn Global, Inc. (collectively, "Plaintiffs") timely filed their Notice of Appeal on February 8, 2024. (Appx. 136, Dkt. 1-2, p. 1.) This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(1). Defendants have not cross-appealed.

## STATEMENT OF THE ISSUES

1. Whether the District Court misapplied the ordinary observer test by comparing the ornamental features of the claimed and accused designs in isolation without analyzing the overall visual impression of the designs as a whole.

2. Whether the District Court erred in its application of the ordinary observer test by considering the "hourglass" shape—a background feature—in analyzing differences between the claimed and accused designs, but failing to consider how the features of the hourglass shape affected the claimed design as a whole.

3. Whether, under the current legal analysis for design patent infringement, the District Court erred by substituting itself for the fact-finder in granting Defendants' motion for summary judgment despite genuine disputes of material fact.

## STATEMENT OF THE CASE

This is an appeal from the District Court's summary judgment decision finding non-infringement of the Patents-in-Suit for a hoverboard design. (Appx1-25.) Defendants sell Gyroor-branded two-wheeled hoverboards—the products Plaintiffs accuse of infringing the Patents-in-Suit. (Appx1, Appx3, Appx5, Appx1618-1636, Appx1906-1919, Appx2122-2129, Appx2152-2194.) The District Court placed improper emphasis on minor differences of the designs and incorrectly discounted similarities between the designs, without considering the overall impression of the designs as a whole. (Appx5-19.) This appeal centers on whether the District Court erred in its application of the "ordinary observer" test when it determined that Defendants' hoverboard products do not infringe the Patents-in-Suit, and whether the District Court improperly weighed disputed evidence and made findings of disputed facts in its determination.

## I.    The Parties and Infringement of the Patents-in-Suit.

Plaintiff-Appellant Hangzhou Chic Intelligent Technology Co., Ltd. owns the four design Patents-in-Suit. (Appx26, Appx35, Appx43, Appx2228.) Plaintiff-Appellant Unicorn Global, Inc. is the exclusive U.S. distributor of Plaintiffs' hoverboard products embodied in the Patents-in-Suit. (Appx1620.) Defendants are inter-related Chinese companies and individuals that operate online e-commerce

stores that sell hoverboards, including the accused hoverboards, on sites like Amazon. (Appx1620).

The Patents-in-Suit are design patents that claim and illustrate ornamental features of hoverboards. (Appx26-34, Appx35-42, Appx43-49, Appx2228-2236.) The 'D723 and 'D256 Patents are titled "Self-Balancing Vehicle" and were issued on September 1, 2015 and September 8, 2015, respectively. (Appx26, Appx2228.) Both the 'D195 Patent and the 'D112 Patent are entitled "Human-Machine Interaction Vehicle," and were issued on April 18, 2017 and April 25, 2017, respectively. (Appx35, Appx43.)

As with all design patents, what is claimed is "the ornamental design . . . as shown and described." 37 C.F.R. § 1.153(a). The Patents-in-Suit have streamline shapes that are appealing to United States customers. (Appx26-34, Appx35-42, Appx43-49, Appx2228-2236.) Specifically, the 'D723 Patent and the 'D256 Patent have defined the fundamental ornamental configurations of the hoverboard product class. (Appx26-34, Appx2228-2236.) The 'D112 Patent features a soft edge between the central support platform and the fenders, and the 'D195 Patent features a sharper edge. (Appx35-42, Appx43-49.) The claimed designs of the Patents-in-Suit are displayed in the tables below. The claimed design does not include the areas shown in broken lines, such as the wheels, the holes on the underside, the "O I" pattern, and the on/off graphics. (Appx26, Appx35, Appx43, Appx2228.)



| '723 Patent | '256 Patent |
|:---:|:---:|
| FIG.1 | FIG.1 |
| FIG.2 | FIG.2 |
| FIG.3 | FIG.3 |
| FIG.4 | FIG.4 |



| **'D723 Patent** | **'D256 Patent** |
|---|---|
| FIG.6 | FIG.6 |
| FIG.7 | FIG.7 |
| FIG.8 | FIG.8 |

(Appx26-34, Appx2228-2236.)



| 'D195 Patent | 'D112 Patent |
|---|---|
| FIG.1 | FIG.1 |
| FIG.2 | FIG.2 |
| FIG.3 | FIG.3 |
| FIG.4 | FIG.4 |

| '**D195 Patent**' | '**D112 Patent**' |
|---|---|
|  | |

(Appx35-42, Appx43-49.)

Defendants distribute multiple hoverboard products accused of infringing the Patents-in-Suit: "Gyroor A" (i.e., Gyroor T581 series and variants), "Gyroor B" (i.e., Gyroor G2 series and variants), "Gyroor C" (i.e., Gyroor T580 series and variants), "Gyroor D" (i.e., Gyroor G5 series and variants), and "Gyroor E" (i.e., Gyroor G11 series and variants) (collectively, "Accused Products"). (Appx1, Appx5, Appx8, Appx10, Appx12, Appx14.) The Accused Products are shown in the table below.

| **Accused Products** | |
|---|---|
| **"Gyroor A"** <br> T581 series and variants |  |

| Accused Products | |
|---|---|
| **"Gyroor B"**<br>G2 series and variants |  |
| **"Gyroor C"**<br>T580 series and variants |  |
| **"Gyroor D"**<br>G5 series and variants |  |

| Accused Products | |
|---|---|
| **"Gyroor E"** <br> G11 series and variants |  |

(Appx21-25.)

## II.    Relevant Procedural History

On August 17, 2020 Plaintiffs brought the present design-patent infringement action in the Northern District of Illinois against several online sellers of hoverboards. (Appx138-143.) Plaintiffs filed an amended complaint the following day. (Appx834.) Plaintiffs initially identified the defendants by their "merchant names" listed in an attached Schedule A, alleging that defendants' hoverboard products infringe the Patents-in-Suit. (Appx138-143, Appx834.) The District Court entered a temporary restraining order on September 22, 2020. (Appx1612.) On November 20, 2020, the day after filing their Third Amended Complaint, Plaintiffs filed a motion for a preliminary injunction to enjoin the defendants from further sale of the infringing hoverboards. (Appx1618, Appx2352.) The preliminary injunction order was entered by the District Court on November 24, 2020. (Appx2354.)

After identifying other storefronts that were associated with the defendants named in the original Schedule A and to "ensure that any entity against whom relief has been or foreseeably will be sought is listed as a defendant in the schedules," Plaintiffs moved to amend the list of defendants in Schedule A to add, *inter alia*, Gyroor, Urbanmax, Fengchi-US, HGSM, Gaodeshang-US, and Gyroshoes as defendants. (Appx227, Appx253.) On October 13, 2021, the District Court granted Plaintiffs' second motion for a preliminary injunction against the newly-added defendants. (Appx4648, Appx6718). Select defendants appealed the two preliminary injunctions to the Federal Circuit. (Appx9067, Appx9069.) On October 28, 2022, the Federal Circuit, in two separate opinions, vacated the preliminary injunctions and remanded to the District Court for further proceedings. (Appx9067, Appx9069.) *See ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 51 F.4th 1365 (Fed. Cir. 2022); *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934 (Fed. Cir. 2022).

On November 9, 2022, Plaintiffs filed a renewed motion for a preliminary injunction, which the District Court denied on December 2, 2022. (Appx7617, Appx619, Appx9075.) On July 19, 2021, Defendant Gyroor-US filed its first motion for summary judgment, asserting it did not infringe the Patents-in-Suit based on its authorization to use a third-party design patent. (Appx3318.) The District Court denied the motion, finding that the "existence of one's own patent does not constitute

a defense to infringement of someone else's patent." (Appx6704.) Discovery continued and Plaintiffs submitted an expert opinion from their expert, Paul Hatch. (Appx10371, Appx10682.) Defendants obtained contradictory expert opinions from their two experts, Gandy and Rake. (Appx10048, Appx10135.) Gandy's and Rake's opinions themselves conflicted as to their respective methods of analysis.

### III. Factual Disputes in the Record

As the expert opinions in the record demonstrate, genuine issues of material fact existed that should have been resolved by a jury, including:

- what effect the features disclosed (and not disclosed) in the relevant prior art have on the overall visual impression of the ordinary observer;

- whether each patent is infringed by each product; and

- whether the "slight" differences identified by Defendants and relied on by the District Court, visible from only certain viewpoints, would affect the overall visual impression of the ordinary observer.

In forming his opinion, Mr. Hatch construed the claimed scope of each of the Patents-in-Suit (Appx10386-10400), set the level of acuity for the ordinary observer though which to view (Appx10384-10385, Appx10454, Appx10464-10465), presented a fulsome analysis on the cited prior art of each Patent-in-Suit (Appx10396-10400), and presented written descriptions of the overall impression of

the design as a whole (Appx10413-10453)—all of which Defendants' experts failed to do (Appx10454-10472).

There is no doubt that Mr. Hatch's conclusions regarding whether the Accused Products were substantially similar and infringed the Patents-in-Suit were in direct conflict with Defendants' experts, Mrs. Gandy and Rake. Most telling, however, is the conflicting reports between Mrs. Gandy and Rake and their respective methods of analysis. For example, Mr. Gandy's analysis centered on the comparison of the accused and patented designs in view of the "closest prior art," Patent No. D739,906 ("the 'D906 Patent"). (Appx10058.) Throughout his report, Mr. Gandy drew comparisons between the Patents-in-Suit and the D'906 Patent, and distinguished the Accused Products from both. (Appx10058, Appx10060-10133.) Mr. Rake, on the other hand, did not even appear to analyze the designs of the Accused Products and Patents-in-Suit in view of any prior art. Instead, Mr. Rake relied upon the similarities between the Accused Product and a third-party, later-filed patent (that the design of the Accused Product Gyroor A is allegedly based upon). (Appx10146-10147.) In addition, Mr. Rake's analysis applied the "Gestalt principles of visual perception," specifically the so-called "Figure-Ground" principle (Appx10150-10151), in concluding that an ordinary observer familiar with the prior art would not find the Accused Products to be substantially similar to the claimed designs of the Patents-in-Suit" (Appx10166). Mr. Gandy, however, had

never heard of this method prior to his deposition. (Appx9739.) There were thus credibility determinations to be made regarding the experts' opinions.

