**No. 2024-1471, 2024-1472**

# United States Courts of Appeals
# For the Federal Circuit

**ABC CORPORATION I and ABC CORPORATION II, EBAY INC.,**
*Plaintiffs,*

**HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD.,**
**UNICORN GLOBAL, INC.,**
*Plaintiffs-Appellants,*

**v.**

**THE PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS**
**IDENTIFIED ON SCHEDULE "A", GYROOR US, TOMOLOO OFFICIAL,**
**TOMOLOO INE, TOMOLOO FRANCHISE, TOMOLOO-US, TOMOLOO,**
*(For Continuation of Caption See Inside Cover)*

Appeal from the United States District Court for the Northern District
of Illinois, Chicago Case No. 1:20-cv-04806, Judge Thomas M. Durkin

**RESPONSE BRIEF OF DEFENDANTS-APPELLEES**

Tao Liu
tao.liu@glacier.law
**Glacier Law LLP**
41 Madison Avenue, Suite 2529
New York, NY 10010
Tel: +1332-208-8882

*Counsel for Defendants-Appellees*

Tianyu Ju
iris.ju@glacier.law
**Glacier Law LLP**
251 S Lake Ave., Ste. 910
Pasadena, CA 91101
Tel: +1 312-448-7772

*Counsel for Defendants-Appellees*

ORIGINALLY FILED: May 15, 2024
CORRECTED: June 4, 2024

**FLAGSHIP, TOMOLOO TC, TOMOLOO DX, TOMOLOO INT, URBANMAX, GAODESHANGUS, FENGCHI-US, TOMOLOO, also operating standalone websites as Tomoloo.com and Tomolooscooter.com, GYROOR, also operating standalone websites as Gyroor.com and gyroorboard.com, TOMOLOO-NX, AOXTECH, BETTER TOMOLOO, HGSM STOREFRONT, HGSM, GYROSHOES,**

*Defendants*

**GYROOR US, URBANMAX, GAODESHANGUS, FENGCHI-US, GYROOR, also operating standalone websites as gyroor.com and gyroorboard.com, HGSM, GYROSHOES,**

*Defendants-Appellees*

**YANJIN-US,**

*Respondent.*

**U.S. Patent No. D737,723, Claims the ornamental design for a self-balancing vehicle, as shown and described.**



FIG.1

FIG.2

FIG.3

FIG.4

FIG.5

FIG.6

FIG.7

FIG.8

## <u>CERTIFICATE OF INTEREST</u>

As required by Federal Circuit Rule 47.4(a), I certify the following:

1) The full name of every entity represented in the case by me are:

| URBANMAX |
|---|
| FENGCHI-US |
| GAODESHANGUS |
| GYROOR |
| GYROSHOES |
| HGSM |
| GYROOR-US |

2) For each entity, the name of every real party in interest are: not applicable.

3) There are no parent corporation(s) or publicly held corporation that own ten percent (10%) or more of the stock of each entity represented by me.

4) The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and appeared for the entity in the lower tribunal are:

Wei Wang, Na Zhang and Ruoting Men
Glacier Law LLP
41 Madison Avenue, Suite 2529
New York, NY 10010

Yu-Hao Yao (withdrew)
Glacier Law LLP
251 South Lake Avenue, Suite 910
Pasadena, CA 91101

Danielle Sylvia McKinley (withdrew)
RM Partners Law LLC
305 N. Peoria Street
Suite 200
Chicago, IL 60607

2

Stephen Z. Vegh (withdrew)
Vegh IP Legal
1240 Rosecrans Ave., Suite 120
Manhattan Beach, CA 90266

5) Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal includes:

    a. *Hangzhou Chic Intelligent Technology Co., Ltd. et al v. The Partnerships and Unincorporated Associations Identified on Schedule A*, 1:20-cv-05905, in front of the United States District Court Northern District of Illinois, will be directly or indirectly affected by this Court's decision in the pending appeal.

6) There are no organizational victims in criminal cases or debtors and trustees in bankruptcy cases.

Date: 6/4/2024                /s/ Tao Liu
                                      Tao Liu

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTEREST ........................................................... 1

TABLE OF CONTENTS .................................................................... 4

TABLE OF AUTHORITIES ............................................................... 6

STATEMENT OF RELATED CASES ................................................ 10

STATEMENT OF THE ISSUES........................................................ 11

STATEMENT OF THE CASE ........................................................... 12

   I.   RELEVANT PROCEDURAL HISTORY.................................... 13

   II.   PLAINTIFFS-APPELLANTS' EXPERT REPORT ................. 15

   III.   THE FEDERAL CIRCUIT'S ORDER .................................... 16

   IV.   THE DISTRICT COURT'S SUMMARY JUDGMENT DECISION ........................... 17

SUMMARY OF ARGUMENTS ........................................................ 19

ARGUMENTS ................................................................................ 21

   A.   STANDARD OF REVIEW .................................................. 21

   B.   THE DISTRICT COURT PROPERLY APPLIED THE ORDINARY OBSERVER
       TEST BY ANALYZING THE OVERALL DESIGN. ...................... 22

   C.   THE DISTRICT COURT DID NOT IMPROPERLY CONSIDER THE HOURGLASS
       SHAPE. .......................................................................... 30

   D.   THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT
       OF NON-INFRINGEMENT BECAUSE PLAINTIFFS-APPELLANTS FAILED TO
       PROVIDE ANY ADMISSIBLE EVIDENCE TO SUPPORT THE ALLEGED
       GENUINE DISPUTE. ......................................................... 34

     1.   Plaintiffs-Appellants' untimely expert declaration is not admissible
         evidence. ................................................................... 35

     2.   Plaintiffs-Appellants' new Expert Declaration is inadmissible for
         extremely flawed and inconsistent with the Federal Circuit's Order...... 39

   E.   THE DISTRICT COURT DID NOT ERR BY GRANTING SUMMARY JUDGMENT
       BECAUSE THERE IS NO GENUINE DISPUTE OF MATERIAL FACTS. ................ 45

   F.   THE DISTRICT COURT DID NOT ERR BY RESOLVING DISPUTED FACTS IN
       DEFENDANTS-APPELLEES' FAVOR AS PLAINTIFFS-APPELLANTS FAILED TO
       MEET THEIR BURDEN. ..................................................... 48

   G.   THE DISTRICT COURT DID NOT ERR IN FINDING THAT NO REASONABLE
       JUROR COULD FIND THE ACCUSED PRODUCTS TO BE SUBSTANTIALLY
       SIMILAR TO ANY OF THE PATENTS-IN-SUIT .............................. 49

1.  The Accused Products are Plainly Dissimilar to the Patents-in-Suit ...... 49

2.  No Reasonable Juror Could Find the Accused Products to Be Substantially Similar to Any Of The Patents-In-Suit ............................. 51

    a.  The "Accused Product A" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit ........ 52

    b.  The "Accused Product B" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit ........ 58

    c.  The "Accused Product C" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit ........ 65

    d.  The "Accused Product D" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit ........ 72

    e.  The "Accused Product E" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit ........ 79

CONCLUSION ................................................................................................. 85

STATEMENT REGARDING ORAL ARGUMENT ............................................. I

CERTIFICATE OF SERVICE ............................................................................ II

CERTIFICATE OF COMPLIANCE ................................................................... III

# TABLE OF AUTHORITIES

**Case**                                                                              **Page**

*ABC Corp. I v. P'ship & Unincorporated Associations Identified on
Schedule "A",*
    52 F.4th 934 (Fed. Cir. 2022) ...............................................................*passim*

*Alpek Polyester, S.A. de C.V. v. Polymetrix AG,*
    No. 2021-1706, 2021 WL 5974163 (Fed. Cir. Dec. 16, 2021) ....................47

*Amini Innovation Corp. v. Anthony California, Inc.,*
    439 F.3d 1365 (Fed. Cir. 2006) ...................................................................28

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).....................................................................................49

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.,*
    942 F.3d 1119 (Fed. Cir. 2019) ............................................................28, 29

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,*
    911 F.2d 670 (Fed.Cir.1990) .......................................................................21

*Chimie v. PPG Indus., Inc.,*
    402 F.3d 1371 (Fed. Cir. 2005) ...................................................................38

*cf. Alpex Computer Corp. v. Nintendo Co.,*
    102 F.3d 1214 (Fed. Cir. 1996) ...................................................................47

*Crocs, Inc. v. Int'l Trade Comm'n,*
    598 F.3d 1294 (Fed. Cir. 2010) ...................................................21, 24, 25, 27

*Conroy v. Reebok Int'l, Ltd.,*
    14 F.3d 1570 (1994) .....................................................................................21

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993).....................................................................................39

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
    363 F.3d 1263 (Fed. Cir. 2004) ...................................................................45

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ................................................................*passim*

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
    796 F.3d 1312 (Fed. Cir. 2015) ........................................26, 32, 49

*High Point Design LLC v. Buyer's Direct, Inc.*,
    621 F. App'x 632 (Fed. Cir. 2015) ................................................32

*Homeland Housewares, LLC v. Sorensen Rsch.*,
    581 F. App'x 869 (Fed. Cir. 2014) ................................................35

*Honston v. IVAC Corp.*,
    885 F.2d 1574 (Fed.Cir.1989) ........................................................45

*HR U.S. LLC v. Mizco Intern., Inc.*,
    2009 WL 890550 (E.D. N.Y. 2009) ........................................45, 48

*Int'l Rectifier Corp. v. LXYS Corp.*,
    361 F.3d 1363 (Fed.Cir.2004) ........................................................45

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed.Cir.2009) ........................................................26

*Intellicall, Inc. v. Phonometrics, Inc.*,
    952 F.2d 1384 (Fed.Cir.1992) ...................................................48-49

*L.A. Gear v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed.Cir.1993) ........................................................48

