# United States Court of Appeals
# for the Federal Circuit

ABC CORPORATION I, ABC CORPORATION II, EBAY, INC.,

*Plaintiffs,*

HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD.,
UNICORN GLOBAL, INC.,

*Plaintiffs-Appellants,*

– v. –

THE PARTNERSHIP AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A", TOMOLOO OFFICIAL, TOMOLOO INE,
TOMOLOO FRANCHISE, TOMOLOO-US, TOMOLOO FLAGSHIP,

*(For Continuation of Caption See Inside Cover)*

On Appeal from the United States District Court for the Northern
District of Illinois in No. 1:20-cv-04806, Thomas M. Durkin, Judge

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

ADRIANNA M. CHAVEZ
STINSON LLP
1850 N. Central Avenue
Suite 2100
Phoenix, Arizona 85004
(602) 212-8589
adrianna.chavez@stinson.com

RICHARD J.L. LOMUSCIO
STINSON LLP
100 Wall Street
Suite 201
New York, New York 10005
(646) 883-7475
richard.lomuscio@stinson.com

*Counsel for Plaintiffs-Appellants*

JUNE 5, 2024

TOMOLOO TC, TOMOLOO DX, TOMOLOO INT, TOMOLOO, also operating standalone websites as tomoloo.com and tomoloo-scooter.com, TOMOLOO-NX, AOXTECH, BETTER TOMOLOO, HGSM STOREFRONT,

*Defendants,*

GYROOR US, URBANMAX, GAODESHANGUS, FENGCHI-US, GYROOR, also operating standalone websites as gyroor.com and gyroorboard.com, HGSM, GYROSHOES,

*Defendants-Appellees,*

YANJIN-US,

*Respondent.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................1

ARGUMENT .........................................................................................3

  I.   THE DISTRICT COURT'S ORDINARY OBSERVER
      ANALYSIS WAS FLAWED. ...................................................5

      A.   The District Court's Analysis Failed to Address Whether the
          Accused Products' Designs Appropriated the Patents-in-Suits'
          Claimed Designs as a Whole............................................8

      B.   The District Court Improperly Discounted Some Features of
          the Hourglass Shape as Background While Considering
          Others in Isolation. ......................................................16

  II.  GENUINE FACTUAL DISPUTES EXIST THAT SHOULD
      HAVE BEEN RESOLVED BY A JURY. ................................21

      A.   Substantial Similarity in the Ordinary Observer Test is a
          Question for the Jury and Should Not Have Been Resolved on
          Summary Judgment........................................................25

      B.   The District Court Improperly Resolved Disputed Facts in
          Defendants' Favor. .......................................................27

CONCLUSION ...................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABC Corp. I v. Partnership & Unincorporated Associations*, 52 F.4th
934, 945 (Fed. Cir. 2022) ................................................................. 14, 17, 18, 21

*Amini Innovation Corp. v. Anthony Cal., Inc.*,
439 F.3d 1365 (Fed. Cir. 2006) ................................................................. 6, 24, 26

*Arminak & Assoc., Inc. v. Saint-Gobain Calmar, Inc.*,
501 F.3d 1314 (Fed. Cir. 2007) ................................................................. 8

*Braun, Inc. v. Dynamics Corp.*,
975 F.2d 815 (Fed. Cir. 1992) ................................................................. 2, 24, 29

*Brooks Furniture Mfg., Inc. v. Dutallier Int'l, Inc.*,
393 F.3d 1378 (Fed. Cir. 2005) ................................................................. 1

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................. 23

*Crocs, Inc. v. ITC*,
598 F.3d 1294 (Fed. Cir. 2010) ................................................ 5, 6, 10, 11, 12, 13, 25

*Door Master Corp. v. Yorktowne, Inc.*,
256 F.3d 1308 (Fed. Cir. 2001) ................................................................. 8

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ................................. 5, 6, 7, 10, 17, 18, 19, 22, 26

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015) ................................................................. 15

*Ez Dock v. Shafer Sys., Inc.*,
276 F.3d 1347 (Fed. Cir. 2002) ................................................................. 23

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,
162 F.3d 1113 (Fed. Cir. 1998) ................................................................. 5

*Gorham Co. v. White*,
81 U.S. 511 (1871) ................................................................. 2, 5, 8

*Lanard Toys Ltd. v. Dolgencorp LLC*,
  958 F.3d 1337 (Fed. Cir. 2020) ...........................................................16

*Loeb Indus., Inc. v. Sumitomo Corp.*,
  306 F.3d 469 (7th Cir. 2002) ...............................................................23

*OddzOn Prods, Inc. v. Just Toys, Inc.*,
  122 F.3d 1296 (Fed. Cir. 1997) ...........................................................16

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
  739 F.3d 694 (Fed. Cir. 2014) ...............................................................6

*Revision Military, Inc. v. Balboa Mfg. Co.*,
  700 F.3d 524 (Fed. Cir. 2012) ...............................................................9

*Richardson v. Stanley Works, Inc.*,
  597 F.3d 1288 (Fed. Cir. 2010) ....................................................15, 16

*Richardson v. Stanley Works, Inc.*,
  610 F. Supp. 2d 1046 (D. Ariz. 2009) ...............................................16

**Other Authorities**

Rule 56 ..............................................................................................28