### IV.   The Challenged Summary Judgment Ruling.

As relevant to this appeal, on the issue of infringement of the Patents-in-Suit, Defendants moved for summary judgment of non-infringement, notwithstanding the parties' competing expert opinions on infringement. (Appx10004.) The District Court granted summary judgment to Defendants, finding that none of the Accused Products are substantially similar to the Patents-in-Suit, after doing a product-by-product comparison to the Patents-in-Suit and the prior art. (Appx1-25.) The District Court analyzed each accused product and compared it to the prior art and patented designs, purportedly focusing on features other than the dominant hourglass shape which appeared in the prior art. (Appx5-19.) In so doing, the District Court weighed the evidence and found that the accused products had significantly different designs for features like the fenders, neck, foot pads, and lights compared to the patented designs. (Appx5-17.) The District Court held that these differences in the details prevented the overall designs from being substantially the same. (Appx7, Appx10, Appx12, Appx14, Appx17.)

The District Court rejected Appellants' argument that these differences were merely trivial styling details, finding that the ordinary observer would notice and focus on these differences when deciding which product to purchase. (Appx17-19.)

In so doing, the court placed too much emphasis on the detailed differences between the products, rather than focusing on the overall visual impression. (Appx5-17.) Overall, the District Court determined that no reasonable jury could find the accused products to be substantially the same as the patented designs, and therefore granted summary judgment and dismissed Appellants' claims. (Apx17-19.) This appeal follows.

## SUMMARY OF ARGUMENT

This Court should determine that the District Court misapplied the ordinary observer test in concluding that Defendants' accused products do not infringe the Patents-in-Suit, because the District Court improperly analyzed small differences between the accused and patented designs in isolation, rather than analyzing the overall impression of the claimed ornamental features in the Patents-in-Suit to the Accused Products. The District Court further compounded the error by ignoring Plaintiffs' evidence demonstrating infringement when it discounted Plaintiffs' expert's opinion regarding the overall visual impression of the design as a whole because it included the impression provided by the "hourglass" body in combination with other features, yet at the same time, considered other features of the "hourglass" body in analyzing minor differences. The District Court separately erred by resolving disputed facts, making inferences in Defendants' favor, and stepping into the jury's role in making factual determinations.

Specifically, the District Court ignored Plaintiffs' (the non-moving party) factual disputes raised about what effect the features disclosed (and not disclosed) in the relevant prior art have on the overall visual impression of the ordinary observer and whether the "slight" differences identified by Defendants and relied on by the District Court, visible from only certain viewpoints, would affect the overall impression of the ordinary observer. In these respects, the District Court erred. The errors led to an erroneous finding that the Accused Products are not substantially similar to the Patents-in-Suit, resulting in the improper summary judgment grant of non-infringement. (Appx7, Appx10, Appx12, Appx14, Appx17.)

## STANDARD OF REVIEW

The Federal Circuit reviews a district court's grant of summary judgment under the law of the regional circuit, which in this case is the Seventh Circuit. *See Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013). The Seventh Circuit reviews a summary judgment order de novo, construing the evidence and drawing inferences in the nonmoving party's favor. *Pain Center of SE Indiana LLC v. Origin Healthcare Solutions LLC*, 893 F.3d 454 (7th Cir. 2018).

A shortcut for trial on the merits, summary judgment is only appropriate when, viewing the evidence and all inferences in favor of the non-movant, there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). There is a genuine issue of material fact when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

Design patent infringement is a question of fact. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019). Summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the design as a whole is substantially similar to the accused product from the perspective of an ordinary observer. *See Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and find the Accused Products are substantially similar to the claimed designs of the Patents-in-Suit, then real fact issues remain and summary judgment should be denied. *Anderson*, 477 U.S. at 248.

## ARGUMENT

The District Court's summary judgment decision suffers from three fatal defects, each separately requiring reversal. First, the District Court misapplied the ordinary observer test by improperly isolating its analysis to particular design elements rather than the overall impression of the accused products. Second, the

District Court improperly considered a dominant feature of the Patents-in-Suit in dissecting the differences between the designs, but failed to consider the effect that *other* characteristics of the dominant feature have on the Patents-in-Suit as a whole. Finally, the District Court erroneously resolved disputed facts in Defendants' favor and granted summary judgment of non-infringement despite genuine disputes of material fact. Accordingly, the District Court's decision on summary judgment should be reversed and the case remanded for trial on the issue of infringement.

## I. THE DISTRICT COURT MISAPPLIED THE ORDINARY OBSERVER TEST BY COMPARING THE ORNAMENTAL FEATURES OF THE CLAIMED AND ACCUSED DESIGNS IN ISOLATION WITHOUT ANALYZING THE OVERALL VISUAL IMPRESSION OF THE DESIGN AS A WHOLE.

The District Court erred by comparing isolated design items in assessing infringement. It is well-established that patent design infringement is assessed from the perspective of the ordinary observer and a review of the overall visual impression of the accused product. *See Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). Infringement occurs when an ordinary observer "giving such attention as a purchaser usually gives, [deems] two designs are substantially the same" meaning "the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess*, 543 F.3d at 670 (quoting *Gorham*, 81 U.S. at 528).

A design patent infringement analysis involves a two-step process. First, considering whether the claimed design and accused products are "sufficiently distinct" or "plainly dissimilar." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing *Egyptian Goddess*, 543 F.3d at 678). If the two are found to be plainly dissimilar, there is no patent infringement. *Id.* But, "if the claimed and accused designs are not plainly dissimilar," the second step of the infringement analysis involves a three-way comparison to compare "the patented and accused designs in the context of similar designs found in the prior art." *Egyptian Goddess*, 543 F.3d at 674. "[I]f the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is more naturally likely to be regarded as deceptively similar to the claimed design, and thus infringing." *Id.* at 677. "When the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." *Id.* (citing *Egyptian Goddess*, 543 F.3d at 681).

"Differences, however, must be evaluated in the context of the Claimed Design as a whole, and not in the context of separate elements in isolation. Where, as here, the Claimed Design includes several elements, the fact finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc.*, 796

F.3d at 1335 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("The ordinary observer test applies to the patented design in its entirety, as it is claimed."). *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("[T]he mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another.").

While a hypothetical ordinary observer would attach more importance to small differences between the accused products and claimed designs in a field crowded with similar with prior art designs, that is not the case here. *See Egyptian Goddess*, 543 F.3d. at 676. "Even if the claimed design simply combines old features in the prior art, it may still create an overall appearance deceptively similar to the accused design. In that case, this court will uphold a finding of infringement." *Crocs, Inc.*, 598 F.3d at 1303. The fact finder is tasked with determining whether an ordinary observer would find the "effect of the whole design substantially the same." *Gorham*, 81 U.S. at 530.

Here, the District Court discredited the overall visual impression claimed in the patented designs, which none of the relevant prior art disclosed (including the 'D906 Patent), of an "hourglass" body *in combination with* "a relatively flat surface

across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area" or styling "lines across the body". (Appx15-19, Appx10397-10400.) The District Court compounded this error by giving too much weight to the trivial differences between the designs in contravention of *Egyptian Goddess*, 543 F.3d at 676 (where the accused design copies a particular feature of the claimed design that was not disclosed in the prior art, the accused designs are "naturally more likely to be regarded as deceptively similar."). Thus, while the attention of the ordinary observer may be drawn to the presence of these features that were not present in the prior art, little weight should be given to the trivial styling details of each. *See id.* In line with the purposes of design patent protection, the ordinary observer test was implemented to avoid the "risk of assigning exaggerated importance" to insignificant differences between the accused products and patented designs. *See id.* at 677. Instead, the focus is on the overall appearance of the design.

The District Court's infringement analysis was fundamentally flawed because it focused almost entirely on the individual elements of the claimed and accused designs, with little if any consideration of the designs as a whole. The District Court's approach would lead to routine dissection of remarkably similar designs, and it would encourage infringers to copy designs that would confuse the ordinary consumer. Indeed, contrary to the District Court's analysis and conclusion, this

Court has explained that "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993); *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984). "The mandated overall comparison [between a patented design and an accused design] is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another." *Int'l Seaway Trading Corp.*, 589 F.3d at 1243.

### A.     The Ornamental Elements of the Patents-in-Suit Must Be Considered in the Context of the "Overall Design".

Driven by a hyper-focus on individual design elements, the District Court ruled that the Accused Products and Patents-in-Suit were not substantially similar. (Appx5-17.) The ruling was erroneous because it dissected the individual elements of the patented and accused designs. (Appx5-17.) Instead of considering the designs as a whole, the District Court focused on the minor differences between five relatively minor individual elements: (1) the shape, size, and coverage of the fenders;[1] (2) the thickness of the midsection of the hourglass shape (which the

---

[1] As discussed in §III.A, *infra*, this was improper fact-finding by the District Court.

District Court referred to as the "neck");[2] (3) decorative designs on the necks; (4)

decorative designs on the footpads; and (5) shape and size of the lights. (Appx5-17.)

Viewed in isolation, the District Court erroneously characterized trivial and minor

differences between the Accused Products and Patents-in-Suit as prominent and

"significant." (Appx6, Appx13, Appx19.)

The District Court's analysis adopted the approach proffered by Defendants,

who turned to the subtleties of various features only visible from isolated viewpoints

to distinguish the Accused Products from the Patents-in-Suit. (Appx10020-10034.)

Such approach highlighting the small differences between the Accused Product and

patented designs is in line with a "points of novelty" test, not the ordinary observer

test. The improper analysis began with Defendants' expert, Mr. Gandy, who relied

on slight differences in isolated areas from certain angles to distinguish the designs

of the Accused Products. (Appx10060-10133.) Mr. Gandy argued elements in

isolation, without a view toward the overall designs. (Appx10060-10133.) In

analyzing the differences between each of the Accused Products and claimed

---

[2] As discussed in §II, *infra*, the District Court erred in this analysis by giving inflated credit to the width of the "hourglass" body (a characteristic of a background feature) when analyzing the differences in the individual features between the accused products and the claimed designs, but failing to consider the effect that *other* characteristics of the "hourglass" body have on the claimed designs as a whole. Thus, on this point, the District Court erred in two respects, first by considering the "neck" in isolation instead of considering its impact on the overall design (or lack thereof) and giving too much weight to a minor feature, §II; and second, by improper weighing, §III.B.

designs, in view of the prior art, the District Court adopted this improper, hyper-focused view of the design elements in isolation. (Appx5-17.)