*Lanard Toys Ltd. v. Dolgencorp LLC*,
    958 F.3d 1337 (Fed. Cir. 2020) ............................................31-32, 51

*Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*,
    No. 3:15-CV-849-J-34PDB, 2019 WL 1304290 (M.D. Fla. Mar. 21,
    2019), aff'd sub nom....................................................................32

*Keach v. U.S. Trust Co.*,
    419 F.3d 626 (7th Cir.2005) ..........................................................35

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)......................................................................39

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1405 (Fed. Cir. 1997) ..................................................50

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ..................................................39

*Rainworks Ltd. v. Mill-Rose Co.*,
    622 F. Supp. 2d 650 (N.D. Ohio 2009) .......................................45

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010) ...........................................26, 27

*Salgado by Salgado v. General Motors Corp.*,
    150 F.3d 735 (7th Cir.1998) ........................................................35

*Scott v. Harris*,
    127 S. Ct. 1769 (U.S. 2007) ........................................................34

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed.Cir.1985) .....................................................21

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,
    802 F.3d 1283 (Fed. Cir. 2015) ..................................................35

*Vas–Cath Inc. v. Mahurkar*,
    935 F.2d 1555 (Fed.Cir.1991) .....................................................21

*Wing Shing Prods. (BVI) Co. Ltd. v. Sunbeam Prods., Inc.*,
    665 F. Supp. 2d 357 (S.D.N.Y. 2009) .........................................34

*Yoon Ja Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006) ..................................................47

*Zelinski v. Brunswick Corp.*,
    185 F.3d 1311 (Fed. Cir. 1999) ..................................................48

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................21

Fed. R. Civ. P. 37(c)(1) ..............................................................................35

35 U.S.C. § 289 ...........................................................................................21

Fed. R. Evid. 702 ........................................................................................39

## **STATEMENT OF RELATED CASES**

As required by Federal Circuit Rule 47.5, the following information was provided

(a) Other appeal in or from the same civil action or proceeding in the lower court
or body was previously before this or any other appellate court:

    a. ABC Corporation I v. Partnership and Unincorporated Associations,
(Fed. Cir. Case No. 22-155).

    b. ABC Corporation I v. Partnership and Unincorporated Associations,
Nos. 21-2150, 21-2277, 21-2355, 51 F.4th 1365 (Fed. Cir. Oct. 28,
2022), Circuit Judges Dyk, Taranto, and Stoll.

    c. ABC Corporation I v. Partnership and Unincorporated Associations,
No. 22-1071, 52 F.4th 934 (Fed. Cir. Oct. 28, 2022), Circuit Judges
Dyk, Taranto, and Stoll.

    d. ABC Corporation I v. Partnership and Unincorporated Associations,
(Fed. Cir. Case No. 21-2107).

(b) The title and number of any case known to counsel to be pending in this or
any other court or agency that will directly affect or be directly affected by
this court's decision in the pending appeal:

*Hangzhou Chic Intelligent Technology Co., Ltd. et al v. The Partnerships and
Unincorporated Associations Identified on Schedule A*, 1:20-cv-05905, in
front of the United States District Court Northern District of Illinois.

## <u>STATEMENT OF THE ISSUES</u>

Because Plaintiffs-Appellants' issue statements incorrectly assume that the District Court failed to analyze the overall impression of the designs as a whole and there is genuine dispute of material fact, Plaintiffs-Appellants' issue statements are inaccurate. Instead, the correct issues before this Court are:

1. Whether Plaintiffs-Appellants bear the burden of establishing, by admissible evidence, that a genuine issue of material fact exists.

2. Whether the District Court erred in its application of the ordinary observer by a product-by-product analysis and finding that a reasonable juror could not find that any of the accused products are substantially similar to any of the asserted patents.

## STATEMENT OF THE CASE

Defendants-Appellees Gyroor-US, Gyroor, Urbanmax, GaodeshangUS, Fengchi-US, Gyroshoes, and HGSM (collectively as "Defendants-Appellees") and Plaintiffs-Appellants Hangzhou Chic Intelligent Technology Co., Ltd. and Unicorn Global, Inc. (collectively as "Plaintiffs-Appellants") are in the business of designing, manufacturing or selling hoverboards.

The disputes arose from Plaintiffs-Appellants' allegation of design patent infringement against Defendants-Appellees. Since the beginning, Plaintiffs-Appellants have committed multiple procedural errors in obtaining preliminary injunctions against Defendants-Appellees, which have been addressed by the Federal Circuit. In addition, after the Federal Circuit determined that Defendants-Appellees had not demonstrated a likelihood of success on the merits, Plaintiffs-Appellants, relying on what was deemed inadmissible and unreliable expert reports from Paul Hatch ("Mr. Hatch"), filed this appeal to relitigate the issues already decided by the Federal Circuit.

The exclusionary conduct of Plaintiffs-Appellants can only be interpreted as an attempt to exclude competitors from the hoverboard market in an effort to monopolize it, through the repeated initiation of litigations against both their competitors and innocent third parties.

## I.    Relevant Procedural History

On August 17, 2020, Plaintiffs-Appellants filed a Complaint against numerous defendants, alleging that four of Plaintiffs-Appellants' U.S. Design Patents– D737,723 ("D'723 patent"), D738,256 ("D'256 patent"), D785,112 ("D'112 patent"), and D784,195 ("D'195 patent", collectively, "Patents-in-suit") have been infringed by products made or sold by Defendants-Appellees. (Appx138). The accused products were later grouped and identified as "Gyroor A," "Gyroor B," "Gyroor C," "Gyroor D," and "Gyroor E". (Appx21-25). To avoid confusion, the accused products are labelled as "Accused Product A," "Accused Product B," "Accused Product C," "Accused Product D" and "Accused Product E" in this appeal.

The overall concept of hoverboards was first disclosed in U.S. Design Patent D739,906 ("D'906 Patent" or "Prior Art"). (Appx2738). Because the D'906 was filed on March 12, 2013, earlier than any Patents-in-suit, it is a relevant prior art for noninfringement analysis.

On November 20, 2020, Plaintiffs-Appellants filed their first Motion for Preliminary Injunction against Defendants-Appellee Gyroor-US, which was later granted by the District Court. (Appx2352).

On May 6, 2021, Plaintiffs-Appellants filed a Motion to Amend Schedule A to include other Defendants-Appellees as defendants (Appx2560), which the District Court granted on May 24, 2021. (Appx2683).

On August 24, 2021, Plaintiffs-Appellants filed a second Preliminary Injunction Motion against Defendants-Appellees. (Appx4648). The District Court granted Plaintiffs-Appellants' second preliminary injunction on October 13, 2021. (Appx6718).

On October 28, 2022, the Federal Circuit vacated the two preliminary injunctions and remanded the case to the District Court for further proceedings. (Appx9067, Appx9069).

On November 9, 2022, Plaintiffs-Appellants filed a renewed Motion for Temporary Restraining Order and Preliminary Injunction. (Appx7617). On December 2, 2022, the District Court denied Plaintiffs-Appellants' renewed Motion for Temporary Restraining Order and Preliminary Injunction. (Appx9075).

On December 23, 2022, Defendants-Appellees filed a Motion for Summary Judgment of Non-Infringement. (Appx9114). On February 8, 2023, Defendants-Appellees filed a Motion to Strike Mr. Hatch's Expert Report as untimely and inadmissible. (Appx9846). On January 12, 2024, the District Court granted Defendants-Appellees' Motion for Summary Judgment of Non-Infringement and mooted Defendants-Appellees' Motion to Strike Mr. Hatch's Expert Report. (Appx1).

## II.    Plaintiffs-Appellants' Expert Report

According to the District Court's scheduling order, the parties should serve the expert reports by August 15, 2022 and complete expert discovery by October 23, 2022. (Appx126). Before the cut-off date of the expert discovery, Plaintiffs-Appellants submitted a 27-page expert report from Mr. Hatch regarding their infringement claims concerning the Patents-in-Suit. (Appx4782.) The Federal Circuit criticized and rejected this report due to its unreliability. (Appx9067).

One month after the expert discovery cut-off, Plaintiffs-Appellants submitted a new 42-page expert report from Mr. Hatch to correct his mistakes in the prior report in support of Plaintiffs-Appellants' Renewed Motion for Temporary Restraining Order and Preliminary Injunction. (Appx 7658.) Again, the District Court clearly stated that Mr. Hatch's report was problematic and subsequently rejected his analysis. (Appx 9085-9086.)

On January 25, 2023, three months after expert discovery had closed, Plaintiffs-Appellants, realizing that Mr. Hatch's expert reports had been criticized and rejected by both the Federal Circuit and the District Court and fearing a lack of evidence to oppose Defendants-Appellees' Motion for Summary Judgment, unilaterally submitted a brand-new Expert Declaration. (Appx9536). This document, which totaled 99 pages (not including the additional 69-page exhibits), was signed on January 25, 2023, and submitted without seeking the District Court's leave. The

District Court once again rejected Mr. Hatch's analysis and granted Defendants-Appellees' Motion for Summary Judgment. (Appx1).

## III.    The Federal Circuit's Order

On October 28, 2022, the Federal Circuit entered an order vacating the two preliminary injunction orders. In this order, the Federal Circuit held that "where a dominant feature of the patented design and the accused products—here the hourglass shape—appears in the prior art, the focus of the infringement substantial similarity analysis in most cases will be on other features of the design." *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022). "The shared dominant feature from the prior art will be no more than a background feature of the design." *Id*. "The D'906 patent is highly relevant to the question of infringement because it discloses an "hourglass" shape, a prominent feature common to the asserted patents and most of the accused products." *Id*., at 943. "The Hatch reports, far from recognizing that the hourglass figure of the asserted patents could not be relied on to establish substantial similarity, improperly relied on that feature to show substantial similarity. The Hatch reports did not support a finding of substantial similarity." *Id*.