Rule 702 ......................................................................................27, 28

## PRELIMINARY STATEMENT

Fueled by a claim construction that improperly focused on minute details of the patents' drawings and not on the overall impression created by the claimed designs, the District Court erroneously cited insubstantial differences between the claimed and accused designs shrouded as justification for concluding no reasonable juror could find infringement. Defendants[1] attempt to salvage the District Court's flawed analysis by, incorrectly, highlighting individual components of the designs to find non-infringement. Defendants-Appellees' Response Brief, Dkt. No. 26 ("Response" or "Resp. Br.") at 22-29, 49-85.[2] Defendants' brief simply mimics the District Court's errors by overemphasizing small differences in the overall hoverboard designs without appreciating that small differences would minimally impact an ordinary observer's view of the hoverboards. Resp. Br. at 22-34.

That some differences exist between the claimed designs and the Patents-in-Suits' designs does not preclude a finding of substantial similarity. "In evaluating resemblance, it is not necessary that every aspect of the designs be identical." *Brooks Furniture Mfg., Inc. v. Dutallier Int'l, Inc.*, 393 F.3d 1378, 1383 (Fed. Cir. 2005). Indeed, "mere difference of lines in the drawing or sketch, a greater number of lines,

---

[1] Unless otherwise specified, defined terms have the same meaning as in the Opening Brief, Dkt. No. 21.

[2] Citations to the Opening Brief and Response Brief are to the page numbers at the bottom of the briefs.

or slight variations in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 526-27 (1871). Defendants' and the District Court's five cited differences in design (i.e., (1) shapes and wheel coverage of the open-ended fenders; (2) width and shape of the "neck"; (3) decorations on the necks; (4) lines of tread on the footpads; and (5) size of the lights) constitute nothing more than "slight variances in configuration" or, in the case of the intricate designs, a minor addition to Plaintiffs' distinctive overall design. *See id.* at 531; *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820-21 (Fed. Cir. 1992) (affirming infringement despite clear difference in design of blender handle). Further, Defendants' arguments the patented and accused designs are substantially different improperly relies on the hourglass shape to point out purportedly perceivable differences. Resp. Br. at 52-56, 58-63, 65-70, 72-77, 79-83.

Not only is this analysis incorrect as a matter of law, the District Court errors are compounded because the District Court—rather than the fact finder (a jury)—engaged in this improper factual analysis at the summary judgment stage. (Appx5-20.) *See* Opening Br. at 34-39. Importantly, based on the facts, whether the accused products are substantially the same as the Patents-in-Suit is a triable question for the jury. Nothing in the Response alters that the District Court committed error by misapplying the ordinary observer test as a matter of law and failing to appreciate

genuine disputes as material facts when it granted summary judgment. Accordingly, the District Court's summary judgment decision should be reversed. (Appx1-25.)

## ARGUMENT

Defendants cannot ignore that the District Court, by its own admission, partook in the inherently factual exercise of determining, where the claimed and accused designs are not plainly dissimilar, whether particular features of the Patents-in-Suit are ornamental and significant to an ordinary observer. (Appx2-3, 17-19.) In fact, there is no dispute that the District Court's ruling on this issue required it to weigh the credibility of expert testimony and to resolve material fact issues. Resp. Br. at 34-49. Instead, Defendants argue these issues were properly decided in their favor. Resp. Br. at 34-47. The District Court's resolution of disputed factual issues, however, contravenes black letter law that such disputes are not to be resolved at summary judgment, but rather should be submitted to a jury. Opening Br. at 37-39. In resolving this inherently factual dispute, the District Court did not properly apply the ordinary observer test. Opening Br. at 18-34.

The District Court's analysis here was incorrectly focused almost entirely on the individual elements that make up the overall design, at the expense of a proper consideration of the designs as a whole.[3] Opening Br. at 18-34. This focus on the

---

[3] Plaintiffs' argument on appeal is not contrary to any arguments raised in the District Dourt. *See* Resp. Br. at 23-24. In opposing Defendants' Motion for Exceptional Finding and Attorneys' Fees, Plaintiffs merely pointed out that in the District Court's

differences in designs of component parts, like the "neck" and the lines on the treads of the footpads, coupled with the factual determination that the ordinary observer would notice these minor details and consider them in distinguishing the products, led the District Court to improperly conclude a comparison of the two designs could only lead an ordinary observer to one possible conclusion. (Appx5-19.) Opening Br. at 18-34. The District Court made factual findings an ordinary observer would not confuse the two, would focus on minor differences, and whether an ordinary observer would prefer certain features due to aesthetic or inferring their function. (Appx18.) And the District Court refused to undertake that analysis in the context of the prior art—which lack footpads and open-area fenders—where the similarities between the patented and accused designs come into sharpest focus. (Appx18-20.) Opening Br. at 31-34. Due consideration of the similarities conveyed by the overall impression of the two designs, **taken as a whole**, would have dictated (or at the very least allowed) a different outcome, and thus compels reversal.

---

analysis, which included, among other things, the "overall visual impression of the subject products," the District Court did not indicate that Plaintiffs' contentions were completely unfounded and thus no exceptional case finding was warranted. *Id.* (citing ECF 718, p. 4). Plaintiffs did not argue in the opposition cited by Defendants that the District Court's analysis was correct (ECF 718), and Defendants' argument that Plaintiffs have taken contrary positions is false and intentionally misleading. *See* Resp. Br. at 23-24.