### 1.    Shape, size, and coverage of the fenders

In comparing the fenders of Accused Product A to the Patents-in-Suit, for example, the District Court emphasized the "angular," "mostly flat and only partially curved" appearance of the accused fenders compared to the "curved" appearance of the patented fenders. (Appx6.) This analysis was done in complete isolation from the overall design. Rather than explain how these difference affect the overall appearance of the designs, the District Court summarily concluded: "The forgoing analysis shows that Product A's relevant features—those other than the dominant hourglass shape—are all designed differently than the features of any of the patents-in-suit. These differently designed features combine to create an overall effect that is not substantially similar to any of the three patents-in-suit, when discounting the dominant hourglass shape." (Appx7.) The District Court conducted a similar analysis with respect to the remaining Accused Products. (Appx8-15.) The District Court's analysis fails to identify the resulting overall effect is that is "not substantially similar" to any of the Patents-in-Suit. (Appx5-15, Appx15-17.)

The District Court also scrutinized the tire-coverage provided by the fenders in the designs. Specifically, the District Court found that Product A's fenders "cover only the top inner portion of each wheel" and the "'front/back view' shows that

fenders do not cover any portion of the front or back of the wheel." (Appx5.) This factual finding is simply wrong, as the "front/back view" of Product A shows a portion, albeit slight, of the fender covering the back of the wheel. (Appx21.)

### 2.    Width of the "neck"

Another minor detail the District Court relied on in isolation for its finding that the Accused Products are not substantially similar to the Patents-in-Suit is the "midsection of the hourglass shape (which the [District Court referred] to as the 'neck')." (Appx6.) The District Court found the Accused Products' "necks" were shaped differently from the Patents-in-Suit, because the "front/back view" of the Patents-in-Suit showed that their "necks" rise above the level of the footpad areas, creating a ridge between the footpads. By contrast, Product A's neck dips below the level of the foot pads, which accentuates the greater size of the footpads." (Appx6.) The District Court failed to explain how the raised "necks" affect the overall design of the Patents-in-Suit such that an ordinary observer would not find the claimed and accused designs substantially similar, only that the lower neck on Accused Product A "accentuates the greater size of the foot pads." (Appx6.)

### 3.    Decorative designs on the neck

Continuing to parse through trivial differences and minor details, the District Court relied on the different decoration on the necks of the Accused Products and Patents-in-Suit. (Appx6, Appx9, Appx10, Appx13, Appx16.) In comparing Accused

Product A to the Patents-in-Suit, the District Court found significant that the decoration on the necks was different: "Product A's neck is a plain, smooth surface. By contrast, Patent '723 has an oval decoration at the neck, while Patent '256 has a bone shape (for lack of a better description), and Patent '195 has a rectangular shape." (Appx6.) The District Court did not evaluate these features in the context of the overall impression of the Accused Products and Patents-in-Suit. (Appx6-7.)

### 4.    Decorative shapes on the footpads

The District Court next found the treads on the footpads of the Accused Products and Patents-in-Suit were all designed differently because they have different decorative shapes. (Appx6, Appx9, Appx11, Appx13, Appx16.) Taking Accused Product A again, without specifically deciding whether each of the Patents-in-Suit claimed tread lines or designs, the District Court compared the differences in the pattern of the tread lines on the footpads and found the designs to be "clearly different." (Appx7.) The District Court did not explain how these differences impact the design as a whole, only that they "combine to create an overall effect that is not substantially similar to any of the three Patents-in-Suit." (Appx7.)

### 5.    Shape and size of the lights

Finally, the District Court found the lights of the Accused Products and Patents-in-Suit to be "entirely different designs." (Appx7.) For example, the District Court found Accused Product A has narrow strip lights that run nearly the entire

length of the front end of each hourglass, whereas the lights on the 'D723 and 'D256 Patents are much smaller, shorter, but wider; while the 'D195 Patent had a longer light that substantially widened towards the neck. (Appx7.) Beyond pointing out these differences in isolation, the District Court failed to explain how these differences impact the overall designs. (Appx7, Appx18-19.)

These differences on which the district court focused are relatively minor details. When the design is viewed as a whole, most would be hardly noticeable to average consumers looking to purchase a hoverboard among the varied types of designs that exist in the marketplace, and there is no evidence of record establishing that the ordinary observer would even notice these minor differences when comparing the overall appearances of the patented and accused designs. Equally important for purposes of this appeal, the minor differences are not the type that can establish a lack of material dispute of fact precluding summary judgment, particularly when compared with the strong overall commonality between the patented and accused designs.

The District Court's piecemeal approach, considering only if design elements independently affect the overall visual impression that the designs are different, is at odds with Federal Circuit case law requiring the fact-finder to analyze the design as a whole. *See Amini Innovation Corp.*, 439 F.3d at 1372; *Columbia Sportswear N. Am., Inc.*, 942 F.3d at 1131. This Court has emphasized that it is the overall

appearance of a patented design that controls, not the appearance of individual features. *Columbia Sportswear N. Am., Inc.*, 942 F.3d at 1131. An ordinary observer is deceived by an infringing design as a result of "similarities in the overall design, not of similarities in ornamental features considered in isolation." *Id.* at 1371. Accordingly, "[d]ifferences . . . must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1336 (Fed. Cir. 2015).

### B.     Federal Circuit Precedent Illustrates the Error in District Court's Fragmented Approach and Need for Reversal.

This Court has regularly reversed district court rulings when the analysis took an improper myopic approach by analyzing individual design elements. For instance, in *Amini Innovation*, 439 F.3d at 1372, this Court deemed that such an incorrect legal analysis is a reversible "procedural error." The Court noted specifically that "the trial court mistakenly analyzed each element separately instead of analyzing the design as a whole from the perspective of an ordinary observer." *Id.*; *see Ethicon Endo-Surgery*, 796 F.3d at 1335 ("An element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error.").

*Crocs, Inc. v. Int'l Trade Comm'n* is instructive of the importance of referring to the overall appearance of designs in doing a side-by-side analysis between an accused product and a patented design. *Crocs, Inc.*, 598 F.3d at 1394 ("The proper

28

comparison requires a side-by-side view of the drawings of the '789 patent and the accused products."). While *Crocs* strictly prohibited a points-of-novelty analysis, it did permit an analysis of ornamental features in the context of "overall effects" created by said ornamental features. *Id.* at 1305-08. In comparing the accused and patented designs, the Federal Circuit properly considered the overall effects that the features had on the designs as a whole. *Id.* at 1306 ("One of the overall effects of the design is the interaction between the strap assembly portion and the base portion . . . . Multiple major design lines and curves converge at that point creating a focal point attracting the eye of the ordinary observer when viewing the overall effect of the design."). The District Court here did no such analysis of the overall effects of these features on the design as a whole. (Appx5-19.)

A recent example of the same type of analytical error that the District Court committed here was on display in *Columbia Sportswear N. Am., Inc.*, 942 F.3d at 1131. There, this Court concluded that "the district court's piecemeal approach, considering only if design elements independently affect the overall visual impression that the designs are similar, is at odds with our case law requiring the fact-finder to analyze the design as a whole." *Id.* This Court reemphasized that "[a]n ordinary observer is deceived by an infringing design as a result of 'similarities in the overall design, not of similarities in ornamental features considered in isolation.'" *Id.* (quoting *Amini Innovation*, 439 F.3d at 1371).

The Supreme Court's analysis in *Gorham* is also illustrative. 81 U.S. at 521. There, in conducting its analysis, the Supreme Court identified the many features and elements of the designs at issue. Even though the Court saw some differences in the ornamental designs, the Court nonetheless found infringement. For instance, the Court noted that, "[a]t the upper part of the handle, immediately above the point where the broader part widens from the stem with a rounded shoulder, while the external lines of both designs are first concave, and then gradually become convex, the degree of concavity is greater in the White design." *Id.* at 529. The Court also noted differences in the bead designs, the scroll designs, and thickness of the inner line, as well as "other smaller differences." *Id.*

Even with those differences, the Court focused on the relevant questions: "[I]s the effect of the whole design substantially the same?" *Id.* at 530. Posited more specifically, the Court asked: "Is the adornment in the White design used instrumentally to produce an appearance, a distinct device, or does it work the same result in the same way, and is it, therefore, a colorable evasion of the prior patent, amounting at most to a mere equivalent?" *Id.* at 530. By doing so, the Court concluded infringement, despite the numerous differences.

The contrast between the Supreme Court's approach in *Gorham* and the District Court's analysis in this case is stark—so much so that, had the district court applied its approach to the dispute in *Gorham*, the ornamental designs for the

infringing silverware would almost certainly have been deemed "sufficiently distinct" and therefore non-infringing. Of course, the Supreme Court's thorough analysis in *Gorham* prevents such an outcome. Despite *Gorham*'s guidance to remain trained on the overall appearance (as opposed to being unduly influenced by minor design differences), the district court here did just that. The opinion reads as if the court took a magnifying glass to each minor difference between the patented design and the infringing hoverboard products. Following the District Court's approach, design patents would be rendered valueless and could be infringed with impunity through insignificant product changes—as in this case.

## II.    THE DISTRICT COURT IMPROPERLY CONSIDERED THE HOURGLASS SHAPE—A DOMINANT FEATURE—IN DISSECTING THE DIFFERENCES BETWEEN THE ACCUSED PRODUCTS AND PATENTS-IN-SUIT, BUT FAILED TO CONSIDER THE EFFECT THAT *OTHER* CHARACTERISTICS OF THE "HOURGLASS" BODY HAVE ON THE CLAIMED DESIGNS AS A WHOLE.

Citing the Federal Circuit's earlier decision holding that the "hourglass" shape is "a dominant feature of the patented design and the accused products" and also "appears in the prior art," such that it was a background feature of the design, the District Court improperly discredited the overall visual impression claimed in the patented designs, which none of the relevant prior art disclosed (including the 'D906 Patent), of an "hourglass" body *in combination with* "a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area" or styling "lines across the body". (Appx5-19.) The

District Court found this characterization of the Patents-in-Suits' overall visual impression to be incorrect because "it includes the hourglass shape of the prior art, which must only be considered as background." (Appx19.)