Moreover, there are significant differences among the accused products themselves. *Id*. The Hatch reports "failed to analyze infringement on a product-by-product basis," and his analysis is "imprecise." *Id*. "Even a cursory review of the

four accused products shows that they are different from each other, display features not found in the asserted patents, and lack features shown in the asserted patents. For example, Accused Product D … has prominent features that differ from the asserted patents." *Id*. at 944-45. The Federal Circuit finds that the Accused Product D, cited by the Federal Circuit Court as below, is plainly dissimilar to the Patents-in-Suit. "First, the overall shape is different—while the asserted patents have a smooth, hourglass body, Product D has a more angular shape with wheel caps. Second, the wheel covers of Accused Product D have a distinctive boxy appearance as compared to the asserted patents. Accused Product D's wheel covers cover less of the wheel than the asserted patents and have angled, rather than curved, edges." *Id*. at 945.

## IV.    The District Court's Summary Judgment Decision

On January 12, 2024, the District Court granted Defendants-Appellants' Motion for Summary Judgment of Non-Infringement and dismissed all of Plaintiffs-Appellants' claims. (Appx20). Following the Federal Circuit's instructions and precedent closely, the District Court properly applied the ordinary observer test through a product-by-product analysis. Given that the Federal Circuit had previously determined that a dominant feature of the patented design – here the "hourglass shape" – appears in the prior art, the focus of the infringement substantial similarity analysis in most cases will be on other features of the design. *ABC Corp*, 52 F.4th at 942. The District Court identified significant differences in comparing the accused

17

products and the Patents-in-Suit, including: (1) entirely different fenders; (2) structural differences and decorative designs in the "necks;" (3) entirely different design on the foot pads; (4) entirely different lights. (Appx 5-17). The District Court linked these differences with the overall appearance of the designs, stating that "the relevant features are all designed differently than the features of any of the patents-in-suit. These differently designed features combine to create an overall effect that is not substantially similar to any of the three patents-in-suit." *Id*. "For these reasons, the Court finds that no reasonable juror could find [accused products] to be substantially similar to any of the patents-in-suit." *Id*.

## SUMMARY OF ARGUMENTS

Plaintiffs-Appellants argue that the District Court's infringement analysis was fundamentally flawed because it focused almost entirely on the individual elements of the claimed and accused designs, with little if any consideration of the designs as a whole. Contrary to Plaintiffs-Appellants' assertion, the District Court has thoroughly conducted a product-by-product analysis to review the overall visual impression of the designs. By examining how the details of each design contribute to their overall effects, the District Court concluded that these differences combine to create an overall effect that the accused products are not substantially similar to the Patents-in-Suit.

Plaintiffs-Appellants further argue that the District Court improperly considered the hourglass shape. However, Plaintiffs-Appellants' position is untenable because it seeks to exclude any hoverboards in the shape of "hourglass" and thus extend the scope of the Patents-in-Suit far beyond the statutorily protected new, original and ornamental design.

Moreover, Plaintiffs-Appellants attempted to evade summary judgment on non-infringement by using inadmissible expert reports to fabricate "conflicting expert testimony." Plaintiffs-Appellants' arguments are baseless because the expert report submitted by Plaintiffs-Appellants is inadmissible and unreliable, which has been repeatedly criticized by the Federal Circuit and the District Court. It is well-

settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact, and that a party may not avoid that rule simply by framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device.

Considering all of these asserted distinctions together in the context of the overall ornamental design, no reasonable jury could find that Plaintiffs-Appellants have met its burden of showing that an ordinary observer would believe the accused products to be the same as the Patents-in-Suit.

# ARGUMENTS

## A. Standard of Review

In reviewing a district court's grant of summary judgment, the Federal Circuit must make an independent determination as to whether the standards for summary judgment have been met. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (1994); *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1560 (Fed.Cir.1991); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670, 673 (Fed.Cir.1990). The Federal Circuit view the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor. *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985) (*en banc*). A motion for summary judgment is properly granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

Design patent infringement occurs when a party, "without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied." 35 U.S.C. § 289.

In determining whether an accused product infringes a patented design, this court applies the "ordinary observer" test, without any "point of novelty" perspective. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010)

(citing *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 678 (Fed. Cir. 2008)). To show infringement under the proper test, an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design. *Id*. at 681. When the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art. *Id*. If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer. *Id*. The ordinary observer, however, will likely attach importance to those differences depending on the overall effect of those differences on the design. *Id*.

## B. The District Court Properly Applied the Ordinary Observer Test by Analyzing the Overall Design.

Plaintiffs-Appellants argue that the District Court's infringement analysis was fundamentally flawed because it focused almost entirely on the individual elements of the claimed and accused designs, with little if any consideration of the designs as a whole. (Appx21). However, this argument must fail, as the District Court has thoroughly conducted a product-by-product analysis to review the overall visual impression of the designs. By examining how the details of each design contribute to their overall effects, the District Court concluded that these differences combine to create an overall effect that the accused products are not substantially similar to

22

the Patents-in-Suit. (Appx20-25). Indeed, the District Court's analysis is replete with the terms such as "overall appearance," "overall effect," "overall impression," "as a whole," and "combine". (Appx 4, 5, 7, 10, 12, 14, 15,17-19).

Plaintiffs-Appellants allege that the District Court's analysis failed to "identify the resulting overall effect is that is 'not substantially similar' to any of the Patents-in-Suit". (Appx24). Contrary to this assertion, the District Court analyzed the "entirely different" fenders, combined with the other significantly different features, including the "necks," "footpads," "lights" and other decorative designs, and found that "no reasonable juror could find Product A to be substantially similar to any of the patents-in-suit." (Appx5-7).

Plaintiffs-Appellants further allege that the District Court failed to explain how decorative shapes on the footpads impact the design as a whole. However, the District Court mentioned the following in the summary judgment decision:

> "[b]oth Patents '723 and '256 feature straight lines that angle towards the center of the neck and are interrupted by a circular shape. The tread lines in Patent '195 are shown with dotted lines, which generally means that the feature is not claimed by the patent. If Patent '195 does not claim tread lines on its foot pads, it is clearly different from Product A because Product A's claimed design includes tread lines. But even considering Patent '195's tread lines as claimed, the design is entirely different because it features a large area in the middle of the pad that is devoid of tread lines." (Appx6-7).

Notably, Plaintiffs-Appellants' argument is completely contradictory to their argument in the District Court when they opposed Defendants-Appellants' Motion

for Exceptional Finding and Attorney Fees. Plaintiffs-Appellants contend that "this Court's decision on summary judgment did analyze the visual traits, structural design, the objective view of an ordinary observer, and overall visual impression of the subject products without any indication that Plaintiffs' contentions were completely unfounded." *See* ECF. 718, p. 4.

Plaintiffs-Appellants repeatedly and baselessly allege that the differences analyzed by the District Court are minor details. However, neither Plaintiffs-Appellants, nor their expert, Mr. Hatch, provided any reasonable explanation as to why these differences are minor. Br. at 27. Further, they also failed to provide single evidence to show that the ordinary observer would not notice these differences. *Id*.

Likewise, Plaintiffs-Appellants' theory, which suggests that the infringement analysis should focus solely on the claimed design of an hourglass body as a whole, lacks any merit. Plaintiffs-Appellants misinterpreted the language in *Crocs* that "[E]ven if the claimed design simply combines old features in the prior art, it may still create an overall appearance deceptively similar to the accused design. In that case, this court will uphold a finding of infringement." Br. at 20. Plaintiffs-Appellants intentionally omits and never discusses the immediately preceding language in *Crocs* that "if the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance." *Id*. In the *Crocs* decision, the Federal Circuit criticized that the

Commission used minor differences between the patented design and the accused products to prevent a finding of infringement without a view to the design as a whole. *Crocs*, 598 F.3d at 1303–04. The proper comparation requires a side-by-side view of the drawing of the patented design and the accused products, which the District Court has strictly followed in our present case. (Appx20-25). Further, in the *Crocs* decision, the Federal Circuit also pointed out several details including "multiple major design lines and curves converge at that point" and "rounded curves and ellipses" to show that how the details attract the eye of ordinary observer when viewing the overall effect of the design. *Crocs,* 598 F.3d at 1306.

Plaintiffs-Appellants also argue that the District Court's analysis is in line with the "points of novelty" test. However, how a patented design differs from the prior art is a factor that must be considered as those differences assume more importance to the ordinary observer, depending on the "overall effect" of those differences on the design. *Crocs*, 598 F.3d at 1303. When the point of novelty test was abrogated, Federal Circuit observed that this "does not mean, of course, that the differences between the claimed design and prior art designs are irrelevant." *Egyptian Goddess*, 543 F.3d at 678. Such differences matter as "part of the overall ordinary observer test, not as a separate test focused on particular points of novelty." *Id*. Thus, the District Court's consideration of how the Patents-in-Suit relates to the

Prior Art, and its recognition that such elements are of greater importance to the ordinary observer, was appropriate and required by the Federal Circuit.

Similarly, in *Richardson*, the Federal Circuit found no error in the district court's approach of reciting the significant differences between the ornamental features of the two designs and concluding that from the perspective of an ordinary observer familiar with the prior art, the overall visual effect of the accused product is significant different from the designed patent. *Richardson v. Stanley Works, Inc*., 597 F.3d 1288, 1295–96 (Fed. Cir. 2010); *see also Egyptian Goddess,* 543 F.3d at 681 ("An ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design."); *see also Int'l Seaway Trading Corp. v. Walgreens Corp.,* 589 F.3d 1233, 1243 (Fed.Cir.2009) ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another.").