## I.    THE DISTRICT COURT'S ORDINARY OBSERVER ANALYSIS WAS FLAWED.

In arguing the District Court's summary judgment opinion properly applied the ordinary observer test and not a point of novelty analysis, Defendants, like the District Court, place too much emphasis on the differences between the designs, thereby converting the substantial similarity analysis into a "checklist" for infringement. Resp. Br. at 22-24, 52-85. Defendants' analysis further places too much emphasis on purported differences between the hourglass shape, which is a background feature. Resp. Br. at 52-85. This is contrary to the law. There can be no dispute that, contrary to Defendants' position (Resp. Br. at 24-29), the ordinary observer test is applied to the design as a whole. *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (citing *Gorham*, 81 U.S. at 526-27). Having resolving disputed facts in Defendants' favor, the District Court ignored overwhelming evidence of similarities, and instead focused on subtle differences. (Appx5-19.) This was error. *See Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998) (noting similarities between two designs, as well as differences, must be considered in infringement analysis); *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371-72 (Fed. Cir. 2006); *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 701 (Fed. Cir. 2014) (The test for patent design infringement "is not identity, but rather sufficient similarity.");

*Crocs*, 598 F.3d at 1303-04 (infringement analysis focuses on "overall impression" of designs, not "small differences in isolation").

Neither the District Court nor Defendants fully address that this Court in *Egyptian Goddess* abandoned the separate "points of novelty" prong in favor of a single inquiry: "whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." 543 F.3d at 672, 681. The points of novelty test required identification of every "novel" feature in a patent, and where moderately complex designs were at issue, this subsidiary analysis often sidetracked courts and fact-finders from the salient question of "whether the accused design . . . appropriated the claimed design *as a whole*." *Id.* Both Defendants and the District Court fail to recognize this important distinction. Resp. Br. at 22-24, 52-85. (Appx5-19.)

And, as is the case with Defendants and the District Court here (Appx5-19; Resp. Br. at 22-29), it is improper to argue an accused design that was substantially similar to the patented design was nonetheless non-infringing simply because it did not appropriate a particular, arguably novel detail. *Id.* It is axiomatic that the law endows the hypothetical ordinary observer with the knowledge and ability to distinguish between the claimed design and prior art. *Id.* at 678-79. As a result, if the patent and prior art are particularly close, the scale of comparison between the accused product and patented design necessarily shrinks. *Id.* Under the ordinary

observer approach, differences between the claimed design and the prior art remain central to the analysis. Importantly, however, unlike in the old points-of-novelty approach, those differences are not examined in isolation for their novelty. *Id.* at 677.

Here, in contravention of *Egyptian Goddess*, the District Court's analysis viewed differences between the designs in isolation, without analysis to *how* the details of each design contribute to the whole. (Appx5-16, Appx17-19.) Defendants incorrectly argue that because the District Court's summary judgment opinion included the terms "overall appearance," "overall effect," "overall impression," "as a whole," and "combine," the District Court properly analyzed the overall design. Resp. Br. at 22-23. The District Court's use of these terms does not account for the lack of analysis regarding how these features contribute to the overall design, or how the overall design—rather than simply the individual features—of the accused products is not substantially similar to the Patents-in-Suit. (Appx5-19.)

Defendants cannot avoid infringement by slightly altering one feature of the design to approximate the prior art, when the overall impression left by the design is likely to mislead the purchaser into confusing the design of Defendants' hoverboards with Plaintiffs' design. *Arminak & Assoc., Inc.*, 501 F.3d at 1327; *Gorham*, 81 U.S. at 18, 526-27 (slight differences in configuration do not destroy substantial identity and affirming infringement despite defendant's expert having identified 15 or more readily apparent differences between patented design and accused products); *see*

*Door Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1314 (Fed. Cir. 2001) (finding infringement even though some design features of the accused product were present in the prior art). While the prior art discloses hoverboards with hourglass shaped bodies, the District Court improperly further limited the scope of the claims by disregarding the effect of perceived differences on the designs overall. (Appx17-19.) This was error.

> **A.    The District Court's Analysis Failed to Address Whether the Accused Products' Designs Appropriated the Patents-in-Suits' Claimed Designs as a Whole.**

Contrary to Defendants' argument that the District Court properly applied the ordinary observer test by analyzing the overall design, (Resp. Br. at 22-29), the District Court focused on slight differences in individual features of the designs, some viewable from only certain angles and not easily discernable. (Appx5-17.) Though the District Court's decision utilizes words and phrases such as "overall" and "on the whole," (*see* Resp. Br. at 22-23), the court improperly focused its infringement comparison on individual features that stand out as dissimilar. This Court has reversed such improperly narrow comparisons disguised as considerations of "overall appearance" and has repeatedly warned an analysis of design patent infringement should not focus too narrowly on individual design features. *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012) ("Although the

District Court stated the correct 'overall design' standard . . . the court focused on features that 'stand out as dissimilar'.").