In the same vein, the District Court considered other features of the hourglass shape—namely the "neck" and "designs of the fenders"—as a significant difference and reason for its finding of non-infringement. (Appx5-17, Appx19.) Specifically, the District Court found the Accused Products' "necks" were shaped differently from the Patents-in-Suit, because the "front/back view" of the Patents-in-Suit showed that their "necks" rise above the level of the footpad areas, creating a ridge between the footpads. By contrast, Product A's neck dips below the level of the foot pads, which accentuates the greater size of the footpads." (Appx6.) The different "necks"—which are part of the "hourglass" body—were a basis for the District Court's finding of non-infringement for each of the Accused Products. (Appx6, Appx8-11, Appx13, Appx15, Appx17.) The District Court further considered the shape and coverage of the fenders, in isolation, when comparing differences between the claimed and accused designs (Appx6, Appx8-11, Appx13, Appx15, Appx17, Appx19), but refused to consider the how the "open-arched fenders" in the Patents-in-Suit (a very similar visual trait shared by the Accused Products). (Appx17-18.)

Plaintiffs' arguments that the overall impression given in the patented designs was not based solely on background features, like the hourglass shape, as the District

Court concluded (Appx17-19), but rather how the inclusion of the features that make up the hourglass shape affect the integrated and smooth overall impression of the body, combined with many angled styling lines across the body and a relatively flat surface across the top of the main body, and open-arched fenders over the top of the wheel area. (Appx10326-10329.) More specifically, the relatively flat surface across the top of the main body such that the footpads and center section are largely on the same plane, the pronounced footing areas substantially covered by raised footpads with patterns of grooves, and the fenders arching over a portion of the tire and leaving the outside surface of the wheel largely exposed, significantly contributes to the overall impression of the designs. (Appx10414-10416, Appx10421-10424, Appx10431-10433, Appx10438-10441, Appx10448-10450.)

While "discounting the dominant hourglass shape" in the context of the overall impression of the designs, however, the District Court improperly considered the hourglass shape when analyzing differences in the "necks" of the accused products and Patents-in-Suit to find that no reasonable juror could find the accused products to be substantially similar to the Patents-in-Suit. (Appx5-17.) The hourglass shape cannot be a mere background feature in the context of the overall impression, but a dominant feature when viewing the differences between the "necks" of the products and Patents-in-Suit. Likewise, the District Court improperly discounted the open-arched fenders—and the effect they give to the overall designs of the Patents-

in-Suit—in considering the similarities between the claimed and accused designs, but relied on the minute details of the fenders (shape, size, tire-coverage) in isolation when considering the differences. (Appx6, Appx8-11, Appx13, Appx15, Appx17-19.) This was improper and is reversible error.

## III.  THE DISTRICT COURT ERRONEOUSLY RESOLVED DISPUTED FACTS IN DEFENDANTS' FAVOR AND GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT DESPITE GENUINE DISPUTES OF MATERIAL FACT.

The small visual details and trivial differences that the District Court relied on to find non-infringement would not preclude a reasonable juror from finding that the claimed designs and the Accused Products are substantially similar such that an ordinary observer would be deceived into believing that the Accused Products are the same as Appellants' patented designs. The factual nature of this infringement inquiry demonstrates that summary judgment was improper. Whether an element of the accused designs would give an ordinary observer a different visual impression than the patented design is a question of fact to be resolved by a jury. *Columbia Sportswear N. Am., Inc.*, 942 F.3d at 1131. As a factual question for the jury, infringement cannot be resolved solely based on expert testimony, as the District Court did in this case.

The ordinary observer is one who is "not an expert in the claimed designs," but rather "one of ordinary acuteness who is a principal purchaser[]" of the product. *Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1337. The hypothetical ordinary observer's

34

view point is "through the eyes of men generally" and not individuals "versed in designs in the particular trade in question" or "engaged in the manufacture or sale of articles containing such designs." *Gorham*, 81 U.S. at 527-28. The District Court's approach supplanted the jury's fact finding role as the ordinary observer, with the judge applying a more discerning expert-like perspective, in contravention of Supreme Court precedent. *See Gorham*, 81 U.S. at 528 ("Experts, therefore, are not the persons to be deceived.").

> ### A.  The District Court Erred by Granting Summary Judgment Where Genuine Disputes of Material Facts About an Ordinary Observer's View of Infringement Existed.

Before the District Court, Plaintiffs raised several disputed fact issues regarding what effect the features disclosed (and not disclosed) in the prior art have on the overall visual impression of the ordinary observer and whether the slight differences, visible from only certain viewpoints, would affect the overall impression of the ordinary observer. (Appx10454-10472.) There was thus a genuine dispute of material fact as to whether each patent is infringed by each product. *See Columbia Sportswear N. Am., Inc.*, 942 F.3d at 1129.

The District Court improperly resolved disputed facts in Defendants' favor. For example, in finding that Product A does not give the same overall impression as any of the three asserted Patents-in-Suit, the District Court found that Product A's "fenders do not cover any portion of the front or back of the wheel." (Appx5.) The

District Court then compared the Patents-in-Suit and found that their fenders "all cover a much greater portion of the wheels." (Appx5-6.) Based on the shape and wheel coverage, the District Court found the fenders of the patented designs and the accused products to be "significantly different." (Appx6.) This finding is in error, however, because the "front/back" and "perspective" views of Product A show that the fender does indeed cover a portion of the back of the top, sides, and back of the wheel, just like the design drawn in the 'D256 Patent. (Appx21.)

The District Court also found that "[t]he ordinary observer would certainly notice the footpad designs because they have varying degrees of appeal for both aesthetic and functional purposes that the ordinary observer would infer based on the shape and size of the tread (i.e., how do they feel under your feet)." (Appx18.) Plaintiffs submitted evidence that in the untrained eye of an ordinary observer, who possesses "ordinary acuteness," a relatively low level of attention would be paid to the aesthetics of the product. (Appx10454.) Thus, small visual details such as the specific shape of the shallow grooves on the footpads would not affect the overall impression of the designs as a whole. (Appx10454.) Notably, only Mr. Hatch—Plaintiffs' expert—provided any opinion regarding the level of attention the ordinary purchaser would apply to the accused and patented designs. (Appx10454, Appx10464-10465.) Mr. Hatch actually faulted Defendants' experts for failing to define the level of attention of an ordinary purchaser. (Appx10454, Appx10464-

10465.) Yet, the District Court instead improperly resolved this inference in Defendants' favor—that an ordinary purchaser would give such close attention to the minor differences and trivial details relied upon by the District Court to find non-infringement. (Appx5-17.)

In each of these instances, the District Court made a finding of fact—whether an element of Defendants' design would give an ordinary observer a different visual impression than Appellants' designs—over a disputed factual record. As this Court has explained, "[s]uch fact findings are not permitted by Rule 56 and should be resolved by a jury on remand." *Columbia Sportswear N. Am., Inc.*, 942 at 1132. The existence of these disputed facts, further evidenced by conflicting expert reports, even amongst Defendants' own experts, should have precluded summary judgment. Instead, the Court overstepped into the factfinder's purview and resolved these disputed facts.

**B.     The District Court Substituted Itself for the Fact-Finder by Resolving Disputed Facts and Erred by Resolving Such Facts in Defendants' Favor.**

The grant of summary judgment was erroneous. When viewing the evidence in the light most favorable to Appellants and making all reasonable inferences in its favor, summary judgment should not have been granted. A reasonable fact finder could conclude that, in the eyes of an ordinary observer, i.e., a retail purchaser, that Defendants' accused products infringe the Patents-in-Suit.

A design need not be found "identical" to infringe. *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992). Moreover, the "ordinary observer" is not an expert but an observer "of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." *Id.* More specifically, "the ordinary observer is a person who is either a purchaser of, or sufficiently interested in, the item that displays the patented designs and who has the capability of making a reasonably discerning decision when observing the accused item's design whether the accused item is substantially the same as the item claimed in the design patent." *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007). The Supreme Court has "long recognized across a variety of contexts that, when the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015) (ruling that "tacking" as used to determine whether a later trademark can claim priority to an earlier used trademark is a fact question for the jury since it requires a determination as to whether the "ordinary consumer" would find that the two marks create the same commercial impression).

Indeed, contradictory expert opinions as to whether an ordinary observer would deem two designs to be substantially similar creates a genuine issue of

material fact on the issue of infringement. *See Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011) ("Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate."

Here, the expert witnesses for each party advanced conflicting opinions as to whether the Accused Products infringed the Patents-in-Suit. For example, whereas Mr. Hatch concluded that the ordinary observer would be confused by the Accused Products and designs of the Patents-in-Suit as being substantially the same, Defendants' experts concluded the ordinary observer would find the products not to be substantially the same. (Appx10472-10474, Appx10133, Appx10166-10167.) Additionally, Mr. Hatch issued a declaration rebutting Defendants' experts' opinions, specifically pointing out that Mr. Gandy's and Mr. Rake's opinions were flawed because they relied upon minor differences and placed an exaggerated amount of emphasis on isolated, minor parts. (Appx10456-10472.) The existence of three separate conflicting expert reports demonstrated that genuine disputes of material fact existed regarding infringement of the Patents-in-Suit. The District Court's grant of summary judgment of non-infringement was thus improper.

## CONCLUSION

Entry of summary of judgment of non-infringement against Appellants was legal error. The resulting judgment of dismissal of the infringement claims must be

vacated, and the case should be remanded for trial infringement of the Patents-in-Suit. For the foregoing reasons, Plaintiffs respectfully request this Court reverse the District Court's grant of summary judgment of non-infringement of the Patents-in-Suit and remand this case for trial.

Dated: April 15, 2024                    Respectfully submitted,

By: /s/ Richard J.L. Lomuscio
Richard J.L. Lomuscio
STINSON LLP
100 Wall Street
Suite 201
New York, NY 1005
Telephone: 646.883.7675
richard.lomuscio@stinson.com

Adrianna M. Chavez
STINSON LLP
1850 N. Central Ave.
Suite 2100
Phoenix, AZ 85004
adrianna.chavez@stinson.com

*Attorneys for Plaintiffs-Appellants*

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

|  | **Pages** |
|---|---|
| Order Granting Defendants' Motion for Summary Judgment | APPX1-25 |
| U.S. Patent D737,723 | APPX26-34 |
| U.S. Patent D784,195 | APPX35-42 |
| U.S. Patent D785,112 | APPX43-49 |
| U.S. Patent D738,256 | APPX2228-2236 |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HANGZHOU CHIC INTELLIGENT
TECHNOLOGY CO.; and UNICORN
GLOBAL, INC.,

      Plaintiffs,

    v.