In *Ethicon*, the Federal Circuit also found no error with district court's determination that claimed and accused designs are plainly dissimilar. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1336–37 (Fed. Cir. 2015). The district court in *Ethicon* identified the most obvious difference between the claimed

and accused designs as "the overall contoured shape" of the claimed design and the "overall linear shape" of the accused design. *Id*. The district court also identified plain dissimilarities between the ornamentation of the trigger, torque knob, and button elements of the claimed and accused designs. *Id*. The Federal Circuit affirmed the district court's determination that the claimed and accused designs are plainly dissimilar by citing district court's comparison of the dissimilarities between the ornamentation of the trigger, torque knob, and button elements of the claimed and accused designs. *Id*.

Under the "ordinary observer" test, a court must consider the ornamental features and analyze how they impact the overall design. *Richardson*, 597 F.3d at 1295 ("We looked to ornamental elements ... [and w]e concluded that both the claimed design and the accused designs contained those overall ornamental effects, thereby allowing for market confusion." (citing *Crocs*, 598 F.3d at 1303–07)). That is what the District Court did in this case. Plaintiffs-Appellants erroneously characterize the fenders, neck, footpads and lights as "trivial". As discussed, the hourglass shape is the dominant feature of the prior art. The ordinary observer, which the District Court finds to be a retailer purchaser, would assume that all the products they would consider would have this dominant feature. The ordinary observer would decide which product to purchase based on the details Plaintiffs-Appellants mischaracterize as "trivial", which stand out against the background of the hourglass

shape and become the primary characteristics the ordinary observer would use to

distinguish the products. (Appx18). For instance, the ordinary observer might prefer

the appearance of: smaller rather than larger fenders; or rounded rather than angled

fenders; or a midpoint of the hourglass that dips below the footpads rather than rises

above them or remains level with them. *Id*. Furthermore, the designs of the shape

and treads of the footpads are undeniably different. *Id*. The ordinary observer would

certainly notice the footpad designs because they have varying degrees of appeal for

both aesthetic and functional purposes that the ordinary observer would infer based

on the shape and size of the tread (i.e., how do they feel under your feet). *Id*. And

the different shapes of the lights would also draw the ordinary observer's attention

for both aesthetic and functional reasons, which the ordinary observer would infer

based on the size and positioning of the lights. (Appx18-19).

Plaintiffs-Appellants also relied on the *Amini Innovation Corp* and *Columbia*

*Sportswear* cases to support its accusation against the District Court. Br. at 27. In

*Amini* case, the court vacated the ruling on the ground that the court had "mistakenly

analyzed each element separately instead of analyzing the design as a whole" and

"focused too narrowly on the isolated ornamental features, namely the ornamental

wood carvings shown in the application." *Amini Innovation Corp. v. Anthony*

*California, Inc*., 439 F.3d 1365, 1671-72(Fed. Cir. 2006). By contrast, no such error

occurred here as the District Court appropriately considered the "hourglass shape"

as background and focused on the effect of the differences in elements on the overall appearance. Moreover, the *Columbia Sportswear* case actually supported Defendants-Appellees' position, because the court reversed summary judgment order and noted that it failed to consider the substantial and significant differences between the designs raised by the accused infringer, and incorrectly deemed these differences as minor, similar to the error made by Plaintiffs-Appellants here. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc*., 942 F.3d 1119, 1130 (Fed. Cir. 2019).

In conclusion, the District Court correctly stated that "overall visual impression" of each design can only be described with reference to these details, albeit taken together as a whole. (Appx19). The fenders, the midpoint of the hourglass, and the designs of the footpads and lights, are significant differences between the ornamental features of the Patents-in-Suit and accused products and standout against the dominant background hourglass shape with wheels at opposing ends. *Id*. The District Court correctly undertook a side-by-side analysis showing that the accused products' relevant features – those other than that dominant hourglass shape – are all designed differently than the features of any of the Patents-in-Suit, which combine to create an overall effect that is not substantially similar to any of the Patents-in-Suit. (Appx7-17).

29

## C. The District Court Did Not Improperly Consider the Hourglass Shape.

In a design-patent infringement analysis, comparison prior art serves as background when comparing a claimed and accused design. *Columbia*, 80 F.4th at 1369. The context in which the claimed and accused designs are compared, i.e., the background prior art, provides such a frame of reference and is therefore often useful in the process of comparison. *Egyptian Goddess*, 543 F.3d at 676. When the differences between [those] design[s] are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. *Id*. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer. *Id*. As confirmed by the Federal Circuit, the hourglass shape, also appeared in the Prior Art, is the dominant feature of the Patents-in-Suit and the accused product in this case, and it will be considered as a background feature of the design necessary for a finding of substantial similarity but insufficient by itself to support a finding of substantial similarity. (Appx7554-7555).

Plaintiffs-Appellants did not dispute that the "hourglass" shape "appears in the prior art," and "will be no more than a background feature of the design." Br. at 31; *ABC Corp*., 52 F.4th at 942. Here, the District Court correctly considered the hourglass shape as a background when conducting the side-by-side comparison with

reference to the charts the District Court created for each accused product. (Appx20-25). The fact that the Prior Art does not include footpads, fenders, or lights indicates that these features will be the focus of the ordinary observer and most relevant to the infringement analysis. Thus, the relevant "overall impression" here is primarily given by the designs of the fenders, footpads, and lights, along with the style of the midpoint of the hourglass. Plaintiffs-Appellants incorrectly claim that the "hourglass shape cannot be a mere background feature in the context of the overall impression," which clearly contradicts the Federal Circuit's order (Appx7542) and their own admission. Br. at 22. The District Court's analysis shows that the Accused Products relevant features – those other than that dominant hourglass shape – are all designed differently than the features of any of the Patents-in-Suit. (Appx7, 10.)

Plaintiffs-Appellants' arguments are similar to those in the *Lanard Toys* case.



| asserted patent | | accused product |
|---|---|---|
| **Lanard Chalk Pencil** | **D167 patent (Fig. 1)** | **Ja-Ru Product** |

In the *Lanard Toys* case, as shown above, the accused product is much more similar to the asserted patent. *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020). However, the Federal Circuit still held that "the district court correctly granted summary judgment of noninfringement" in the view of prior art. *Id.* at 1345. The patentee' expert stated that "an ordinary observer would be unaware of these "microscopic differences." *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 3:15-CV-849-J-34PDB, 2019 WL 1304290, at *16 (M.D. Fla. Mar. 21, 2019), aff'd sub nom. The court held that "[t]his argument is unavailing, however, because such "high-level" similarities are insufficient to demonstrate infringement." *Id.* at 16 (*citing High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 642 (Fed. Cir. 2015) ("We recognize that both designs essentially consist of a slipper with a fuzzy portion extending upward out of the foot opening. Such high-level similarities, however, are not sufficient to demonstrate infringement."); *Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1336 ("Similarity at this conceptual level, however, is not sufficient to demonstrate infringement of the claimed designs.")).

Plaintiffs-Appellants' accusation of an integrated hourglass body with a relatively flat surface, footpad, and fenders are classically the "high-level" similarities. (Appx10326-10329). Plaintiffs-Appellants' position is untenable because it seeks to exclude any hoverboards in the shape of "hourglass" and thus "extend the scope of the [Patents-in-Suit] far beyond the statutorily protected 'new,

original and ornamental design.'" *Lanard Toys Ltd.*, 958 F.3d at 1345 (citing 35 U.S.C. § 171). Plaintiffs-Appellants' challenge emphasizes the District Court's extensive discussions on design elements, ornamental aspects, and points of novelty, but fails to acknowledge how appropriately those discussions were integrated into the overall infringement analysis. The District Court's detailed analysis supported its conclusion that "an ordinary observer, taking into account the prior art, would not believe that the accused products were the same as the patented designs." (Appx3).

Plaintiffs-Appellants argue that the Patents-in-Suit and accused products all present the same overall visual impression of "an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area." (Appx10326-10329). This characterization cannot be correct as it is noted that the Prior Art lacks footpads and fenders. Plaintiffs-Appellants also argue that the District Court mistakenly considered the other features of the hourglass shape – such as the "neck" – as a significant difference between the Patents-in-Suit and accused products. However, it is worth to point out that the "neck" and hourglass shape are different as the "neck" is the midsection of the hourglass shape. Plaintiffs are correct that the accused products' design share the feature of "open-arched fenders" with the Patents-in-Suit. However, unlike the hourglass shape, the "open-arched fenders" are not mere background because the prior art does not claim a fender design. Thus, the District

33

Court did not improperly consider the hourglass shape. *Wing Shing Prods. (BVI) Co. Ltd. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 363 (S.D.N.Y. 2009) ("As Egyptian Goddess itself recognized, where a particular design element sharply distinguishes, against the context of the prior art, the claimed design from the accused design, it is not error to focus on that element in the infringement analysis.").

## D. The District Court Did Not Err in Granting Summary Judgment of Non-Infringement Because Plaintiffs-Appellants Failed to Provide Any Admissible Evidence to Support the Alleged Genuine Dispute.

Once the moving party makes out its *prima facie* case, the nonmoving party bears the burden of establishing, by the submission of affirmative evidence, that a genuine issue of material fact exists as to some aspect of the *prima facie* case. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (U.S. 2007) (ruling that the genuineness of a disputed issue of fact must be supportable by record evidence). Here, Defendants-Appellees have sustained their proof burden with two admissible expert reports proving that the Patents-in-Suit are not infringed by the accused products. (Appx10048,10135). On the other side, Plaintiffs-Appellants failed to meet their burden by providing any admissible evidence to show that a genuine issue of material facts exists. Plaintiffs-Appellants alleged that they have submitted expert opinions to show the genuine issues of material fact existed. Br. at 12. However, the only expert report submitted is untimely, inadmissible and should be excluded by the Court. Thus, Plaintiffs-Appellants failed to raise any genuine issues of material

fact by admissible evidence and the District Court's Order granting Defendants-Appellees' Motion for Summary Judgment is appropriate. *Homeland Housewares, LLC v. Sorensen Rsch.*, 581 F. App'x 869, 876 (Fed. Cir. 2014) (affirming summary judgment of noninfringement since patentee failed to meet its production burden in coming forward with admissible evidence to raise an issue of fact showing infringement).