Unable to point to any part of the District Court's opinion that actually analyzes the overall appearance of the design or effects the minor differences lend to the design as a whole, Defendants' arguments the court considered the overall impression simply rehearse the District Court's analysis of the designs' distinct structural and decorative features (fenders, necks, footpads, and lights) and conclusory sentence that differences in these individual features "combine to create an overall effect that the accused products are not substantially similar to the Patents-in-Suit." Resp. Br. at 22-23.

What is missing from both the District Court's analysis and Defendants' argument the court properly applied the ordinary observer test, however, is *how* the differences in the individual features impact the design as a whole. *Cf. Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009) (Minor variations "do not change the overall visual impression of the shoe" and "cannot, and shall not, prevent a finding of infringement."). The District Court's attention was "focused on whether the accused design has appropriated a single specified feature of the claimed design, rather than on the proper inquiry, i.e., whether the accused design has appropriated the claimed design as a whole." *See Egyptian Goddess*, 543 U.S. at 677.

The District Court failed to consider the designs as a whole, including the effect the minor differences had on the overall design in light of the prior art, and Defendants' arguments to the contrary rest on an improper understanding of Plaintiffs' "theory." Resp. Br. at 24. Contrary to Defendants' argument, Plaintiffs are not suggesting "that the infringement analysis should focus solely on the claimed design of an hourglass body as a whole." Resp. Br. at 25. Instead, the District Court's focus on differences of features of the overall design and refusal to consider the designs as a whole or the overall effect of those differences on the design, in view of the prior art, was error. It is black-letter law that "if the claimed design is close to the prior art designs, small differences between the accused design and claimed design assume more importance to the eye to the ordinary observer." *Crocs*, 598 F.3d at 1303.

> The ordinary observer, however, will likely attach more importance to those differences <u>depending on the overall effect of those differences on the design</u>. Even if the claimed design simply combines old features in the prior art, it may still create <u>an overall appearance deceptively similar to the accused design</u>. In that case, this court will uphold a finding of infringement.

*Id.* Defendants simply invite this Court to follow the flawed reasoning of the District Court, viewing differences between individual features in isolation, and determine what an ordinary observer would or would not find substantially similar.

The District Court's undue emphasis on particular details is similar to the ITC's improper analysis this Court admonished in *Crocs*. 598 F.3d at 1303-04.

There, like the District Court did here, "[w]ithout a view to the design as a whole, the Commission used minor differences between the patented design and the accused products to prevent a finding of infringement. In other words, the concentration on small differences in isolation distracted from the overall impression of the claimed ornamental features." *Id.* Instead of placing undue emphasis on particular details of the features of the shoe designs, such as "strap width" or "hole spacing" that could be "mistaken for a checklist for infringement," this Court properly viewed the overall effects of the designs as a whole, such as the interaction between the strap assembly and the base of the shoes where "multiple major design lines and curves converged" and created a focal point. *Id.* at 1304, 1306. ("Another overall effect of the design is the visual theme of rounded curves and ellipses throughout the design, including the strap forming a sort of continuation of the sidewall of the base to create a visually continuous ring encircling the entire shoe. . . Both the claimed design and the accused designs have these overall effects."). The Court did not isolate differences between the strap shape or size and width of the major design lines and curves—it held that type of analysis was improper, and instead considered the overall effects of the design. *Id.* at 1306.

Consistent with a proper application of the ordinary observer test, Plaintiffs' expert summarized the similar overall visual impression of the designs as shown in the Patents-in-Suit, the accused products, and the prior art: "Gyroor A and the

claimed design of the D'723 Patent both create a visual impression of an integrated hourglass body with a relatively flat surface across the top of the wheel area. More specifically, the relatively flat surface across the top of the main body such that the footpads and center section are largely on the same plane, the pronounced footing areas substantially covered by raised footpads with a pattern of groves, and the fenders arching over a portion of the tire and leaving the outside surface of the wheel largely exposed." (Appx10414-53.) These features are not found in the prior art. (Appx1014-53.) The D'906 Patent is devoid of any type of footpad, has a center section that significantly curves and extends above the plane of the footing areas, and has fenders that cover the majority of the tire and wheel assembly, extending below the midpoint of the wheel. While the prior art also includes an hourglass body, the D'906 Patent's design "as a whole gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts." (Appx10413-14.)

In contrast, the District Court improperly focused on subtle differences in individual elements or features of the overall design that would be necessarily present in any product that wasn't an exact copy of the patented design. *See Crocs*, 598 F.3d at 1303-04. For example, in comparing differences between the fenders of accused products, patented designs, and prior art, the District Court focused on the slight differences of particular details of the fender designs, including the shape and

how much coverage each fender provided different parts of the wheel from different and specific angles. (Appx5-6, Appx8, Appx11, Appx12-13, Appx15.)