GYROOR; GYROOR-US; URBANMAX;
FENGCHI-US; HGSM; GAODESHANG-US;
and GYROSHOES,

      Defendants.

No. 20 C 4806

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Plaintiffs allege that Defendants' "hoverboard" products infringe Plaintiffs' design patents. Defendants have moved for summary judgment. That motion is granted.

**Legal Standard**

The "ordinary observer" is the "test for determining whether a design patent has been infringed." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). The "ordinary observer" is a person that "gives such attention as a purchaser usually gives." *Id.* at 670 (quoting *Gorham Co. v. White,* 81 U.S. 511 (1871)). To prove infringement, a plaintiff must demonstrate by a preponderance of the evidence that "an ordinary observer, familiar with the prior art . . . would be deceived into believing the [accused product] is the same as the patented [product]." *Egyptian Goddess*, 543 F.3d at 681; *see also id.* at 670 ("two designs are

substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other"); *id.* at 679 ("the patentee bears the ultimate burden of proof to demonstrate infringement by a preponderance of the evidence").

"In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. "In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Id.*

"When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *ABC Corp. I v. The P'ships*, 52 F.4th 934, 942 (Fed. Cir. 2022). "In other words, where a dominant feature of the patented design and the accused products . . . appears in the prior art, the focus of the infringement substantial similarity analysis in most cases will be on other features of the design." *Id.* The prior art provides a contextual "background" or a "frame of reference" that "can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. As a background feature, the "shared dominant

feature from the prior art will be . . . insufficient by itself to support a finding of substantial similarity." *ABC Corp.*, 52 F.4th at 942.

Applying these standards in *Egyptian Goddess*, the Federal Circuit affirmed a grant of summary judgment to the alleged infringer, holding that "no reasonable fact-finder could find that [the plaintiff] met its burden of showing, by a preponderance of the evidence, that an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design." *See* 543 F.3d at 682. "Thus, where appropriate, courts, in applying the ordinary observer test, both before and after *Egyptian Goddess*, have not hesitated to grant summary judgment based on a mere visual comparison of the patented design and the accused product." *Harel v. K.K. Int'l Trading Corp.*, 994 F. Supp. 2d 276, 279 (E.D.N.Y. 2014) (citing cases).

## Analysis

There are four patents in-suit and five accused products. Defendants identified patent D739,906 as the relevant prior art, and Plaintiffs do not dispute this.

All four patents-in-suit and all five accused products share with the prior art an hourglass shape. In reversing this Court's grant of a preliminary injunction, the Federal Circuit held that the "hourglass shape" is "a dominant feature of the patented design and the accused products" and also "appears in the prior art," such that "the focus of the infringement substantial similarity analysis [should] be on

3

other features of the design. The shared dominant feature from the prior art will be no more than a background feature of the design[.]" *ABC Corp.*, 52 F.4th at 942.

In that same decision, the Federal Circuit also criticized Plaintiffs' expert Paul Hatch—whose opinion Plaintiffs again rely upon in opposing summary judgment—because he found that "having an 'hourglass body' was 'unlike' the prior art," despite the fact that the prior art clearly has an hourglass body. *Id.* at 938. Addressing this criticism in their brief here on summary judgment, Plaintiffs argue that their patents claim not just an hourglass body, but "the visual impression of an 'hourglass' body ***in combination with*** 'a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area' or styling 'lines across the body.'" R. 668 at 9 (emphasis in original). Plaintiffs argue that because their patents claim these features that are not in the prior art, the "differences in the trivial styling details of each" are insufficient to establish that Defendants' products are not substantially similar to Plaintiffs' designs. *See* R. 668 at 9. Instead, "the focus is on the overall appearance of the design." *Id.*

It is certainly true that the "overall effect" is the relevant focus of an infringement analysis. *See Egyptian Goddess*, 543 F.3d at 677 (Fed. Cir. 2008) ("An ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design."). But Plaintiffs' statement that the differences between the accused products and the

4

claimed designs are "trivial" does not necessarily make it so. A product-by-product analysis is necessary to determine how the details of the designs contribute to their overall effects.

The Court undertakes this analysis with reference to single-page charts the Court has created for each accused product, which juxtapose the relevant images and drawings provided in the parties' briefs, and which are attached hereto as appendices. The parties refer to the five accused products as "A" through "E," but the Court will address Product C last because it is helpful to compare it to the other four.

### A.    Product A (Gyroor T581 series)

Plaintiffs argue that Product A infringes three of the four patents-in-suit: '723, '256, and '195. Product A does not give the same overall impression as any of the three.

First, Product A's fenders are entirely different from any of the fenders of the patents-in-suit. Product A's fenders cover only the top inner portion of each wheel. The "perspective view" in the appendix shows that the outer half of each wheel is entirely exposed. The "front/back view" shows that fenders do not cover any portion of the front or back of the wheel. Additionally, Product A's fender features a somewhat angular appearance, with the facades being mostly flat and only partially curved.

By contrast, the fenders of the patents-in-suit all cover a much greater portion of the wheels. The "fender views" in the appendix show that the fenders

shown in Patents '723 and '195 curve around the entire top half of the tires on the wheels. Patent '256's fender does not fully cover the end of the tires, but it curves around the front such that it blocks part of the view of the tire in the "front/back view." Further, unlike the angular appearance of Product A's fender, the fenders of the patents-in-suit feature a curved appearance. Specifically, Patents '723 and '195 feature 180-degree curves around the outer side of the wheels, and Patent '256 features a 90-degree curve over the top of the wheel.

In addition to the significantly different fenders, the midsection of the hourglass shape (which the Court will refer to as the "neck") for Product A is shaped differently from the patents-in-suit. The "front/back view" for each patent-in-suit shows that their "necks" rise above the level of the footpad areas, creating a ridge between the footpads. By contrast, Product A's neck dips below the level of the foot pads, which accentuates the greater size of the foot pads.

Besides the structural differences in the fenders and necks, there are also several decorative differences between Product A and the patents-in-suit. For instance, the decoration on the necks is different for each. Product A's neck is a plain, smooth surface. By contrast, Patent '723 has an oval decoration at the neck, while Patent '256 has a bone shape (for lack of a better description), and Patent '195 has a rectangular shape.

The treads on the foot pads are also all designed differently. Product A features six straight tread lines that run parallel to the edge of the foot pad and then fan out as they approach the neck. Both Patents '723 and '256 feature straight

6

lines that angle towards the center of the neck and are interrupted by a circular shape. The tread lines in Patent '195 are shown with dotted lines, which generally means that the feature is not claimed by the patent. If Patent '195 does not claim tread lines on its foot pads, it is clearly different from Product A because Product A's claimed design includes tread lines. But even considering Patent '195's tread lines as claimed, the design is entirely different because it features a large area in the middle of the pad that is devoid of tread lines.

Lastly, Product A and the patents-in-suit feature lights entirely different designs. As can be seen in the "perspective" and "front/back views," Product A's lights are narrow strips that run nearly the entire length of the front of each end of the hourglass. By contrast, the lights on the patents-in-suit '723 and '256 are all much smaller, shorter, but wider. Patent-in-suit '195 has a longer light, which unlike the uniform width of Product A's light, substantially widens towards the neck of the hourglass.

The forgoing analysis shows that the Product A's relevant features—those other than that dominant hourglass shape—are all designed differently than the features of any of the three patents-in-suit. These differently designed features combine to create an overall effect that is not substantially similar to any of the three patents-in-suit, when discounting the dominant hourglass shape. For these reasons, the Court finds that no reasonable juror could find Product A to be substantially similar to any of the patents-in-suit, '723, '256, or '195.

Appx7

B.    **Product B (Gyroor G2 series)**

Plaintiffs argue that Product B infringes all four of the patents-in-suit: '723, '256, '195, and '112. The differences between Product B and each of the patents-in-suit are even more pronounced than for Product A.

Like Product A, Product B's fenders are distinctly different from the fenders shown in any of the patents-in-suit. As discussed, the fenders shown in the patents-in-suit all cover the top of the wheel, as can be seen in the "top view" and "perspective view." They also cover at least part of the front of the wheel, as seen in the "front/back view." Additionally, patents '723 and '195 curve over the wheel to cover part of its outer side, as can be seen in the "fender" view. By contrast, Product B's fender does not cover any part of the front or outer side of the wheel, and covers a much smaller portion of the top of the wheel than any of the patents-in-suit. Moreover, like Product A, Product B's fender features an angular appearance unlike the curved appearance of each of the fenders shown in the four patents-in-suit.

Product B's "neck" is also different from the "necks" of each of the four patents-in-suit, in part because the "neck" of Product B appears to maintain the same level of the foot pads, whereas the "necks" shown in each of the four patents-in-suit rise above the level of the footpads. More strikingly, however, Product B's "neck" features an angular appearance, whereas each of the four patents-in-suit feature curved appearances. The "top view" shows that each side of Product B's neck is composed of three straight lines to form one half of a hexagon. By contrast, the

8

Appx8

"top view" of each patent-in-suit shows a smooth curve from the foot pads into the neck.

There are also several other notable decorative differences in the design of Product B when compared to each of the four patents-in-suit. For instance, the decoration on the necks is different for each. Product B's neck is free of decoration other than narrow extensions of the foot pads. By contrast, Patent '723 has an oval decoration at the neck, while Patent '256 has the already noted "bone" shape, and Patents '195 and '112 have rectangular or trapezoidal shapes at their center.

The treads on the foot pads are also all designed differently. Product B features broad, molded angular depressions in the foot pad to create treads. By contrast, all four of the patents-in-suit show multiple narrow tread lines. Both Patents '723 and '256 feature straight lines that angle towards the center of the neck and are interrupted by a circular shape. As mentioned, Patent '195's tread lines are shown with dotted lines, and so are the tread lines shown in Patent '112. A lack of claimed tread lines makes the foot pad designs for Patents '195 and '112 entirely different from the foot pad design of Product B. But to the extent the tread designs of Patents '195 and '112 should be considered, they are different than the tread design of Product B. Patent '195's foot pad features a large section devoid of tread lines. And patent '112 features tread lines arching around a circular imprint.