1. **Plaintiffs-Appellants' untimely expert declaration is not admissible evidence.**

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When reviewing the admissibility of expert testimony in a patent case, the Federal Circuit applies the law of the regional circuit. *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015). The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir.2005); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998).

According to the District Court's scheduling order, the expert reports should have been served by August 15, 2022, and the expert discovery closed on October

23, 2022. (Appx126). Before the cut-off date of expert discovery, Plaintiffs-Appellants submitted a 27-page expert report from Mr. Hatch regarding their infringement claims for the Patents-in-Suit. (Appx4782). However, this expert report is extremely flawed and inadmissible due to its lack of reliable principles and methods. The Federal Circuit criticized and rejected this report by stating that "The Hatch reports, far from recognizing that the hourglass figure of the asserted patents could not be relied on to establish substantial similarity, improperly relied on that feature to show substantial similarity. The Hatch reports did not support a finding of substantial similarity." *ABC Corp. I,* 52 F.4th at 943. Mr. Hatch's report failed to conduct a three-way analysis comparing the accused product, the patented design, and the prior art. *Id*. It also failed to analyze infringement on a product-by-product basis and used the wrong legal standard of the ordinary observer. *Id*.

On November 9, 2022, three months after the deadline to submit an expert report and one month after the close of expert discovery, in order to support their Renewed Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiffs-Appellants submitted a new 42-page expert report from Mr. Hatch to correct his mistakes in his earlier report. (Appx 7658). However, this untimely report is also flawed and inadmissible. The District Court clearly noted that Mr. Hatch's report is problematic and rejected his analysis. (Appx 9085-9086).

On January 25, 2023, five months after the deadline to submit an expert report and three months after the expert discovery has been closed, Plaintiffs-Appellants, realizing that Mr. Hatch's expert reports had been criticized and rejected by both the Federal Circuit and the District Court and fearing a lack of evidence to oppose Defendants-Appellees' Motion for Summary Judgment, unilaterally submitted a brand-new Expert Declaration. (Appx9536). This document, which totaled 99 pages (not including the additional 69-page exhibits), was signed on January 25, 2023, and submitted without seeking the District Court's leave. The District Court once again rejected Mr. Hatch's analysis and granted Defendants-Appellees' Motion for Summary Judgment. (Appx1).

Defendants-Appellees have addressed this issue multiple times when they opposed Plaintiffs-Appellants' Renewed Motion for Temporary Restraining Order and Preliminary Injunction and replied to Plaintiffs-Appellants' opposition to Defendants-Appellees' Motion for Summary Judgment. Even more, Defendants-Appellees filed a motion to strike Plaintiffs-Appellants' inadmissible and untimely expert reports. (Appx10647). Plaintiffs-Appellants have never disputed the fact that their expert reports were submitted after the close of expert discovery. (Appx10667).

Moreover, Plaintiffs-Appellants' untimely submitted expert reports are not substantially justified and harmless. In fact, Defendants-Appellees are being extremely prejudiced and harmed by the late submission because they had no

opportunity to have their experts examine Mr. Hatch's new opinion or to depose Mr. Hatch on the issues that arise from the new reports. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759 (7th Cir. 2004) ("[I]t is not an abuse of discretion to conclude that the additional costs to Gentiva of preparing a new summary judgment motion and further delay in extending the trial date are not harmless."). Further, since the untimely expert report was submitted after the discovery cut-off, it has resulted in significant burdens and undue delay in summary judgment briefing and the ultimate resolution of this case.

Further, in opposition to Defendants-Appellees' motion to strike Plaintiffs-Appellants' untimely expert report, Plaintiffs-Appellants contend that Mr. Hatch's declaration "provides no new information, and Mr. Hatch's opinions, methods of analysis, and conclusions have remained the same since the start." (Appx10672). Since Mr. Hatch's new declarations are identical to his previous submission, there is no need for Plaintiffs-Appellants to submit newly-signed declaration, and there would be no prejudice to Plaintiffs-Appellants if the newly-submitted reports are not admitted. The new declarations should therefore be rejected.

Thus, as Plaintiffs-Appellants' untimely submitted expert report is inadmissible, Plaintiffs-Appellants failed to provide any evidence to raise a genuine issue of material fact. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1381 (Fed. Cir. 2005) (finding the district court did not abuse its discretion in excluding Patentee's

untimely evidence); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006) (finding that the exclusion of evidence is often an appropriate sanction for the failure to comply with such deadlines).

### 2. Plaintiffs-Appellants' new Expert Declaration is inadmissible for extremely flawed and inconsistent with the Federal Circuit's Order.

Expert testimony is admissible if the party offering such evidence shows that the testimony is both reliable and relevant. Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993). Federal Rule of Evidence 702 permits expert testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert can be qualified "by knowledge, skill, experience, training, or education." *Id.*

The District Court mooted Defendants-Appellees' Motion to Strike Plaintiffs-Appellants' expert report by granting Defendants-Appellees' Motion for summary Judgment. (Appx20). However, although Mr. Hatch's report was not struck, it remains inadmissible because it is extremely flawed and contradicts to the Federal Circuit's Order.

### a. Mr. Hatch used the wrong method to conduct the comparison analysis.

"Where a patented design and an accused product are not 'plainly dissimilar,' the court must conduct a three-way analysis comparing the accused product, the patented design, and the prior art." *ABC Corp. I*, 52 F.4th at 942 (citing *Egyptian Goddess*, 543 F.3d at 677–78). "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Id.* "In other words, where a dominant feature of the patented design and the accused products—here the hourglass shape—appears in the prior art, the focus of the infringement substantial similarity analysis in most cases will be on other features of the design." *Id.*

To the beginning, Mr. Hatch's understanding of prior art is entirely incorrect. Mr. Hatch contends that "[a]s I understand, the role of prior art to help the finder of fact consider seemingly small or minor details that differentiate the patented design from the prior art." (Appx10384.) In *Egyptian* case, the court provided an example that "as in a case such as *Whitman Saddle*, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian*, 543 F.3d at 678. The court does not imply that all features not disclosed by the prior art are small and minor. Therefore, Mr. Hatch's opinion, which deems features not

disclosed by the prior art as small and minor, is entirely incorrect and renders his analysis unreliable.

The Federal Circuit has clearly pointed out that "the shared dominant feature from the prior art will be no more than a background feature of the design." *Id*. However, in Mr. Hatch's analysis, he relied on the alleged "integrated hourglass body" as the basis for his "substantially same" conclusion. (Appx10414-10453). Mr. Hatch failed to utilize the prominent common feature, "an hourglass shape," as the background for his analysis. Instead, he merely compared the Prior Art with the accused products and the Patents-in-Suit, concluding that the Prior Art gives a distinctly different impression. (Appx10414-10453). Mr. Hatch's analysis clearly did not employ the correct method of comparison, which should focus on the other features of the design as directed by the Federal Circuit. *ABC Corp. I*, 52 F.4th at 942. Plaintiffs-Appellants perpetuate Mr. Hatch's erroneous views in their argument, asserting that "hourglass shape cannot be a mere background feature in the context of the overall impression," which clearly contradicts the Federal Circuit's order (Appx7542).

Moreover, Mr. Hatch's analysis also contradicts the Federal Circuit's Order. As opined by the Federal Circuit, "[e]ven a cursory review of the four accused products shows that they are different from each other, display features not found in the asserted patents, and lack features shown in the asserted patents. For example,

Accused Product D … has prominent features that differ from the asserted patents."
*ABC Corp. I*, 52 F.4th at 944-45. The Federal Circuit opined that "the overall shape
is different—while the asserted patents have a smooth, hourglass body, Product D
has a more angular shape with wheel caps," "the wheel covers of Accused Product
D have a distinctive boxy appearance as compared to the asserted patents," and
"Accused Product D's wheel covers cover less of the wheel than the asserted patents
and have angled, rather than curved, edges." *Id*. at 945. However, Mr. Hatch simply
ignored these differences between the accused products and the Patents-in-Suit.

### b. Mr. Hatch's analysis is characterized by conclusory statements and a cut-and-paste approach.

In the above-mentioned Order, the Federal Circuit emphasized that the
District Court failed to conduct a product-by-product analysis, "which is particularly
important here in light of significant differences among the accused products
themselves." *ABC Corp. I*, 52 F.4th at 943. Despite several impermissible
amendments, Mr. Hatch continues to overlook the differences among the accused
products. In his infringement analysis, he merely employs a cut-and-paste approach,
replicating the same analysis across all comparisons between all different accused
products and the Patents-in-Suit. (Appx10414,10416, 10419, 10421-22, 10424,
10426-27, 10428-29, 10431, 10433-34, 10436, 10438-39, 10440-41, 10443, 10445,
10448, 10450-51, 10452-53). Mr. Hatch's analysis fails to account for the significant
differences among the accused products themselves. He repetitively uses the

description: "[The accused products] and the claimed design of the [Patents-in-Suit] both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area" across all his analyses. The only variation occurs in his comparisons of the accused products with the D'195 Patent and D'112 Patent, where he adds "many horizontal styling lines across the body" and "many angled styling lines across the body" to his analysis. (Appx10419, 10426, 10428, 10436, 10443, 10445, 10453). However, these alleged horizontal and angled styling lines in the D'195 Patent and D'112 Patent are depicted as broken lines, which even do not form part of the claimed design. Instead, they are merely used to show "the environment in which the design is associated". *Think Green Ltd. v. Medela AG*, No. 21 C 5445, 2022 WL 6123348, at *2 (N.D. Ill. Oct. 7, 2022)

Furthermore, Mr. Hatch's report is conclusory. As pointed out by the District Court in its order denying Plaintiffs-Appellants' Renewed Motion Temporary Restraining Order and Preliminary Injunction, that "[t]he problem with Hatch's analysis is that he does not explain why simply featuring pronounced footings and open fenders means the accused products are substantially similar to the patents in suit while the prior art is in another 'ballpark.'" (Appx9085). Mr. Hatch merely identified those aspects such as flat surface, pronounced footings and open-arched fenders featured by the Patents-in-Suits and the accused products, but "stops at the

fact that both the patents in suit and the accused products merely possess these features." (Appx9086). Mr. Hatch "failed to conduct an analysis of whether these features themselves are substantially similar in the manner of their design, which is where 'the focus' of the analysis must be." *Id.* (*citing ABC Corp*, 52 F.4th at 942). Moreover, Mr. Hatch concluded that the accused products are not plainly dissimilar with the Patents-in-Suit without providing any analysis or explanation. (Appx 10413-10453). Mr. Hatch ignored the undisputed facts that the accused products are different from each other, display features not found in the Patents-in-Suit, and lack features shown in the Patents-in-Suit, as opined by the Federal Circuit. *ABC Corp. I*, 52 F.4th at 944. The Federal Circuit also held that the overall shape of Accused Product D differs from the Patents-in-Suit. *Id*. Mr. Hatch disregarded the Federal Circuit's decisions by providing no explanations for these differences.