The analysis reveals that both the patented designs and the accused products have a shared feature of "open-arched fenders," with minor differences in wheel coverage and shape, viewable only from certain angles. *Id.* That is where the District Court's analysis of the fenders ends. The court refused to properly consider the Patents-in-Suits' "open-arched fenders"[4] and provided no further explanation as to how the difference in wheel coverage or shape of the accused products' and Patent-in-Suits' open-arched fenders affects the overall designs. (Appx17-18.) The court, placing undue emphasis on particular features of the design, improperly considered these features in isolation instead of focusing on the design as a whole—e.g., do the narrower fenders on Product D make it so the overall design is more slim and angular than the Patents-in-Suit?  The court's analysis does not tell us. It simply concluded that the "relevant features—those other than that dominant hourglass shape—are all designed differently than the features of any of the three patents-in-suit. These differently designed features combine to create an overall effect that is not substantially similar to any of the three patents-in-suit, when discounting the dominant hourglass shape." (Appx7.) Defendants do not explain in their brief how

---

[4] As discussed in § B, *supra*, the District Court's failure to properly consider the "open-arched fenders" and other features the court viewed as "part of" the hourglass shape, was also reversible error. (Appx17-18.)

the overall designs differ; they simply adopt the District Court's conclusory analysis that, they just do.

The District Court's approach also starkly contrasts with this Court's product-by-product analysis undertaken on review of the preliminary injunction: "Product D has a more angular shape with wheel caps <u>that give the impression</u> of a figure 8. Second, the wheel covers of Accused Product D <u>have a distinctive boxy appearance</u> as compared to the asserted patents. Accused Product D's wheel covers cover less of the wheel than the asserted patents and have angled, rather than curved, edges." *ABC Corp. I v. Partnership & Unincorporated Associations*, 52 F.4th 934, 945 (Fed. Cir. 2022) (emphasis added). The District Court's analysis is akin to a point of novelty analysis; it failed to identify the impression or appearance of the overall design (boxy, figure 8, angled instead of rounded, sharp, smooth, etc.) impacted by the differences in the individual features the court examined.

Relying on *Richardson* and *Ethicon*, Defendants misapply this Court's precedent to argue that the District Court's approach in relying on differences in isolation in its determination that the claimed and accused designs are plainly dissimilar, was proper. Resp. Br. at 26. These case are apposite.

Defendants place heavy reliance on *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015), but fails to appreciate that decision's functional analysis. There, the patented design was to "a particular ornamental design of an

inverted 'U'-shaped trigger" and "the particular ornamental design of a rounded and fluted torque knob positioned above and forward from the trigger." 726 F.3d at 1327. Critical to the Court's non-infringement affirmance as its view that, "because each of these components has a functional aspect, the underlying elements must be excluded from the scope of the design claims at this general conceptual level." *Id.* at 1336. Because the inverted trigger and torque knob were primarily functional components, the differences in the ornamental features, such as the "unevenly taped flutes" had a larger impact the designs as a whole and on how an ordinary observer would view the same. *See id.* at 1336-37. The District Court's analysis here did not rely on ornamental-versus-functional distinctions. Further, the two claimed design elements in *Ethicon*, the inverted trigger and torque knob, had significant differences when compared to the accused products. Unlike the ornamental differences in *Ethicon* that were the entireties of the claimed designs, the court here focused on minor differences of these features without regard to the design as a whole.

*Richardson* is similarly distinguishable. *Richardson*'s outcome also rests largely on functionality. As the District Court there explained, "functional necessity dictated the basic configuration of the Stepclaw's hammer-head, jaw, crow-bar, and handle." *Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1053 (D. Ariz. 2009). Unlike there, Defendants did not press any functionality-based argument on summary judgment, and the District Court did not parse functional versus

ornamental elements. Defendants' other cases are equally inapplicable as they also involved products with many functional elements. *See, e.g.*, *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020) (affirming non-infringement where the patented design encompassed numerous functional elements); *OddzOn Prods, Inc. v. Just Toys, Inc.*, 122 F.3d 1296, 1404 (Fed. Cir. 1997).

A proper examination of the overall design reveals that the differences on which the District Court focused are minor details. When the design is viewed as a whole, most would be hardly noticeable to average consumers looking to purchase a hoverboard among the varied types of designs that exist in the marketplace, and there is no evidence of record establishing that the ordinary observer would even notice these minor differences when comparing the overall appearances of the two designs. Equally important for purposes of this appeal, the minor differences are not the type that can establish a lack of material dispute of fact warranting summary judgment, particularly when coupled with the strong overall commonality between the two designs.

### B. The District Court Improperly Discounted Some Features of the Hourglass Shape as Background While Considering Others in Isolation.

Defendants argue the District Court did not improperly consider the hourglass shape misses the mark, because Defendants simply reargue that the court properly considered the differences between the designs that do not appear in the prior art.

Resp. Br. at 30-33. While differences are relevant to the infringement inquiry, in reaching its ultimate determination on the issue of infringement, the Court placed too much emphasis on minor differences and failed to account for other similarities not found in the prior art. This, however, is not the correct test under *Egyptian Goddess*. "If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." 543 F.3d at 677. Nor was this a case where summary judgment was properly granted because the accused designs are more similar to those of the prior art than the claimed design. *See id*. This incorrect application of the law requires reversal.

This Court's reminder in reversing the preliminary injunction that "where a dominant feature appears in the prior art, the focus of the infringement substantial similarity analysis in most cases will be on other features of the design," is not a new statement of law. *ABC Corp. I*, 52 F.4th at 942-43. "When the differences between the claimed design and the accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Egyptian Goddess*, 543 F.3d at 676. The hourglass shape is the shared dominant feature from the prior art, and thus is "no more than a background feature of the design, necessary for a finding of

substantial similarity but insufficient by itself to support a finding of substantial similarity." *ABC Corp. I*, 52 F.4th 934, 942-43 (2022).