Lastly, like the foot pads, the lights have entirely different designs. As can be seen in the "perspective" and "front/back views," Product A's lights are narrow strips that run nearly the entire length of the front of each end of the hourglass,

9

before turning up at the ends. By contrast, the lights on the patents-in-suit '723 and '256 are all much smaller, shorter, but wider. Patent-in-suit '195 has a longer light, but it is not uniform in width like Product A, but rather substantially widens towards the neck of the hourglass. Patent '112 also features lights that run the length of the machine but are much wider than the lights on Product B, and unlike Product B, the lights shown in Patent '112 meet in the center of the machine.

As with Product A, the forgoing analysis shows that the Product B's relevant features—those other than that dominant hourglass shape—are all designed differently than the features of any of the four patents-in-suit. These differently designed features combine to create an overall effect that is not substantially similar to any of the three patents-in-suit, when discounting the dominant hourglass shape. For these reasons, the Court finds that no reasonable juror could find Product B to be substantially similar to any of the patents-in-suit, '723, '256, '195, or '112.

D.    **Product D (Gyroor G5 series)**

Plaintiffs argue that Product D infringes four patents-in-suit: '723, '256, '195, and '112. Product D does not give the same overall effect as any of the four patents-in-suit.

All four patents-in-suit are similar to the prior art in that the "top view" shows a smooth curve from the ends of the "hourglass" into the "neck" of the hourglass. By contrast, Product D angles towards the neck with straight lines with the neck ultimately forming nearly a right angle against the ends of the hourglass.

10

Appx10

Comparing the "front/back view" of Product D compared to those of the patents-in-suit also reveals that Product D's neck is shaped differently. The patents-in-suit each have a neck that rises above the level of the base of the hoverboard such that it is at or above the height of the foot pads. By contrast, the neck of Product D is narrower than the necks of the patents-in-suit such that the level of Product D's neck is below the level of the base and the foot pads.

The fenders of the patents-in-suit are also much more like each other than the fenders on Product D. The fenders of the patents-in-suit are necessarily wider than that of Product D for the simple reason that the wheels on each of the patents-in-suit are wider than those on Product D. The wheels in each of the patents-in-suit are the width of the ends of the hourglass, whereas Product D's wheels are narrower than the ends of the hourglass.

More significantly, the fenders of each of the patents-in-suit cover a much greater portion of the wheel than Product D. Patents '723 and '195 cover the top half of the tire, and Patent '112 covers only slightly less. By contrast the fender of Patent '256 does not extend to the front edge of the tire. But Product D's fender covers very little of the tire in comparison to the four patents-in-suit. It extends only over the top of the tire, and even then, is well short of the tire's front edge.

Most importantly, Product D's fender is angular, whereas the fenders of the patents-in-suit are curved. The fenders give entirely distinct impressions.

The foot pads of Product D and the four patents-in-suit all have unique tread designs. Patents '723 and '256 have similar straight lines spraying across the pad.

11

Patent '195 has similar straight lines but only across half of the pad. By contrast, Patent '112 features tread lines that are curved. The tread lines on Product D are entirely different and cannot be described as "lines" at all. Rather, they are impressions in the pad instead of lines across the pad. Similar to its fender, the design of the tread lines on Product D's foot pad gives an entirely different impression than the tread lines for any of the four patents-in-suit.

For these reasons, the Court finds that no reasonable juror could find Product D to be substantially similar to any of the patents-in-suit, '723, '256, '195, or '112.

### E.    Product E (Gyroor G11 series)

Plaintiffs argue that Product E infringes three patents-in-suit: '723, '256, and '195. Product E does not give the same overall impression as any of the three.

Like Products A, B, and D, Product E's fenders are entirely different from any of the fenders of the three patents-in-suit. Product E's fenders cover only the top inner portion of each wheel. The "perspective view" shows that the outer half of each wheel is entirely exposed. The "front/back view" shows that fenders do not cover any portion of the front or back of the wheels. Additionally, like Product A, Product E's fender features a somewhat angular appearance, with the facades being mostly flat and only partially curved.

By contrast—as already discussed—the fenders of the patents-in-suit all cover a much greater portion of the wheels. The "fender views" in the appendices show that Patents '723 and '195 curve around the entire top half of the tires on the wheels. Patent '256's fender does not fully cover the end of the tires, but it curves

12

around the front such that it blocks part of the view of the tire in the "front/back view." Further, unlike the angular appearance of Product A's fender, the fenders of the patents-in-suit show a curved appearance. Patents '723 and '195 are 180-degree curves around the outer side of the wheels. Patent '256 is a 90-degree curve over the top of the wheel.

In addition to the significantly different fenders, the "neck" of the hourglass shape for Product E is shaped differently from the three patents-in-suit. The "front/back view" for each patent-in-suit shows that their "necks" rise above the level of the footpad areas, creating a ridge between the footpads. By contrast, Product E's neck dips below the level of the foot pads, which accentuates the greater size of the foot pads.

Besides the structural differences in the fenders and necks, there are also several decorative differences between Product E and the three patents-in-suit. For instance, the decoration on the necks is different for each. Product E's neck is a plain, smooth surface. By contrast, as already noted, Patent '723 has an oval decoration at the neck, while Patent '256 has a bone shape, and Patent '195 has a rectangular shape.

The treads on the foot pads are also all designed differently. Product E features four straight and relatively broad tread lines that run parallel to the edge of the foot pad and then fan out as they approach the neck. Both Patents '723 and '256 feature straight lines that angle towards the center of the neck and are interrupted by a circular shape. As discussed,

13

The tread lines in Patent '195 are shown with dotted lines, which generally means that the feature is not claimed by the patent. The dotted lines show treads featuring a large area in the middle of the pad that is devoid of tread lines. In either case, Patent '195's foot pad design is clearly different from Product E's foot pad design because it either does not claim a tread design or claims a design that is distinct from Product E.

Lastly, like the foot pads, the lights have entirely different designs. As can be seen in the "perspective" and "front/back views," Product E's lights are strips of uniform width that run much of the length of the front of each end of the hourglass. By contrast, the lights on Patents '723 and '256 are all much smaller, shorter, but wider. Patent '195 has a longer light, but it is not uniform in width like Product E, but rather substantially widens towards the neck of the hourglass.

As with the first three accused products, Product E's relevant features are all designed differently than the features of any of the three patents-in-suit. These differently designed features combine to create an overall effect that is not substantially similar to any of the three patents-in-suit. For these reasons, the Court finds that no reasonable juror could find Product E to be substantially similar to any of the patents-in-suit, '723, '256, or '195.

**C.     Product C (Gyroor T580 series)**

Plaintiffs argue that Product C infringes three patents-in-suit: '723, '256, and '195. Like the other four accused products, Product C does not give the same overall effect as any of the three patents-in-suit.

Unlike the other four accused products, Product C's fender has some similarities to the fenders of two of the patents-in-suit. Like Patent '195, the "front/back view" shows that Product C's fender covers almost the entire top-front half of the wheel, while curving around the front in a similar fashion. However, unlike Patent '195, Product C's fender does not cover any portion of the end of the wheel, as can be seen in the "fender" and "perspective" views. In this way, Product C's fender is similar to the fender shown in patent-in-suit '256. But, Product C's fender differs from Patent '256 because Product C's fender covers almost the entire top-front of the wheel, whereas Patent '256 shows the fender revealing almost half of the top-half of the wheel in the "front/back view." Thus, while Product C's fender shares some features with the fenders shown in Patents '256 and '195, Product C's fender as a whole shows a different overall appearance than the fenders shown in Patents '256 and '195. The fender shown in the third patent-in-suit '723 covers both the end of the wheel and a greater portion of the front of the wheel, such that it too shows an overall appearance different from Product C's fender.

The rest of the design features of Product C are as different from the those in each of the patents-in-suit as are the four accused products already discussed. Like Products A, B, D, and E, the "neck" of Product C is narrower than the three patents-in-suit, which can be seen with reference to the "front/back view." The "front/back view" for each patent-in-suit shows that their "necks" rise above the level of the footpad areas, creating a ridge between the footpads. By contrast, the "front/back

Appx15

view" for Product C shows that its neck dips below the level of the foot pads, which accentuates the greater size of the foot pads.

Like the other four accused products, Product C's non-structural, decorative features also differ from the three patents-in-suit. Product C features two "c" shaped decorations facing opposing directions near the center of its neck. By contrast, Patent '723 has an oval decoration at the neck, while Patent '256 has a bone shape (for lack of a better description), and Patent '195 has a rectangular shape.

Product C's foot pads treads are just as different from the patents-in-suit as the other accused products. Product C features six straight and relatively broad tread lines that run parallel to the edge of the foot pad and then fan out as they approach the neck. Both Patents '723 and '256 feature straight lines that angle towards the center of the neck and are interrupted by a circular shape. Patent '195—to the extent its tread design is claimed—shows a tread design featuring a large area in the middle of the pad that is devoid of tread lines.

Lastly, like the foot pads, the lights have entirely different designs. As can be seen in the "perspective" and "front/back views," Product C's lights are strips of uniform width that run about two-thirds of the length of the front of each end of the hourglass. By contrast, the lights on Patents '723 and '256 are all much smaller, shorter, but wider. Patent '195 has a longer light, but it is not uniform in width like Product C, but rather substantially widens towards the neck of the hourglass.

Although Product C's fenders share some features with the patents-in-suit, the majority of Product C's relevant features are all designed differently than the features of any of the three patents-in-suit. These differently designed features combine to create an overall effect that is not substantially similar to any of the three patents-in-suit. For these reasons, the Court finds that no reasonable juror could find Product C to be substantially similar to any of the patents-in-suit, '723, '256, or '195.

**F.    Summary**

Plaintiffs argue that an ordinary observer "would pay little attention to the small differences identified by the Defendants, and instead conclude that the Accused Products share very similar visual traits—e.g., pronounced 'footing' areas, and open-arched fenders over the top of the wheel area." R. 668 at 17. The Court finds this to be an unreasonable assessment of the similarities and differences between the accused products and the claimed designs.