The District Court did not strike Mr. Hatch's analysis because it granted Defendants-Appellees' Motion for Summary Judgment of Non-Infringement. (Appx20.) Even if Mr. Hatch's reports are considered, the District Court correctly found that no reasonable juror would find the accused products are substantially similar to any of the Patents-in-Suit. *See Egyptian*., 543 F.3d at 681-82 (Expert testimony "cannot create a material issue of fact, where [a] visual comparison reveals that the alleged infringing [design] is not substantially similar to the [patented] design").

44

**E. The District Court Did Not Err by Granting Summary Judgment Because There Is No Genuine Dispute of Material Facts.**

Plaintiffs-Appellants claimed they "raised several disputed fact issues," a statement which proves to be clearly incorrect as the only alleged "evidence" Plaintiffs-Appellants relied on is Mr. Hatch's report and this report is inadmissible and conclusory. This reliance represents a frivolous tactic by the Plaintiffs-Appellants, using an inadmissible expert report to fabricate "conflicting expert testimony" in an attempt to evade summary judgment on non-infringement. Br. at 13. It is well-settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact, and that a party may not avoid that rule simply by framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004); *Honston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed.Cir.1989); *Int'l Rectifier Corp. v. LXYS Corp.*, 361 F.3d 1363, 1375 (Fed.Cir.2004); *HR U.S. LLC v. Mizco Intern., Inc.*, 2009 WL 890550, *11–*13 (E.D. N.Y. 2009); *Rainworks Ltd. v. Mill-Rose Co.*, 622 F. Supp. 2d 650 (N.D. Ohio 2009) (granting accused infringer summary judgment of no design patent infringement and ruling that patentee's conclusory statements that a reasonable jury could find infringement failed to meet the patentee's burden to raise an issue of fact as to infringement).

Plaintiffs-Appellants alleged that the District Court erred in finding that the fenders of Accused Product A do not cover any portion of the front or back of the wheel. Br. at 35. However, it is unclear how Plaintiffs-Appellants concluded that the fenders of Accused Product A cover a portion of the sides and back of the wheel, as the pictures clearly shows otherwise. (Appx21). Even if the fenders cover slightly more area than suggested, the District Court did not err in finding the fenders are "significantly different." Unlike the curved fenders that wrap around the outer side of the wheels as the Patents-in-Suit, the fenders of Accused Product A have an angular appearance and leave the wheels entirely exposed.

Plaintiffs-Appellants also alleged that the District Court improperly found that the ordinary observer would notice the footpad designs between the accused products and the Patents-in-Suit. Br. at 36. Plaintiffs-Appellants alleged that they submitted evidence that the ordinary observer would pay a relatively low level of attention and the small visual details would not affect the overall impression of the designs as a whole. *Id.* The arguments presented by Plaintiffs-Appellants' are flawed for several reasons. First, the evidence they rely upon, Mr. Hatch's report, is inadmissible as previously discussed. Second, the alleged evidence, Mr. Hatch's declaration, fails to substantiate his assertion that the ordinary observer would pay only minimal attention to the aesthetic details of the product. (Appx10464-10465). Third, Mr. Hatch did not address why those differences are merely small visual

details and would not be noticed by the ordinary observer and affect the overall impression of the design. Both Mr. Hatch and Plaintiffs-Appellants repeatedly and baselessly asserted that all the differences highlighted by the District Court and Defendants-Appellees are minor. They fail to justify why these differences are considered minor, whereas the similarities they point out are not. In fact, they provide no credible explanation at all. Mere conclusory and unsupported statements cannot establish a genuine issue of material facts, as affirmed in numerous precedents. *Alpek Polyester, S.A. de C.V. v. Polymetrix AG*, No. 2021-1706, 2021 WL 5974163, at *6 (Fed. Cir. Dec. 16, 2021) (summary judgment properly granted against patentee where patentee's expert's testimony was conclusory); *Yoon Ja Kim v. ConAgra Foods, Inc*., 465 F.3d 1312, 1320 (Fed. Cir. 2006) (affirming JMOL of noninfringement where "conclusory [expert] testimony" was the basis for infringement); *cf. Alpex Computer Corp. v. Nintendo Co*., 102 F.3d 1214, 1222-23 (Fed. Cir. 1996) (holding that conclusory expert testimony did not support a finding of infringement). Fourth, Mr. Hatch and Plaintiffs-Appellants' position is directly contrary to the Federal Circuit's order that "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *ABC Corp*., 52 F.4th at 942.

**F. The District Court Did Not Err by Resolving Disputed Facts in Defendants-Appellees' Favor as Plaintiffs-Appellants Failed to Meet Their Burden.**

Plaintiffs-Appellants allege that the District Court substituted itself for the fact-finder by resolving disputed facts and erred by resolving such facts in Defendants-Appellees' favor. Br. at 37. In general, infringement in a design patent case is a question of fact that the patentee must prove by a preponderance of the evidence. *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed.Cir.1993). "Summary judgment…is appropriate where specific ornamental features substantially impact the overall design of the accused product and distinguish the overall design of the accused product from the patented design." *HR U.S. LLC*, 2009 WL 890550, at *12. Unlike the *Columbia Sportswear* case cited by Plaintiffs-Appellants, it is the Plaintiffs-Appellants, patentee of this case, who failed to provide admissible evidence and raise any genuine dispute of fact on the record.

It is the District Court's position that after rejecting Plaintiffs-Appellants' expert's analysis and product-by-product analysis, no reasonable juror could find the accused products to be substantially similar to any of the Patents-in-Suit. (Appx4-17). The District Court's assessment "does not constitute impermissible fact-finding as [Plaintiffs-Appellants] claim. Rather, the court was correctly trying to determine if the expert's testimony raised a genuine issue for trial." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999); *see also Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387 (Fed.Cir.1992) (affirming the district court's grant of

Intellicall's motion for summary judgment of noninfringement under the doctrine of equivalents because Phonometrics failed to produce evidence on the equivalency of the function performed by Intellicall's accused device to the function required in claim 1 of Intellicall's patent); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry to summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Thus, since Plaintiffs-Appellants failed to raise any genuine dispute of fact, the District Court cannot error in resolving disputed facts in Defendants-Appellees' favor.

## G. The District Court Did Not Err in Finding That No Reasonable Juror Could Find the Accused Products to Be Substantially Similar To Any Of The Patents-In-Suit

### 1. The Accused Products are Plainly Dissimilar to the Patents-in-Suit

A design patent infringement analysis involves a two-step process. First, considering whether the claimed design and accused products are "sufficiently distinct" or "plainly dissimilar." *Ethicon,* 796 F.3d at 1312 (citing *Egyptian Goddess*, 543 F.3d at 678). If the two are found to be plainly dissimilar, there is no patent infringement. *Id*. This is the case here, as even a cursory review of the accused products shows that they are different from each other, display features not found in

the Patents-in-Suit, and lack features shown in the Patents-in-Suit. *ABC Corp. I*, 52 F.4th at 944-45.

For example, a side-by-side comparation shows that accused products and the Patents-in-Suit, taken as a whole, create overall visual impressions that would appear plainly dissimilar to the ordinary observer. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1405 (Fed. Cir. 1997) (directing district courts to focus on the "overall ornamental visual impression" created by patented and accused designs). (Appx21-25).

Further, the overall shape is different - the recessed center portion of the claimed design of the Patents-in-Suit is concavely curved, whereas the recessed center portions of the design of the accused products have a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. (Appx10048).

Considering all of these asserted distinctions together in the context of the overall ornamental design, no reasonable jury could find that Plaintiffs-Appellants have met its burden of showing that an ordinary observer would believe the accused design to be the same as the Patents-in-Suit, or even a colorable imitation of the patented design. *See Egyptian Goddess*, 543 F.3d at 679 ("[T]he patentee bears the ultimate burden of proof to demonstrate infringement by a preponderance of the evidence."). Thus, the District Court did not err in finding that Defendants-

Appellees' accused products do not infringe the Patents-in-Suit as the accused products and the Patents-in-Suit are found to be plainly dissimilar.

### 2. No Reasonable Juror Could Find the Accused Products to Be Substantially Similar to Any Of The Patents-In-Suit

Where a patented design and an accused product are not "plainly dissimilar," the court must conduct a three-way analysis comparing the accused product, the patented design, and the prior art. *Egyptian Goddess*, 543 F.3d at 677–78. "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Id*. at 676; *see also Lanard*, 958 F.3d at 1344. If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer. *Id*. The ordinary observer, however, will likely attach importance to those differences depending on the overall effect of those differences on the design. *Id*.