The District Court took this Court's ruling in *ABC Corp. I* too far in violation of *Egyptian Goddess*—it completely ignored the features of the Patent-in-Suit's overall design that departed from the relevant prior art simply because they were "part of the hourglass shape." (Appx17-18.) The court failed to analyze similarities in the designs' features beyond the "background" hourglass shape itself that affect the appearance of the designs as a whole, such as the integrated body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area. (Appx5-19, Appx10397-10400.) Some of these features are necessarily "part of" the overall hourglass shape because of where they are located with respect to the overall hourglass-shaped body of the hoverboard, but which are not background material because they are not found in the prior art. *See ABC Corp. I*, 52 F. 4th at 942.

Defendants argue Plaintiffs' characterization of the overall visual impression of "an integrated hourglass body with a relatively flat surface across the top of the main body, pronounced 'footing' areas, and open-arched fenders over the top of the wheel area" cannot be correct because the prior art lacks footpads and fenders. Resp. Br. at 33. That is precisely the point. *Egyptian Goddess*, 543 F.3d at 677-78 ("When the differences between the claimed and accused design are viewed in light of the

18

prior art, *the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design <u>that differ from the prior art</u>*.") (emphasis supplied).

The District Court failed to consider <u>similarities</u> between the accused designs and Patents-in-Suit as to the aspects missing from the prior art (i.e., not mere background features)—where the attention of the hypothetical ordinary observer is drawn. (Appx17-19.) The District Court instead focused on the small differences between the designs as to the aspects missing from the prior art, without regard to the effect those differences have on the designs overall, resolving inferences and factual disputes in Defendants' favor along the way. (Appx5-17.)

Defendants concede that the accused products' designs share the feature of "open-arched fenders" with the Patents-in-Suit, and that such "'open-arched-fenders' are not mere background because the prior art does not claim a fender design. Resp. Br. at 33. That the prior art may have also had "wheel covers" does not show that there is no genuine issue as to whether the accused products are dissimilar to the Patents-in-Suit. Unlike the Patents-in-Suit, the D'906 Patent gives a distinctly round impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts. (Appx21-25.) Drilling down on minor differences in wheel coverage that the designs' shared open-arched fenders provide, which are only viewable from certain angles (Appx8, Appx11, Appx 12-13, Appx 15), the District Court ignored the

similarities of the open-arched fenders and how this shared feature contributes to the impression of the designs overall.

Defendants' arguments do not reconcile the District Court's failure to consider, for example, the "pronounced footing areas" that the accused products share with the Patents-in-Suit, with the District Court's heavy reliance on slight differences in the neck and footpad tread lines. Resp. Br. at 30-34. Refusing to consider the similarities in the pronounced footing areas, the court held they "were part of the hourglass shape which the Federal Circuit found to be background because it is shown in the prior art." (Appx17.) On the other hand, the court considered differences between the lines on the tread of the footpads themselves, in addition to the width and height of the middle part of the hourglass shape itself (the "neck") to justify its conclusion that no reasonable juror could find the accused products to be substantially similar to any of the Patents-in-Suit. (Appx6-17, Appx 19-20.) The latter two features that the court relied heavily on are arguably as much a "part of" the hourglass shape as the overall impression of pronounced footing areas.

Had the District Court considered the overall design or how the ornamental features impact the overall design, rather than focusing on features in isolation, the court might not have overlooked the similarities in the overall designs. Nonetheless, the District Court's failure to consider the similarities in the overall design or the

effect that these features, such as different lines on the tread of the footpads contribute to—e.g., pronounced footing areas as claimed in the Patents-in-Suit, rather than smooth and clean footing areas as shown in the prior art—was reversible error.

## II.     GENUINE FACTUAL DISPUTES EXIST THAT SHOULD HAVE BEEN RESOLVED BY A JURY.

Defendants do not dispute that where there is a genuine dispute as to whether a patented and accused design are substantially similar, such question should be resolved by the fact-finder. Resp. Br. at 34-49. Instead, they argue the District Court should have excluded Plaintiffs' expert (it did not) and that Plaintiffs failed to raise a genuine dispute of fact where Defendants have presented expert testimony on substantial similarity. Resp. Br. at 34-49. To the contrary, where two designs are not plainly dissimilar, the test is whether an ordinary observer familiar with the prior art would find the designs substantially similar. *Egyptian Goddess*, 543 F.3d at 670. Here, the Federal Circuit in *ABC Corp. I* did not find the patented and accused designs plainly dissimilar such that summary judgment of non-infringement was warranted. *ABC Corp. I*, 52 F.4th 944-45. *See* Resp. Br. at 49.

Instead, the Federal Circuit explained that where a patented design and an accused product are "not 'plainly dissimilar,'" like here, the court must conduct the three-way analysis between the prior art, accused products, and patented design is required, viewing the aspects of the claimed design that differ from the prior art. *Id.*

21

at 942 (citing *Egyptian Goddess*, 543 F.3d at 676)). Plaintiffs presented sufficient evidence from their qualified expert that an ordinary observer could find the accused products substantially similar to the Patents-in-Suit. To be sure, even a proper analysis of the designs under the ordinary observer test reveals that a question of fact as to substantial similarity exists.