Plaintiffs argue that the Accused Products copy the "pronounced footing areas" featured by the patents-in-suit. But the "pronounced footing areas" are part of the hourglass shape which the Federal Circuit found to be background because it is shown in the prior art. Plaintiffs are correct that the Accused Products' design share the feature of "open-arched fenders" with the patents-in-suit. Unlike the hourglass shape, the "open-arched fenders" are not mere background because the prior art does not claim a fender design.

However, although the prior art does not claim any particular wheel or fender design, it contemplates two wheels at opposing ends of the machine. An ordinary observer—which the Court finds to be a retail purchaser—would observe that the hourglass shape with wheel at opposing ends is the overall dominant feature. But the hourglass shape with wheels at opposing ends is such an overwhelmingly dominant feature that small design details—which Plaintiffs erroneously characterize as "trivial"—stand out in relief. The ordinary observer purchasing a hoverboard product of this kind would assume that all the products they would consider would have this dominant feature. The ordinary observer would decide which product to purchase based on the details Plaintiffs mischaracterize as "trivial." While the details might be small, they stand out against the background of the hourglass shape and become the primary characteristics the ordinary observer would use to distinguish the products. For instance, the ordinary observer might prefer the appearance of: smaller rather than larger fenders; or rounded rather than angled fenders; or a midpoint of the hourglass that dips below the footpads rather than rises above them or remains level with them. Furthermore, the designs of the shape and treads of the footpads are undeniably different. The ordinary observer would certainly notice the footpad designs because they have varying degrees of appeal for both aesthetic and functional purposes that the ordinary observer would infer based on the shape and size of the tread (i.e., how do they feel under your feet). And the different shapes of the lights would also draw the ordinary observer's attention for both aesthetic and

functional reasons, which the ordinary observer would infer based on the size and positioning of the lights.

Plaintiffs argue that this sort of analysis impermissibly "compares the designs element-by-element" rather than focusing on the "overall visual impression." But as discussed, the fenders, the midpoint of the hourglass, and the designs of the footpads and lights, standout against the dominant background hourglass shape with wheels at opposing ends. The "overall visual impression" of each design can only be described with reference to these details, albeit taken together as a whole.

Oddly, Plaintiffs note that the prior art lacks footpads and suggests closed fenders. *See* R. 668 at 18-19. On this basis, Plaintiffs argue that the patents-in-suit and accused products all present the same overall visual impression of "an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area." But this characterization cannot be correct because it includes the hourglass shape of the prior art, which must only be considered as background. Further, the fact that the prior art does not include footpads, fenders, or lights indicates that these features will be the focus of the ordinary observer and most relevant to the infringement analysis. Thus, the relevant "overall impression" here is primarily given by the designs of the fenders, footpads, and lights, along with the style of the midpoint of the hourglass. Plaintiffs incorrectly dismiss the significance of the details of these features. By ignoring these details, Plaintiffs have failed to

demonstrate that a reasonable juror could find that any of the accused products are substantially similar to any of the patents-in-suit.

## Conclusion

For these reasons, the Defendants' motion for summary judgment [665] is granted and Plaintiffs' claims are dismissed. Defendants' motions to strike Plaintiffs' expert reports [645] [675] are denied as moot in light of the grant of summary judgment. Defendants' motions to clarify [560] [567] [625] are also denied as moot.

Still pending or anticipated are Plaintiffs' motion for release of the bond [653] and Defendants' motion for damages alleging that the preliminary injunction was wrongful, for which briefing has been stayed [652]. The parties should meet and confer and determine how they would like to proceed with respect to these remaining issues and submit a joint status report on the outcome of their meeting by January 26, 2024.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated:  January 12, 2024

20

|  | Fender | Foot Pad | Front/Back View | Perspective View | Bottom View | Top View |
|---|---|---|---|---|---|---|
| Accused Product A | | | | | | |
| Prior Art D'906 | | n/a | | | | |
| Patent-in-Suit D'723 | | | | | | |
| Patent-in-Suit D'256 | | | | | | |
| Patent-in-Suit D'195 | | | | | | |





Case: 1:20-cv-04806 Document #: 686 Filed: 01/12/24 Page 24 of 25 PageID #:17533

| | Fender | Foot Pad | Front/Back View | Perspective View | Bottom View | Top View |
|---|---|---|---|---|---|---|
| Accused Product D |  |  |  |  |  |  |
| Prior Art D'906 |  | n/a |  |  |  |  |
| Patent-in-Suit D'723 |  |  |  |  |  |  |
| Patent-in-Suit D'256 |  |  |  |  |  |  |
| Patent-in-Suit D'195 |  |  |  |  |  |  |
| Patent-in-Suit D'112 |  |  |  |  |  |  |

Case: 1:20-cv-04806 Document #: 686 Filed: 01/12/24 Page 25 of 25 PageID #:17534

|  | Top View | Bottom View | Perspective View | Front/Back View | Foot Pad | Fender |
|---|---|---|---|---|---|---|
| Accused Product E | | | | | | |
| Prior Art D'906 | | | | | n/a | |
| Patent-in-Suit D'723 | | | | | | |
| Patent-in-Suit D'256 | | | | | | |
| Patent-in-Suit D'195 | | | | | | |



US00D737723S

(12) **United States Design Patent**     (10) Patent No.:     **US D737,723 S**
Ying et al.                              (45) Date of Patent:    ** **Sep. 1, 2015**

(54) **SELF-BALANCING VEHICLE**

(71) Applicant: **Hangzhou Chic Intelligent Technology Co., Ltd,** Hangzhou, Zhejiang Province (CN)

(72) Inventors: **Jiawei Ying,** Hangzhou (CN); **Shaojun Cao,** Hangzhou (CN)

(73) Assignee: **HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD.,** Hangzhou, Zhejiang Province (CN)

(**) Term: **14 Years**

(21) Appl. No.: **29/511,915**

(22) Filed: **Dec. 15, 2014**

(30)          **Foreign Application Priority Data**

Jun. 13, 2014    (CN) .......................... 2014 3 0180556

(51) **LOC (10) Cl.** ............................................. **12-14**
(52) **U.S. Cl.**
USPC .......................................... **D12/1;** D21/765
(58) **Field of Classification Search**
USPC ............ D12/1, 163; D21/419, 421, 423, 426,
D21/760, 765, 766, 769, 771, 776, 803;
280/87.042, 87.021, 87.041, 5.23,
280/5.39, 205, 209, 229, 266, 282, 851;
180/181, 5.26, 6.5, 7.1, 8.2, 65.8, 907,
180/218, 65, 13; 475/750
CPC ... A63C 17/0033; A63C 17/01; A63C 17/016;
A63C 2203/40; A63C 17/012; A63C 17/12;
B62K 2202/00
See application file for complete search history.

(56)                  **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D647,991 S * | 11/2011 | Sramek ........................ | D21/765 |
| 8,469,376 B2 * | 6/2013 | Kristiansen ............. | 280/87.042 |
| 2007/0273118 A1 * | 11/2007 | Conrad ................. | 280/87.042 |
| 2011/0006497 A1 * | 1/2011 | Chen et al. ............... | 280/87.042 |
| 2012/0007331 A1 * | 1/2012 | Hsieh ........................ | 280/221 |
| 2012/0187648 A1 * | 7/2012 | Chen ................... | 280/87.042 |

* cited by examiner

*Primary Examiner* — T. Chase Nelson
*Assistant Examiner* — Ania Aman
(74) *Attorney, Agent, or Firm* — Muncy, Geissler, Olds & Lowe, P.C.

(57)                   **CLAIM**
The ornamental design for a self-balancing vehicle, as shown and described.

**DESCRIPTION**

FIG. 1 is a top plan view of a self-balancing vehicle showing our new design;
FIG. 2 is a bottom plan view thereof;
FIG. 3 is a rear elevational view thereof;
FIG. 4 is a front elevational view thereof;
FIG. 5 is a left side view thereof, the right side view being a mirror image thereof;
FIG. 6 is a rear, top, right perspective view thereof;
FIG. 7 is a front, top, left perspective view thereof; and,
FIG. 8 is a rear, bottom, left perspective view thereof.
The broken line showing is for the purpose of illustrating portions of the self-balancing vehicle and environment structure which form no part of the claimed design.

**1 Claim, 8 Drawing Sheets**





FIG.1



FIG.2



FIG.3



FIG.4



FIG.5



FIG.6



FIG.7

Appx33



FIG.8



US00D784195S

(12) **United States Design Patent**
Ying

(10) Patent No.: **US D784,195 S**
(45) Date of Patent: ** **Apr. 18, 2017**

(54) **HUMAN MACHINE INTERACTION VEHICLE**

(71) Applicant: **Hangzhou Chic Intelligent Technology Co., Ltd.**, Yuhang Dist., Hangzhou, Zhejiang (CN)

(72) Inventor: **Jiawei Ying**, Hangzhou (CN)

(73) Assignee: **Hangzhou Chic Intelligent Technology Co., Ltd.**, Hangzhou, Zhejiang Province (CN)

(**) Term: **15 Years**

(21) Appl. No.: **29/556,275**

(22) Filed: **Feb. 29, 2016**

(30) **Foreign Application Priority Data**

Oct. 9, 2015 (CN) .......................... 2015 3 0389352

(51) **LOC (10) Cl.** ............................................. **12-14**
(52) **U.S. Cl.**
USPC .................................................... **D12/1**
(58) **Field of Classification Search**
USPC ...... D12/1, 5; D21/419, 421, 423, 426, 662, D21/760, 765, 766, 769, 771, 776, 803; 701/124; 280/87.042, 87.021, 87.041, 280/5.23, 5.39, 205, 209, 229, 266, 282, 280/851; 180/181, 5.26, 6.5, 7.1, 8.2, 180/65.8, 907, 218, 65, 13
CPC .... B62K 3/007; B62K 17/00; B62K 2202/00; B62D 51/001; B62D 51/02; B62K 61/00; A63C 17/0033; A63C 17/01; A63C 17/016; A63C 2203/40; A63C 17/12
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

8,738,278 B2 * 5/2014 Chen .................... B62K 11/007
180/218
D737,723 S 9/2015 Ying et al.

| | | | |
|---|---|---|---|
| D738,256 S | 9/2015 | Ying et al. | |
| D739,906 S * | 9/2015 | Chen .................... | D21/760 |
| 9,376,155 B2 * | 6/2016 | Ying .................... | B62K 3/007 |
| 9,403,573 B1 * | 8/2016 | Mazzei .................... | B62D 51/02 |
| 2002/0008361 A1 * | 1/2002 | Smith .................... | A63C 5/031 |
| | | | 280/14.21 |
| 2005/0242538 A1 * | 11/2005 | Hiramatsu .......... | A63C 17/004 |
| | | | 280/92 |
| 2013/0238231 A1 * | 9/2013 | Chen .................... | B62K 11/007 |
| | | | 701/124 |

(Continued)

FOREIGN PATENT DOCUMENTS

CN 302534790 S 8/2013

*Primary Examiner* — T. Chase Nelson
*Assistant Examiner* — Ania Aman
(74) *Attorney, Agent, or Firm* — Muncy, Geissler, Olds & Lowe, P.C.