In other words, where a dominant feature of the patented design and the accused products—here the hourglass shape—appears in the prior art, the focus of the infringement substantial similarity analysis in most cases will be on other features of the design. (Appx7542). The shared dominant feature from the prior art will be no more than a background feature of the design, necessary for a finding of

substantial similarity but insufficient by itself to support a finding of substantial similarity. *Id*.

### a. The "Accused Product A" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit

*First*, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. (Appx10061). In fact, the hourglass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the design of the Accused Product A. *Id*. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product A is substantially flat and slightly recessed down below the opposing outer foot surfaces. *Id*.

| Accused Product A — Top View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent |  |
| Patents-in-suit D'256 Patent |  |



| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| Prior Arts D'906 Patent | |
| Accused Product A | |

The only common feature on the top surface of the claimed design of the Patents-in-Suit and the design of the Accused Product A not shown on the D'906 Patent is the foot pads on the opposing foot surfaces. However, it is clear that the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product A differ not only in their peripheral shape but also the decorative pattern of ribs on each. *Id*.

***Second***, from the bottom view, the shape and appearance of the bottom surface of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. *Id*. Specifically, both the Patents-in-Suit and the design of the D'906 Patent

have opposing flat, plain outer portions and a smooth continuous concavely curved central portion. *Id*. However, the bottom surface of the design of the Accused Product A differs from both the Patents-in-Suit and the design of the D'906 Patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally upwardly protruding arcuate edge. *Id*. In addition, the recessed central portion of the design of the Accused Product A is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs. *Id*.



| Accused Product A — Bottom View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |



***Third***, from the front/back view, the front and rear surfaces of the Patents-in-Suit and the design of D'906 Patent are substantially similar in shape and appearance. *Id*. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. *Id*. On the contrary, while the design of the Accused Product A has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the Patents-in-Suit and the design of D'906 Patent, the central portion of the front and rear surfaces of the design of the Accused Product A differs significantly from the Patents-in-Suit and the design of D'906 Patent. *Id*. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the concavely curved recessed central portion. *Id*. Also, on the right

front vertically flat upper portion of the design of the Accused Product A is the word "GYROOR". *Id.*



| Accused Product A — Front/Back View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| Prior Arts D'906 Patent | |
| Accused Product A | |

**Fourth**, it's noted that the wheel covers at each end of the claimed design of the Patents-in-Suit, the design of D'906 Patent, and the design of Accused Product A differ from each other as shown in the top view and front and rear views above as well as the side view and perspective view below. The shape and appearance of the wheel covers in the claimed design of the Patents-in-Suit are closer to the wheel covers shown in broken lines in the design of D'906 Patent than the wheel covers of the design of the Accused Product A. *Id.* Specifically, the wheel covers shown on the claimed design of the Patents-in-Suit and the design of D'906 Patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of the Accused Product A are somewhat squared off and do not extend over the entire wheel, but rather partially over the wheel. *Id.*

| Accused Product A — Perspective View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | Patents-in-suit D'256 Patent |
|  |  |
| Patents-in-suit D'195 Patent | Patents-in-suit D'112 Patent |
|  |  |



| Prior Arts D'906 Patent | |
| Accused Product A | |

In conclusion, in view of the above analysis of the claimed design of the Patents-in-Suit with the design of the Accused Product A and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the Accused Product A. Further, the shape and appearance of the surfaces and features of the design of Accused Product A are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

### b. The "Accused Product B" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit

*First*, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. (Appx10074). In fact, the hour glass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the

design of the Accused Product B. *Id*. Specifically, the recessed center portion of the claimed design of the Patents-in-Suit and the design of the D'906 Patent are concavely curved, whereas the recessed center portion of the design of the Accused Product B has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. *Id*. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product B is substantially flat and slightly recessed down below the opposing outer foot surfaces. *Id*.



| Accused Product B — Top View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |



The only common feature on the top surface of the claimed design of Patents-in-Suit and the design of the Accused Product B not shown on the design of the D'906 Patent is the foot pads on the opposing foot surfaces. However, it is clear that the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product B differ significantly in their peripheral shape as well as the decorative pattern on each. *Id.*

**Second**, from the bottom view, the shape and appearance of the bottom surface of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. *Id.* Specifically, both the Patents-in-Suit and the design of the D'906 Patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion. *Id.* However, the bottom surface of the design of the Accused Product B differs from both the Patents-in-Suit and the design of the D'906 Patent

in that the opposing flat outer portions have a downwardly protruding surface having a pattern of vent holes and the recessed central portion is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having four narrow longitudinal ribs. *Id*.



| Accused Product B — Bottom View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| Prior Arts D'906 Patent | |



**Third**, from the front/back view, the front and rear surfaces of the Patents-in-Suit and the design of D'906 Patent are substantially similar in shape and appearance. *Id*. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. *Id*. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the Patents-in-Suit and the lines on the front and rear surface of the claimed design of the Patents-in-Suit. *Id*. On the contrary, while the design of Accused Product B has front and rear surfaces having a convexly curved lower portion that merges with the bottom surface as the claimed design of the Patents-in-Suit and the design of D'906 Patent, the upper portion of the front and rear surfaces of the design of the Accused Product B differs significantly from claimed design of the Patents-in-Suit and the design of D'906 Patent. *Id*. Specifically, the upper portion of the front and rear surfaces of the Accused Product B has a wide diagonally downwardly sloping portion that merges with a narrow vertically straight central portion. In addition, the front and rear surfaces of the Accused Product B have elongated asymmetrically shaped LED lights. *Id*.



**Fourth**, it's noted that the wheel covers at each end of the claimed design of the Patents-in-Suit, the design of D'906 Patent, and the design of Accused Product A differ from each other as shown in the top view and front and rear views above as

well as the side view and perspective view below. The shape and appearance of the wheel covers in the claimed design of the Patents-in-Suit are closer to the wheel covers shown in broken lines in the design of D'906 Patent than the wheel covers of the design of the Accused Product B. *Id*. Specifically, the wheel covers shown on the claimed design of the Patents-in-Suit and the design of D'906 Patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the Accused Product B have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel, but rather partially over the wheel. *Id*. In addition, the inner surface of the wheel covers on the design of Accused Product B has a protruding trapezoidal shaped portion and the outwardly curved top surface includes the word "Gyroor". *Id*.

| Accused Product B — Perspective View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | Patents-in-suit D'256 Patent |
|  |  |
| Patents-in-suit D'195 Patent | Patents-in-suit D'112 Patent |
|  |  |



| Prior Arts D'906 Patent | |
| Accused Product B | |

In conclusion, in view of the above analysis of the claimed design of the Patents-in-Suit with the design of the Accused Product B and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the Accused Product B. Further, the shape and appearance of the surfaces and features of the design of Accused Product B are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

### c.   The "Accused Product C" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit

***First***, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. (Appx10095). In fact, the hourglass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the

design of the Accused Product C. *Id*. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product C is substantially flat and slightly recessed down below the opposing outer foot surfaces. *Id*.



| Accused Product C — Top View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| Prior Arts D'906 Patent | |



The only common feature on the top surface of the claimed design of Patents-in-Suit and the design of the Accused Product C not shown on the design of the D'906 Patent is the foot pads on the opposing foot surfaces. However, it is clear that the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product B differ significantly in their peripheral shape as well as the decorative pattern on each. *Id*.

**Second**, from the bottom view, the shape and appearance of the bottom surface of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. *Id*. Specifically, both the Patents-in-Suit and the design of the D'906 Patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion. *Id*. However, the bottom surface of the design of the Accused Product C differs from both the claimed design of Patents-in-Suit and the design of the D'906 Patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. *Id*. In addition, the recessed central portion of the design of the Accused Product C is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs. *Id*.



| **Accused Product C — Bottom View Comparison** | |
|---|---|
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| <u>Prior Arts</u> D'906 Patent | |
| Accused Product C | |

***Third***, from the front/back view, the front and rear surfaces of the Patents-in-Suit and the design of D'906 Patent are substantially similar in shape and appearance.

*Id*. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. *Id*. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the Patents-in-Suit and the lines on the front and rear surface of the claimed design of the Patents-in-Suit. *Id*. On the contrary, while the design of the Accused Product C has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the Patents-in-Suit and the design of D'906 Patent, the central portion of the front and rear surfaces of the design of the Accused Product C differs significantly from the claimed design of the Patents-in-Suit and the design of D'906 Patent. *Id*. Specifically, directly below the vertically flat upper portion of the front and rear surfaces are recessed horizontally elongated LED lights and below the LED lights is an outwardly protruding horizontal band that extends inwardly and merges with the recessed central portion. *Id*.



| Accused Product C — Front/Back View Comparison | |
|---|---|
| Patents-in-suit<br>D'723 Patent | |



| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| Prior Arts D'906 Patent | |
| Accused Product C | |

**Fourth**, it's noted that the wheel covers at each end of the claimed design of the Patents-in-Suit, the design of D'906 Patent, and the design of Accused Product C are all semi-circular in shape. *Id*. However, the wheel covers of the Patents-in-Suit and the design of D'906 Patent extend over and cover the entire wheel, while the wheel covers on the design of Accused Product C do not extend down over the wheel. *Id*.

70



In conclusion, in view of the above analysis of the claimed design of the

Patents-in-Suit with the design of the Accused Product C and the design of the D'906

Patent, the overall shape and appearance and identified features of the claimed

design of the Patents-in-Suit are closer to the design of the D'906 Patent than the

design of the Accused Product C. Further, the shae and appearance of the surfaces and features of the design of Accused Product C are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

### d. The "Accused Product D" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit.

*First*, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. (Appx10103). In fact, the hour glass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the design of the Accused Product D. *Id*. Specifically, the recessed center portion of the claimed design of the Patents-in-Suit and the design of the D'906 Patent are concavely curved, whereas the recessed center portion of the design of the Accused Product D has a truncated "v" shape appearance comprising opposing diagonally straight edges that connect to a horizontally straight inner edge. *Id*. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product D is slightly recessed down below the opposing outer foot surfaces and has a pattern of longitudinal ribs that extend down onto the front and rear surfaces. *Id*.

| Accused Product D — Top View Comparison |
| --- |



| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| <u>Prior Arts</u><br>D'906 Patent | |
| Accused Product D | |

The only common feature on the top surface of the claimed design of Patents-in-Suit and the design of the Accused Product D not shown on the design of the D'906 Patent is the foot pads on the opposing foot surfaces. However, it is clear that

the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product D differ significantly in their peripheral shape as well as the decorative pattern on each. *Id*.