The standard for summary judgment is firmly settled: "the trial court must weigh all [the] evidence in the record in favor of the nonmovant." *Ez Dock v. Shafer Sys., Inc.*, 276 F.3d 1347, 1353 (Fed. Cir. 2002); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (the nonmovant may defend against a motion for summary judgment by pointing to "whatever is before the District Court"); *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 497 (7th Cir. 2002) (requiring District Court to "consider[] all evidence in the record" at the summary judgment stage). Putting these standards together, a patentee merits a trial if the entirety of the evidence he presents could lead a jury reasonably to conclude that, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, the two designs are, as a whole, substantially the same.

Defendants argue that without Hatch's "untimely" report, Plaintiffs failed to meet their burden of proof on infringement, so summary judgment was proper. Defendants commit the same error the District Court did, resolving disputed facts in the moving party's favor. First, the District Court did not exclude Plaintiffs' expert,

22

and Defendants' arguments that the District Court should have are not properly on appeal. Further, and importantly, whether an element of the accused products' design would give an ordinary observer a different visual impression than the claimed designs in the Patents-in-Suit is a question of fact that should have been resolved not by the District Court, but a jury. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1131 (Fed. Cir. 2019).

This Court has repeatedly held that determining whether two designs would appear substantially the same to an ordinary observer is a task uniquely situated to jury resolution. *Amini Innovation Corp.*, 439 F.3d at 1371 ("[C]onclusions about reasonable jurors are difficult to make on an issue of this factual determination."); *see also Braun*, 975 F.2d at 821 (holding, even though "readily noticeable difference" and other asserted "dissimilarities" existed between claimed design and design of accused product, jury entitled to determine, after conducting visual comparison, whether accused product infringes). Moreover, a trier of fact may "rely exclusively or primarily on a visual comparison of the patented design, as well as the device that embodies the design, and the accused device's design." *Id.* ("Simply put, a jury, comprised of a sampling of ordinary observers, does not necessarily require empirical evidence as to whether ordinary observers would be deceived by an accused device's design.").

Contrary to Defendants' argument, which the District Court adopted in error, the fact that the D'906 Patent may have also had an hourglass peripheral shape and wheel covers does not show that there is no genuine issue as to whether the accused products are dissimilar to the Patents-in-Suit. *Crocs*, 598 F.3d at 1303 ("Even if the claimed design simply combines old features in the prior art, it may still create an overall appearance deceptively similar to the accused design. In that case, this court will uphold a finding of infringement."); Appx17-19, Appx10017, Appx10020, Appx10023, Appx10026, Appx10029. Unlike the Patents-in-Suit, the design of the D'906 Patent "gives a distinctly different impression, as it creates an impression of a very uncluttered, rounded, smooth body with no pronounced footing area and closed fender skirts." (Appx10104-10133.) Even Defendants' expert, Jim Gandy, recognized that the D'906 Patent does not include the prominent features of the Patents-in-Suit and accused products, yet they, like the District Court, both failed to take into account that the D'906 Patent is completely devoid of such features in their non-infringement analysis. (Appx17-19, Appx10563-64, Appx10621-23.)

Significantly, where the claimed designs of the Patents-in-Suit depart from the prior art, the accused products follow and stand out from the prior art in substantially the same way. Thus, a reasonable juror could find the designs of the Patents-in-Suit and the accused products, viewed together with the prior art, are

substantially similar, and the accused products are therefore infringing. *See Egyptian Goddess*, 543 F.3d at 677.

> **A.     Substantial Similarity in the Ordinary Observer Test is a Question for the Jury and Should Not Have Been Resolved on Summary Judgment.**

Defendants' only arguments for why no dispute of fact exists is because the District Court should have excluded Plaintiffs' expert and expert conclusions on the ultimate issue of infringement cannot preclude summary judgment. Resp. Br. at 42-49. Without Plaintiffs' expert testimony regarding substantial similarity, Defendants argue Plaintiffs failed to meet their burden on summary judgment. Resp. Br. at 48-49. Defendants arguments fail because the District Court did not exclude Plaintiffs' expert, and Plaintiffs presented sufficient evidence that the designs are substantially similar. (Appx20, Appx10371-10552.) *Amini Innovation Corp.*, 439 F.3d at 1371-72. In its opposition to the summary judgment motion at issue, Plaintiffs' evidence of substantial similarity, at minimum, creates an issue of fact relevant to the infringement determination.

For example, Plaintiffs' expert testified at length regarding why an ordinary observer would consider Defendants' accused products to be substantially the same as the Patents-in-Suit, including analyzing each of the accused products individually, identifying the remarkable similarities between them and the Patents-in-Suit, in light of the prior art without reliance on the dominant feature of the hourglass shape, and

explaining the impact such similarities have on the overall design in the eyes of ordinary observers. (Appx10371-10552.) Hatch considered not just the specific similarities, but also how, in his opinion, the overall impression of the accused products was substantially similar to the Patents-in-Suit.