(57) **CLAIM**

The ornamental design for a human-machine interaction vehicle, as shown and described.

**DESCRIPTION**

FIG. 1 is a top plan view of a human-machine interaction vehicle showing my new design;
FIG. 2 is a bottom plan view thereof;
FIG. 3 is a front elevational view thereof;
FIG. 4 is a rear elevational view thereof;
FIG. 5 is a right side view thereof, the left side view being a mirror image thereof; and,
FIG. 6 is a top, rear, right perspective view thereof.
The broken lines are for the purpose of illustrating portions of the human-machine interaction vehicle and environmental structure which form no part of the claimed design.

**1 Claim, 6 Drawing Sheets**



**US D784,195 S**

Page 2

(56)                    **References Cited**

U.S. PATENT DOCUMENTS

2016/0129963 A1 *    5/2016   Ying   .................... B62K 3/007
                                                  180/6.5
2016/0325803 A1 *   11/2016   Waxman   ................. B62M 7/12

* cited by examiner



FIG.1



FIG.2

Appx38



FIG.3



FIG.4



FIG.5



FIG.6



US00D785112S

(12) **United States Design Patent**   (10) Patent No.:   **US D785,112 S**
Ying                                    (45) Date of Patent:   ** Apr. 25, 2017

(54) **HUMAN-MACHINE INTERACTION VEHICLE**

(71) Applicant: **Hangzhou Chic Intelligent Technology Co., ltd**, Yuhang Dist, Hangzhou, Zhejiang (CN)

(72) Inventor: **Jiawei Ying**, Hangzhou (CN)

(73) Assignee: **Hangzhou Chic Intelligent Technology Co., Ltd.**, Hangzhou, Zhejiang Province (CN)

(**) Term: **15 Years**

(21) Appl. No.: **29/556,300**

(22) Filed: **Feb. 29, 2016**

(30) **Foreign Application Priority Data**

Nov. 26, 2015 (CN) .......................... 2015 3 0481979

(51) **LOC (10) Cl.** ................................................. **21-02**
(52) **U.S. Cl.**
USPC .................................................. **D21/760**
(58) **Field of Classification Search**
USPC ...... D21/419, 421, 423, 426, 760, 765, 766, D21/769, 771, 776, 803; D12/1
CPC ..... A63C 17/01; A63C 17/12; A63C 2203/00; A63C 2203/011; A63C 2203/012; A63C 2203/013; A63C 2203/40; A63C 2203/52; B62D 51/02; B62K 2202/00; B62K 2207/00; B62K 2207/02; B62K 2207/04
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

D535,714 S   *   1/2007   Cheng ........................ D21/763
7,481,291 B2 *   1/2009   Nishikawa ............ B62K 17/00
                                                    180/181
D601,922 S   *  10/2009   Imai ................................. D12/1

| 8,738,278 B2 * | 5/2014 | Chen ..................... B62K 3/007 |
| | | 180/218 |
| D737,723 S   * | 9/2015 | Ying ......................... D12/1 |
| D738,256 S   * | 9/2015 | Ying ......................... D12/1 |
| D739,906 S   * | 9/2015 | Chen ...................... D21/760 |
| 9,376,155 B2 * | 6/2016 | Ying ..................... B62K 3/007 |
| 9,403,573 B1 * | 8/2016 | Mazzei ................. B62D 51/02 |
| 9,499,228 B2 * | 11/2016 | Chang .................. B62K 3/002 |
| 2007/0131461 A1* | 6/2007 | Treadwell ............ B62B 5/005 |
| | | 180/19.1 |
| 2013/0238231 A1* | 9/2013 | Chen .................. B62K 11/007 |
| | | 701/124 |
| 2015/0096820 A1* | 4/2015 | Strack ................. G11C 7/1072 |
| | | 180/181 |

FOREIGN PATENT DOCUMENTS

CN          302534790 S     8/2013

* cited by examiner

*Primary Examiner* — Cynthia M Chin
(74) *Attorney, Agent, or Firm* — Muncy, Geissler, Olds & Lowe, P.C.

(57) **CLAIM**

The ornamental design for a human-machine interaction vehicle, as shown and described.

**DESCRIPTION**

FIG. **1** is a top plan view of a human-machine interaction vehicle showing my new design;
FIG. **2** is a bottom plan view thereof;
FIG. **3** is a front elevational view thereof;
FIG. **4** is a rear elevational view thereof;
FIG. **5** is a right side view thereof, the left side view being a mirror image thereof; and,
FIG. **6** is a top, front, left perspective view thereof.
The broken lines are for the purpose of illustrating portions of the human-machine interaction vehicle and environmental structure which form no part of the claimed design.

**1 Claim, 6 Drawing Sheets**



Appx43



FIG.1



FIG.2



FIG.3



FIG.4



FIG.5



FIG.6

Appx49

US00D738256S

(12) **United States Design Patent**    (10) Patent No.: **US D738,256 S**

Ying et al.    (45) Date of Patent: ** **Sep. 8, 2015**

(54) **SELF-BALANCING VEHICLE**

(71) Applicant: **Hangzhou Chic Intelligent Technology Co., Ltd.**, Hangzhou, Zhejiang Province (CN)

(72) Inventors: **Jiawei Ying**, Hangzhou (CN); **Shaojun Cao**, Hangzhou (CN)

(73) Assignee: **HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD.**, Hangzhou, Zhejiang Province (CN)

(**) Term: **14 Years**

(21) Appl. No.: **29/511,924**

(22) Filed: **Dec. 15, 2014**

(51) LOC (10) Cl. ................................................ **12-14**

(52) **U.S. Cl.**
USPC .......................................... **D12/1**; D21/765

(58) **Field of Classification Search**
USPC ............ D12/1, 163; D21/419, 421, 423, 426, D21/760, 765, 766, 769, 771, 776, 803; 280/87.042, 87.021, 87.041, 5.23, 280/5.39, 205, 209, 229, 266, 282, 851; 180/181, 5.26, 6.5, 7.1, 8.2, 65.8, 907, 180/218, 65, 13; 475/750
CPC .. A63C 17/0033; A63C 17/01; A63C 17/016; A63C 2203/40; A63C 17/012; A63C 17/12; B62K 2202/00
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D647,991 S * | 11/2011 | Sramek | ........................ | D21/765 |
| 8,469,376 B2* | 6/2013 | Kristiansen | .............. | 280/87.042 |
| 2007/0273118 A1* | 11/2007 | Conrad | ............... | 280/87.042 |
| 2011/0006497 A1* | 1/2011 | Chen et al. | ............... | 280/87.042 |
| 2012/0007331 A1* | 1/2012 | Hsieh | ...................... | 280/221 |
| 2012/0187648 A1* | 7/2012 | Chen | ...................... | 280/87.042 |

* cited by examiner

Primary Examiner — T. Chase Nelson
Assistant Examiner — Ania Aman
(74) Attorney, Agent, or Firm — Muncy, Geissler, Olds & Lowe, P.C.

(57) **CLAIM**
The ornamental design for a self-balancing vehicle, as shown and described.

**DESCRIPTION**

FIG. **1** is a top plan view of a self-balancing vehicle showing our new design;
FIG. **2** is a bottom plan view thereof;
FIG. **3** is a front elevational view thereof;
FIG. **4** is a rear elevational view thereof;
FIG. **5** is a left side view thereof, the right side view being a mirror image thereof;
FIG. **6** is a front, top, right perspective view thereof;
FIG. **7** is a rear, top, left perspective view thereof; and,
FIG. **8** is a rear, bottom, right perspective view thereof.
The broken line showing is for the purpose of illustrating portions of the self-balancing vehicle and environment structure which form no part of the claimed design.

**1 Claim, 8 Drawing Sheets**



Case: 1:20-cv-04806 Document #: 101-13 Filed: 11/19/20 Page 12 of 34 PageID #:3803



FIG.1

Appx2229



FIG.2

Case: 1:20-cv-04806 Document #: 101-13 Filed: 11/19/20 Page 14 of 34 PageID #:3805



FIG.3

Case: 1:20-cv-04806 Document #: 101-13 Filed: 11/19/20 Page 15 of 34 PageID #:3806

**U.S. Patent**          Sep. 8, 2015          Sheet 4 of 8          US D738,256 S



FIG.4

Appx2232

**U.S. Patent**          Sep. 8, 2015          Sheet 5 of 8          US D738,256 S



FIG.5

Case: 1:20-cv-04806 Document #: 101-13 Filed: 11/19/20 Page 17 of 34 PageID #:3808

**U.S. Patent**    Sep. 8, 2015    Sheet 6 of 8    US D738,256 S



FIG.6

**U.S. Patent**          Sep. 8, 2015          Sheet 7 of 8          US D738,256 S



FIG.7

Appx2235

Case: 1:20-cv-04806 Document #: 101-13 Filed: 11/19/20 Page 19 of 34 PageID #:3810



FIG.8

Appx2236

## <u>CERTIFICATE OF COMPLIANCE WITH<br>TYPE-VOLUME LIMITATIONS</u>

The foregoing filing complies with the relevant type-volume limitation of the

Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been

prepared using proportionally-spaced typeface and includes 7,828 words.

Dated: April 15, 2024                    Respectfully submitted,

By: <u>/s/ Richard J.L. Lomuscio</u>
Richard J.L. Lomuscio
STINSON LLP
100 Wall Street
Suite 201
New York, NY 1005
Telephone: 646.883.7675
richard.lomuscio@stinson.com

Adrianna M. Chavez
STINSON LLP
1850 N. Central Ave.
Suite 2100
Phoenix, AZ 85004
adrianna.chavez@stinson.com

*Attorneys for Plaintiffs-Appellants*