**Second**, from the bottom view, the shape and appearance of the bottom surface of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. *Id*. Specifically, both the Patents-in-Suit and the design of the D'906 Patent have opposing flat, plain outer portions and a smooth continuous concavely curved central portion. *Id*. However, the bottom surface of the design of the Accused Product D differs from both the Patents-in-Suit and the design of the D'906 Patent in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a diagonally downwardly protruding edge. *Id*. In addition, the recessed central portion of the design of the Accused Product D has a pattern of longitudinal ribs that extend down from the front and rear surfaces. *Id*.

| Accused Product D — Bottom View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent |  |
| Patents-in-suit D'256 Patent |  |



| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| Prior Arts D'906 Patent | |
| Accused Product D | |

***Third***, from the front/back view, the front and rear surfaces of the Patents-in-Suit and the design of D'906 Patent are substantially similar in shape and appearance. *Id*. Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. *Id*. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of the Patents-in-Suit and the lines on the front and rear surface of the claimed design of the Patents-in-Suit. *Id*. On the contrary, while the design of the Accused Product D has front and rear surfaces having a vertically flat upper portion and a convexly

curved lower portion that merges with the bottom surface as the claimed design of the Patents-in-Suit and the design of D'906 Patent, the central portion of the front and rear surfaces of the design of Accused Product D differs significantly from claimed design of the Patents-in-Suit and the design of D'906 Patent. *Id*. In addition, the recessed center portion of the front and rear surfaces of the Accused Product D has spaced vertical ribs, and the right front vertically flat upper portion includes the word "GYROOR". *Id*.



| **Accused Product D — Front/Back View Comparison** | |
|---|---|
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |



| | |
|---|---|
| **Prior Arts** <br> D'906 Patent | |
| Accused Product D | |

**Fourth**, it's noted that the wheel covers at each end of the claimed design of the Patents-in-Suit, the design of D'906 Patent, and the design of Accused Product A differ from each other as shown in the top view and front and rear views above as well as the side view and perspective view below. The shape and appearance of the wheel covers in the claimed design of the Patents-in-Suit are closer to the wheel covers shown in broken lines in the design of D'906 Patent than the wheel covers of the design of the Accused Product D. *Id*. Specifically, the wheel covers shown on the claimed design of the Patents-in-Suit and the design of D'906 Patent are both semi-circular in shape and extend over and cover the entire wheel, while the wheel covers on the design of Accused Product D have opposing diagonally straight side edges a substantially flat top edge which curves outwardly but does not extend over the entire wheel. *Id*.

| **Accused Product D — Perspective View Comparison** ||
|---|---|
| Patents-in-suit D'723 Patent | Patents-in-suit D'256 Patent |



In conclusion, in view of the above analysis of the claimed design of the Patents-in-Suit with the design of the Accused Product D and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the Accused Product D. Further, the shape and appearance of the surfaces

and features of the design of Accused Product D are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

### e.  The "Accused Product E" has a substantial different ornamental appearance than the designs claimed in the Patents-in-Suit

*First*, from the top view, Patents-in-Suit all have the same hour glass peripheral shape. In fact, the hour glass peripheral shape of the D'906 Patent appears to be closer to the claimed design of the Patents-in-Suit than the design of the Accused Product E. For instance, the concavely curved recessed center portion of the top surface of the Patents-in-Suit and the design of the D'906 Patent both have a slightly raised convex contour, while the corresponding center portion of the top surface of the design of the Accused Product E is substantially flat and slightly recessed down below the opposing outer foot surfaces.

| Accused Product E — Top View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent |  |
| Patents-in-suit D'256 Patent |  |



| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| Accused Product E | |

The only common feature on the top surface of the claimed design of Patents-in-Suit and the design of the Accused Product E not shown on the design of the D'906 Patent is the foot pads on the opposing foot surfaces. However, it is clear that the foot pads of the claimed design of the Patents-in-Suit and the design of the Accused Product E differ significantly in their peripheral shape as well as the decorative pattern on each. In addition, Accused Product E has an automated flashing feature on the petals unlike the claimed design of the Patents-in-Suit.

**Second**, from the bottom view, the shape and appearance of the bottom surface of the claimed design of the Patents-in-Suit and the design of the D'906 Patent are virtually identical. Specifically, both the claimed design of the Patents-in-Suit and the design of D'906 have opposing flat, plain outer portions and a smooth

continuous concavely curved central portion which is best shown in the front and rear views above. *Id*. However, the bottom surface of the design of the Accused Product E differs from both the claimed design of claimed design of the Patents-in-Suit and the design of D'906 in that the opposing flat outer portions have a pattern of vent holes and just to the inside of the vent holes is a slight diagonally downwardly protruding arcuate edge. *Id*. *In* addition, the recessed central portion of the design of the Accused Product E is defined by opposing slight diagonally downwardly protruding arcuate edges with the center portion having six narrow longitudinal ribs. *Id*.



| Accused Product E — Bottom View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |



**Third**, from the front and rear views, the front and rear surfaces of the Patents-in-Suit and the design of D'906 Patent are substantially similar in shape and appearance. (Appx10125). Specifically, both designs have a vertically flat upper portion of the front and rear surfaces and a convexly curved lower portion that merges with the flat bottom surface. *Id*. The only visual difference is the rounded parallelogram shaped LED lights at the opposing outer ends of the rear surface of the claimed design of Patents-in-Suit and the lines on the front and rear surface of the claimed design of Patents-in-Suit. *Id*. On the contrary, while the design of the Accused Product E has front and rear surfaces having a vertically flat upper portion and a convexly curved lower portion that merges with the bottom surface as the claimed design of the Patents-in-Suit and the design of the D'906 Patent, the central portion of the front and rear surfaces of the design of the Accused Product E is substantially flat and slightly recessed down below the opposing outer foot surfaces. *Id*. Specifically, directly below the vertically flat upper portion of the front and rear

surfaces are recessed horizontally elongated LED lights with quarter rounded inner ends. *Id*.



| Accused Product E — Front/Back View Comparison | |
| --- | --- |
| Patents-in-suit D'723 Patent | |
| Patents-in-suit D'256 Patent | |
| Patents-in-suit D'195 Patent | |
| Patents-in-suit D'112 Patent | |
| Accused Product E | |

**Fourth**, from the perspective view, the front and rear surfaces of the claimed design of the Patents-in-Suit and the design of the D'906 Patent are substantially similar in shape and appearance. The shape and appearance of the wheel covers in the claimed design of the Patents-in-Suit are closer to the wheel covers shown in

broken lines in the design of the D'906 than the wheel covers of the design of the

Accused Product E. *Id*. Specifically, the wheel covers shown on the claimed design

of the Patents-in-Suit and the design of D'906 are both semi-circular in shape and

extend over and cover the entire wheel, while the wheel covers on the design of the

Accused Product E are somewhat squared off and do not extend over the entire wheel,

but rather partially over the wheel. *Id*.

| Accused Product E — Perspective View Comparison | |
|---|---|
| Patents-in-suit D'723 Patent | Patents-in-suit D'256 Patent |
|  |  |
| Patents-in-suit D'195 Patent | Patents-in-suit D'112 Patent |
|  |  |
| Prior Arts D'906 Patent |  |



Accused Product E

In conclusion, in view of the above analysis of the claimed design of the Patents-in-Suit with the design of the Accused Product E and the design of the D'906 Patent, the overall shape and appearance and identified features of the claimed design of the Patents-in-Suit are closer to the design of the D'906 Patent than the design of the Accused Product E. Further, the shape and appearance of the surfaces and features of the design of Accused Product E are substantial different from the claimed design of the Patents-in-Suit that an "ordinary observer", familiar with the prior art, would not be confused so as to purchase one thinking it to be the other.

## CONCLUSION

For the foregoing reasons, Defendants-Appellees respectfully request this Court sustain the District Court's decision in finding that the accused products do not infringe any of the Patents-in-Suit.

Respectfully Submitted:

Date: 6/4/2024                    /s/ Tao Liu

Tao Liu

Tao.Liu@glacier.law

Glacier Law LLP
41 Madison Avenue, Ste 2529
New York, NY 10010

Tianyu Ju
Iris.Ju@glacier.law
Glacier Law LLP
251 S Lake Avenue, Ste 910
Pasadena, CA 91101

Tel: +1 (332) 208-8882
Fax: +1 (312) 801-4587
*Attorneys for Defendants-Appellees*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Counsel does not request oral argument. Counsel believes that the appeal is frivolous, and the fact and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. Thus, the oral argument is unnecessary.

Date: 6/4/2024                          /s/ Tao Liu

Tao Liu

Tao.Liu@glacier.law

*Counsel for Defendants-Appellees*

I

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2024, I electronically filed the foregoing RESPONSIVE BRIEF OF DEFENDANTS-APPELLEES with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. Those who are not will be served by e-mail/regular mail.

Date: 6/4/2024                       /s/ Tao Liu
                                     Tao Liu
                                     Tao.Liu@glacier.law
                                     *Counsel for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned counsel for Appellees certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and contains 13842 words, excluding the corporate disclosure statement, table of contents, table of authorities, addendum, and certificates of counsel.

Date: 6/4/2024

/s/ Tao Liu

Tao Liu

Tao.Liu@glacier.law

*Counsel for Defendants-Appellees*