Defendants nonetheless argue that a District Court can ignore admissible expert testimony and apply the ordinary observer test itself to decide whether products are substantially similar on summary judgment. That is not the law. In this case, the District Court did not exclude Hatch's testimony. Defendants did not move to exclude Hatch under *Daubert* or Rule 702, and in ruling on the second motion for preliminary injunction, the District Court found Hatch to be qualified to offer testimony under Fed. R. Evid. 702. (Appx9084.) Defendants moved to exclude Hatch's declaration on summary judgment as untimely, which Plaintiffs opposed because Hatch's declaration is not materially different and his conclusions did not depart from earlier reports; any untimely disclosure was substantial and justified. (Appx9849, Appx9866.) The District Court did not rule on Defendants' motion to exclude, instead considered Hatch's declaration on summary judgment, albeit improperly resolving facts in Defendants' favor while doing so, and then denied Defendants' motion to exclude as moot. (Appx20.)

The cases Defendants rely on to argue that Hatch's declaration should be excluded are inapposite for a simple reason: the District Court here did not exclude

Hatch under *Daubert* or Federal Rule of Evidence 702. Resp. Br. at 35-37. (Appx4, Appx 20). Once the District Court decided to accept his testimony, it was obligated to consider it on summary judgment in the light most favorable to Plaintiffs.

### B. The District Court Improperly Resolved Disputed Facts in Defendants' Favor.

Defendants argue that the District Court did not improperly resolve disputed facts, it simply found the expert testimony did not raise any genuine issue of material fact. Resp. Br. at 48-49. Plaintiffs fulfilled their Rule 56 burden by producing admissible evidence that establishes, or at a minimum creates a genuine issue of material fact, that the accused products' designs are substantially similar to the designs of the Patents-in-Suit. As the record indicates, Plaintiffs produced evidence in the form of expert reports and a declaration, confirming that the overall visual impression of the claimed and accused designs are substantially similar in the eyes of an ordinary observer.

Nonetheless, the similarities in the accused products' designs and the designs of the Patents-in-Suit are readily apparent to any observer. For example, beyond sharing the same hourglass shape which is required, but not sufficient for a finding of infringement, the designs also both share this background shape *in combination with* a relatively flat surface across the top of the main body, pronounced footing areas, and open-arched fenders over the top of the wheel area and styling lines across the body. Given those obvious similarities, which are a substantial departure from

27

the prior art, no additional evidence is necessary for a reasonable jury to conclude an ordinary observer would be deceived by Defendants' accused products' designs. *See Braun*, 975 F.2d at 820-21. Accordingly, the District Court erred holding no reasonable juror could find any of the accused products are substantially similar to the Patents-in-Suit.

Here, the District Court's finding the background material also included a "wheel at opposing ends" such that a retail purchaser would not pay attention to the designs' open-arched fenders is a disputed material fact that should have gone to a jury. At a minimum, the prior art shows a reasonable jury could give greater weight to similarities of the overall shape of the patented and accused designs' fenders (open-arched) and impact they have on the similarities of the design as a whole (very uncluttered, rounded, smooth body with no pronounced footing and closed fender skirts) rather than undue focus the District Court placed on the minute differences in tire coverage, visible from only certain angles—particularly given that the tire coverage provided by open-arched fenders does not distinguish either design from the prior art. It would be plainly reasonable for the jury to give particular weight to the feature that most conspicuously departs from the prior art.

Defendants further rely on *Alpex*, *Yoon*, and *ConAgra* to argue summary judgment was proper because Plaintiffs and Hatch's assertions that the differences relied on by the District Court were minor and would not be noticed by the ordinary

observer and affect the overall impression of the design are "conclusory." Resp. Br. at 47. Defendants are wrong. Plaintiffs established the existence of disputed material facts that should have precluded the District Court from ruling there was no infringement at the summary judgment stage. The District Court improperly resolved disputed facts in defendant's favor, in addition to erring in its application of the ordinary observer test.

## CONCLUSION

Entry of summary of judgment of non-infringement against Plaintiffs was legal error. The resulting judgment of dismissal of the infringement claims should be vacated, and the case should be remanded for trial on the issue of infringement of the Patents-in-Suit. For the foregoing reasons, Plaintiffs respectfully request this Court reverse the District Court's grant of summary judgment of non-infringement of the Patents-in-Suit and remand this case for trial.

Dated: June 5, 2024                    Respectfully submitted,


By:   /s/ Richard J.L. Lomuscio
      Richard J.L. Lomuscio
      STINSON LLP
      100 Wall Street
      Suite 201
      New York, NY 1005
      Telephone: 646.883.7675
      richard.lomuscio@stinson.com

      Adrianna M. Chavez
      STINSON LLP
      1850 N. Central Ave.
      Suite 2100
      Phoenix, AZ 85004
      adrianna.chavez@stinson.com


      *Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the

Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been

prepared using proportionally-spaced typeface and includes 6,972 words.

Dated: June 5, 2024                              Respectfully submitted,

By:   /s/ Richard J.L. Lomuscio
      Richard J.L. Lomuscio
      STINSON LLP
      100 Wall Street
      Suite 201
      New York, NY 1005
      Telephone: 646.883.7675
      richard.lomuscio@stinson.com

      Adrianna M. Chavez
      STINSON LLP
      1850 N. Central Ave.
      Suite 2100
      Phoenix, AZ 85004
      adrianna.chavez@stinson.com

      *Attorneys for Plaintiffs-Appellants*